05 CV 6802

JUDGE RAKOFF

Edward E. Vassallo (EV6588)
Timothy J. Kelly (TK8241)
James M. Gibson (JG9234)
Tila M. Duhaime (TD8787)
FITZPATRICK, CELLA, HARPER &
  SCINTO
30 Rockefeller Plaza
New York, New York 10112-3800
Tel: (212) 218-2100
Fax: (212) 218-2200
Attorneys for Plaintiffs



RECEIVED
JUL 29 2005
U.S.D.C. S.D. N.Y.
CASHIERS

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - x
PHILLIPS-VAN HEUSEN CORP.,            :
CALVIN KLEIN, INC., and CALVIN       :
KLEIN TRADEMARK TRUST,               :
                                     :
               Plaintiffs,           :     Civil Action No.
                                     :
          v.                         :
                                     :
CALVIN CLOTHING COMPANY, INC.,       :
and STAR RIDE KIDS, INC.             :
                                     :
               Defendants.           :
- - - - - - - - - - - - - - - - - - - - - - - - x
```

## COMPLAINT

Plaintiffs, Phillips-Van Heusen Corporation ("PVH"), Calvin Klein, Inc. ("CKI") and The Calvin Klein Trademark Trust (the "Trust"), by and through their attorneys, complaining of Defendants Calvin Clothing Company, Inc. ("CCC") and Star Ride Kids, Inc. ("Star Ride"), allege as follows:

### Nature of Action

1.      This is a trademark infringement, trademark dilution, false designation of origin, and unfair competition suit under federal and state laws. Plaintiffs

allege herein that Defendants' use of "Calvin" on clothing other than boys' tailored clothing constitutes infringement of CKI's and the Trust's rights in their "Calvin Klein" trademarks. Plaintiffs also seek a declaratory judgment that use by Plaintiffs of their "Calvin" marks does not violate any right of Defendant CCC. This action also seeks cancellation of five of CCC's trademark registrations, and seeks to prevent registration of six of its pending applications, all directed to "Calvin" either alone or in combination with other words or designs.

## The Parties

2.      PVH is a Delaware corporation with its principal place of business at 200 Madison Avenue, New York, NY 10016.

3.      CKI is a New York corporation with offices at 205 West 39th Street, New York, NY 10016. CKI is a wholly-owned subsidiary of PVH, having been acquired by PVH on February 12, 2003.

4.      The Trust is a business trust organized and existing under the laws of Delaware, with an office at 205 West 39th Street, New York, NY 10016. The Trust is owned by CKI and Warnaco, Inc. Warnaco is not a party to this suit.

5.      Upon information and belief, CCC is a Pennsylvania corporation with a registered office at 300 Brook Street, Scranton, PA 18505. Upon information and belief, CCC has and has had offices in this judicial district, including 63 W. 38th Street, 10th floor, New York, NY and 62 W. 39th Street, New York, NY 10018 from which it is or was doing business, including the activities complained of herein. According to the records at New York State, Department of State, Division of Corporations, CCC is registered to do business in New York State.

6.      Upon information and belief, Star Ride is a New York corporation with its principal place of business located in this district, at 112 W. 34th Street, New York, NY 10120.

### Jurisdiction and Venue

7.      This complaint arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; the Trademark Act of 1946, as amended, 15 U.S.C. § 1051, et seq.; and related claims under the laws of New York, Pennsylvania and other states.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338 and 1367 and 15 U.S.C. § 1121.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that Defendants do business in this district, have offices in this district, and a substantial part of the activities giving rise to Plaintiffs' claims occurred or will occur in this district.

### Plaintiffs' World Famous "Calvin Klein" Trademarks and the Federal Registrations Therefor

9.      In 1968, Mr. Calvin Klein started his apparel business.

10.     From that beginning, Mr. Klein, through CKI and its predecessor companies, made the "Calvin Klein" names and marks into icons of American design, and among the most famous of the fashion industry worldwide.  The July 2005 edition of *Women's Wear Daily* features a special report entitled "The WWD 100" in which Calvin Klein was ranked seventh of all apparel and footwear brand names in terms of consumer brand awareness, and was the best known designer brand.

11.     The "Calvin Klein" names and marks have successfully been used on a very broad array of men's, women's and children's clothing.  Sales of "Calvin

Klein" apparel and other products have been in the many billions of dollars, and CKI and its licensees have spent billions of dollars in advertising and promoting same.

12.     The Trust owns U.S. Trademark Registration No. 1,086,041 for the mark "Calvin Klein" for apparel for women, showing use since 1968 on skirts, shirts, blouses, jackets, pants, coats, fur-trimmed coats, vests, dresses, sweaters, t-shirts, shorts, rainwear, capes, scarves, shawls, belts, tank tops and jump suits.  This registration is incontestable.

13.     The Trust owns U.S. Trademark Registration No. 1,226,396 for the trademark "Calvin Klein" for apparel for men showing use since 1976 on suits, sports jackets, blazers, dinner jackets, pants, jeans, outer coats, raincoats, shirts, vests, sweaters, ties, and belts.  This registration is incontestable.

14.     The Trust owns U.S. Trademark Registration No.1,932,699 for the trademark "Calvin Klein" for briefs, boxers shorts, athletic shirts and bottoms, t-shirts and tank tops, undershirts, underpants, robes, and numerous articles of loungewear and sleepwear and showing use since 1982.  This registration is incontestable.

15.     The Trust owns U.S. Trademark Registration No. 1,810,850 for the trademark "CK/Calvin Klein" for use on apparel for women, men, boys and girls showing use since 1992 on shirts, blouses, jackets, bathing suits, beach and swimming cover-ups, pants, dresses, shorts, skirts, jeans, gloves, suits, sports jackets, belts, socks, underwear, stockings, rights, hats, jackets, vests, sweaters, t-shirts, rainwear, raincoats, tank tops, shoes, boots, slippers, blazers, bras, nightgowns, robes, scarves and shawls. This registration is incontestable.

16.     The Trust owns U.S. Trademark Registrations Nos. 1,226,396, 1,819,048, 1,633,261and 1,932,700 for the trademark "Calvin Klein" in block letters and stylized form for children's dresses, skirts, jeans and shirts; boys' underwear and shorts, girls' intimate apparel, sleepwear and loungewear of all types, showing use beginning between the years 1976 and 1983, as well as registrations for the "CK/Calvin Klein" trademark (see, e.g., Reg. No. 1,810,850, Reg. No. 1929,343 and Reg. No. 2,022,784) for substantially the same goods and showing use since 1992. All of the above registrations are incontestable.

17.     The Trust owns U.S. Trademark Registrations Nos. 1,226,396 and 1,633,261 for the mark "Calvin Klein" for apparel for children, showing use since 1994 on all manner of children's sportswear, including pants, jackets, skirts, shorts, blouses, sweaters, knits, jumpers, coats and jeanswear. These registrations are incontestable.

18.     The Trust owns various U.S. trademark registrations for the mark "CK/Calvin Klein" for all types of cosmetics and perfumes, sewing patterns and "domestics" showing use since 1978 (Reg. No. 1,226,396); eyeglass frames and sunglasses showing use since 1985 (Reg. No. 1,418,226); handbags and items of luggage showing use since 1988 (Reg. No. 1,604,663); sheets, pillow cases, towels, and bedspreads showing use since 1975 (Reg. No. 1,824,455); watches and jewelry showing use since 1995 (Reg. No. 1,993,879); and furniture, dinnerware, dishes and cutlery showing use since 1995 (Reg. No. 2,160,138). All of the above registrations are incontestable.

## The Public's Association of "Calvin" With CKI

19.     Over many years, Mr. Calvin Klein, and products sold under his name, have often been referred to as simply "Calvin" or "Calvin's." The "Calvin" name

- 5 -

was used in an unforgettable early 1980's advertising campaign for "Calvin Klein" designer jeans, featuring Brooke Shields, who asked: "What comes between me and my Calvin's?" and then answered: "Nothing." The campaign was groundbreaking for Ms. Shields, elevated the fame of Plaintiffs' trademarks to unprecedented heights and continues to be well-remembered long after it was discontinued.

20.     In the mid 1980's, CKI had a line of young women's ("juniors") apparel under the "Calvin" name, and "Calvin" was used as a trademark on labels and hang tags for these goods. In addition, advertisements for this "Calvin" apparel appeared in publications distributed throughout the entire U.S. and worldwide, including *Cosmopolitan, Elle, The New York Times, The New York Times Magazine, Seventeen, People* and *Women's Wear Daily*. CKI and its predecessor also have had and have a line of "Calvin" fragrances for men. This line was originally launched in 1980, and then was relaunched in about 1999. By these activities and others, the public, the media and others have come to associate the "Calvin" names and marks with CKI and its predecessors.

### Defendant CCC's Predecessor

21.     On information and belief, starting in the late 1930's, a predecessor of CCC began use of "Calvin" for boys' tailored clothing. On information and belief, much later a predecessor also had periodic sales of men's tailored clothing. In connection with those limited uses of "Calvin," a predecessor of CCC obtained U.S. Federal trademark Registration No. 933,999 for "Calvin" for boys' and students' tailored clothing, consisting of pants, slacks, top coats and sport coats, and Registration No. 1,039,306 for "Calvin" for men's suits and sport jackets.

22.     Starting in the late 1960's, CCC's predecessors watched and acquiesced while Mr. Klein, CKI's predecessor and CKI expanded their business under

- 6 -

the "Calvin Klein," "CK/Calvin Klein" and "Calvin" names and marks. CCC's

predecessors knew about use of the "Calvin Klein" and "Calvin" names and trademarks,

including the "Nothing comes between me and my Calvin's" advertising campaign in the

early 1980's. Over the years, the predecessors of CCC and CCC acquiesced and took no

action to stop the "Calvin Klein" brands from growing in popularity to their current status

as mega brands. While predecessors of CKI and CCC periodically exchanged

correspondence about their respective uses of "Calvin Klein" and "Calvin" trademarks,

CKI and its predecessor continued to grow their brands while CCC and its predecessors

acquiesced to such activities, and the "Calvin" business of CCC and its predecessors

remained exclusively limited to tailored clothing, substantially all of which was in the

boys' business.

### In 1996, Defendant CCC Acquired the Assets
### of the Calvin Boys' Tailored Clothing Business

23.     In about 1996, upon information and belief, Mr. James Alperin,

and CCC, directly or indirectly, acquired certain assets of a predecessor's boys' tailored

clothing business out of a bankruptcy proceeding. They also acquired the "Calvin"

trademark (and certain other trademarks) at that time for one dollar.

### Defendants' Wrongful Activities

24.     Beginning two years after the Alperin and CCC acquisition of the

"Calvin" trademark, and up to as much as six years after the acquisition, CCC filed ten

new trademark applications, alleging a bona fide intent to use "Calvin," alone and with

certain other words and designs, for a wide range of clothing never previously sold by

CCC's predecessors in the decades of its existence. These applications, the first four of

which have registered, are:

(a)     U.S. Trademark Registration No. 2,453,672, issued May 22, 2001;

(b)     U.S. Trademark Registration No. 2,573,181, issued May 28, 2002;

(c)     U.S. Trademark Registration No. 2,573,182, issued May 28, 2002;

(d)     U.S. Trademark Registration No. 2,573,183, issued May 28, 2002;

(e)     U.S. Trademark Application No. 76/029,753, filed May 28, 2002;

(f)     U.S. Trademark Application No. 76/029,754, filed May 28, 2002;

(g)     U.S. Trademark Application No. 75/447,627, filed May 28, 2002;

(h)     U.S. Trademark Application No. 75/477,628, filed May 28, 2002;

(i)     U.S. Trademark Application No. 76/365,813, filed May 28, 2002;

and

(j)     U.S. Trademark Application No. 76/365,814, filed May 28, 2002.

25.     The foregoing ten "Calvin" registrations and applications, and the declarations alleging bona fide intent to use these marks, were filed at a time when CCC and Mr. Alperin knew or should have known that Mr. Klein and his companies had previously established an "incredibly successful career building his name into a mega brand." See Exhibit A, ¶ 21. Several of the alleged marks contained other words which previously had specifically been used in connection with "Calvin Klein," while others were displayed in the same font as "Calvin Klein."

26.     In order to protect their extremely valuable trademarks, the Trust and CKI filed, in the U.S. Patent and Trademark Office ("PTO"), oppositions and petitions to cancel all ten of the "Calvin" applications and registrations identified above in paragraph 24. These proceedings have been stayed by the PTO in view of the Pennsylvania Action discussed below in paragraphs 29-31 herein.

27.    On information and belief, CCC has made sporadic attempts to sell some of the types of apparel under "Calvin" marks identified in these registrations and applications. On information and belief, these attempts had no on-going success and appear motivated by CCC's desire to support its claims, described below, against Plaintiffs. Moreover, these sales have been made in deliberate and willful violation of the rights of the Trust and CKI.

28.    However, upon information and belief, CCC has recently licensed "Calvin" to Defendant Star Ride, an importer of inexpensive children's apparel, to sell inexpensive girls' and boys' sportswear, potentially in very large quantities. All of the foregoing wrongful activities of Defendants will dilute the famous "Calvin Klein" trademarks.

### The Pennsylvania Action

29.    Recently, Defendant CCC brought suit against Plaintiffs in the United States District Court, Middle District of Pennsylvania, Scranton Division (the "Pennsylvania Action"). The amended complaint therein is grounded in certain disputes between the parties relating to the use of the "Calvin" names and trademarks. A copy of the amended complaint in the Pennsylvania Action is annexed hereto as Exhibit A.

30.    Plaintiffs herein have moved to dismiss the Pennsylvania Action, or to transfer it to this district, pursuant to Fed. R. Civ. P. 12 (B)(6), 12 (B)(7), 17 and 19.

31.    In the Pennsylvania Action, CCC has alleged that use of "Calvin" alone by or for the benefit of CKI, the Trust and PVH violates CCC's rights in its alleged "Calvin" trademark.

## Count I
## Declaratory Judgment

32.     Plaintiffs repeat and reallege paragraphs 1 to 31 hereof as if set forth here in full.

33.     For the reasons set forth above, an actual controversy exists between the parties regarding Defendant CCC's claims with respect to its alleged "Calvin" trademarks, as demonstrated by Defendant CCC's filing of the Pennsylvania Action.

34.     By reasons of the intervening rights of the Trust and CKI, and CCC's acquiescence therein, Plaintiffs have priority over CCC with respect to use of "Calvin" on all apparel other than boys' tailored clothing. Thus, Plaintiffs have not violated any right of CCC.

35.     Plaintiffs seek a declaration from this Court that the Trust and CKI have priority over CCC with respect to the apparel identified in CCC's ten new trademark applications and registrations identified in paragraph 24 above, and to all apparel other than boys' tailored clothing, and that they have not violated any right of CCC.

## Count II
## Cancellation of Reg. No. 1,039,306

36.     Plaintiffs repeat and reallege paragraphs 1 to 31 as if set forth here in full.

37.     CKI and the Trust have petitioned to cancel CCC's Reg. No. 1,039,306 for abandonment, but the PTO has stayed that proceeding in view of the Pennsylvania Action.

38.     CCC's predecessors and/or CCC has abandoned the "Calvin"

trademark for men's suits and sport coats that is the subject of Reg. No. 1,039,306 and,

upon information and belief, CCC improperly, inequitably and illegally renewed this

registration by falsely alleging use at a time when it knew or should have known that the

trademark that was the subject of this registration was not in use.

39.     CKI and the Trust seek an order by this Court requesting the

Commissioner for Trademarks to cancel Reg. No. 1,039,306.

## Count III
### Dismissal with Prejudice of Defendants' Six Pending
### Trademark Applications and Cancellation of
### Defendants' Four New Trademark Registrations

40.     Plaintiffs repeat paragraphs 1 to 31 as if set forth here in full.

41.     Defendant CCC is not entitled to registration of any of the ten

applications or registrations referenced in paragraph 24 hereof for the reason that they

will cause a likelihood of confusion with Plaintiffs' "Calvin Klein" names and marks.

42.     For these reasons, CKI and the Trust seek an order from the Court

directing Defendant CCC to file express abandonments, with prejudice, for its six

trademark applications, and an order from the Court requesting the Commissioner for

Trademarks to cancel the four trademark registrations identified in paragraph 24 hereof.

## Count IV
### Infringement of Plaintiffs'
### Federal Trademark Registrations

43.     Plaintiffs repeat paragraphs 1 to 31 as if set forth here in full.

44.     Upon information and belief, CCC and its exclusive licensee, Star

Ride, are or are poised to use at least some of the "Calvin" marks that are the subject of

the ten applications and registrations identified in paragraph 25 hereof, on at least some

of the goods identified therein.  These acts of use, sale, advertising and promotion

infringe the rights of the Trust and CKI in their "Calvin Klein" registered trademarks, all

in violation of 15 U.S.C. § 1114.

## Count V
### False Designation of Origin

45.    Plaintiffs repeat paragraphs 1 to 31 as if set forth here in full.

46.    Defendants' aforesaid actions constitute false designation of origin,

and will cause a likelihood of confusion and mistake with aforementioned common law

names and marks of Plaintiffs, in violation of 15 U.S.C. § 1125.

## Count VI
### Federal Trademark Dilution

47.    Plaintiffs repeat paragraphs 1 to 31 as if set forth here in full.

48.    Defendants' aforesaid activities constitute trademark dilution, and

will continue to dilute the "Calvin Klein" registered trademarks, and Plaintiffs'

aforementioned common law name and marks by lessening their capacity to identify and

distinguish the goods sold by Plaintiffs under those marks, in violation of 15. U.S.C. §

1125(c).

## Count VII
### Common Law Trademark Infringement

49.    Plaintiffs repeat paragraphs 1 to 31 as if set forth here in full.

50.    Defendants' aforesaid actions constitute common law trademark infringement under the laws of New York State, the Commonwealth of Pennsylvania, and other states as well.

### Count VIII
### Unfair Competition and Dilution Under State Law

51.    Plaintiffs repeat paragraphs 1 to 31 as if set forth here in full.

52.    Defendants' actions constitute unlawful deceptive acts and practices arising under New York General Business Law § 349, and dilution of the distinctive qualities of Plaintiffs' marks under New York General Business Law § 360-l, under the common law of the Commonwealth of Pennsylvania, and under applicable laws of other states as well.

WHEREFORE, Plaintiffs pray for relief as follows:

1.    A preliminary and permanent injunction enjoining CCC and Star Ride from infringing the registered "Calvin Klein" trademarks, all as provided under 15 U.S.C. § 1116(a).

2.    An order from the Court authorizing the Commissioner for Trademarks to cancel CCC's Registration Nos. 1,039,306; 2,453,672; 2,573,181; 2,573,182; and 2,523,183 pursuant to 15 U.S.C. § 1119.

3.    An order requiring Defendant CCC to file express abandonments of Application Serial Nos. 76/029,753; 76/029,754; 75/447,627; 75/477,628; 76/365,813; and 76/365,814, with prejudice, within 15 days of the date of the order and to provide copies of such filings to Plaintiffs.

- 13 -

4.     A preliminary and permanent injunction enjoining CCC and Star Ride from infringing the common law trademark rights of Plaintiffs, all as provided under 15 U.S.C. §1116(a).

5.     A preliminary and permanent injunction enjoining CCC and Star Ride from engaging in acts of unfair competition and trademark dilution in violation of the New York General Business Law §§ 360-l, 349, the common law of Pennsylvania, and applicable laws of other states.

6.     Damages in an amount sufficient to compensate Plaintiffs for the damages they have incurred as a result of the wrongful, willful and infringing sales by Defendants of apparel other than boys' tailored clothing bearing a "Calvin" label or otherwise sold as "Calvin" merchandise, all as provided under 15 U.S.C. §1117(a).

7.     Damages in an amount sufficient to compensate Plaintiffs for the profits they have lost as a result of the wrongful, willful and infringing conduct of the Defendants, all as provided under 15 U.S.C. §1117(a).

8.     Trebling of the aforesaid damages and/or profits as a consequence of Defendants' willful infringement of Plaintiffs' trademark rights, all as provided under 15 U.S.C. §1117(b).

9.     Plaintiffs' reasonable attorneys' fees, all as provided under 15 U.S.C. §1117(b).

10.    Defendants be required, pursuant to 15 U.S.C. § 1118, to deliver up for destruction all of their apparel bearing the "Calvin" mark other than boys' tailored apparel.

11.    A declaration that none of Plaintiffs' actions have infringed or violated any right of Defendant CCC.

12.    Such other and further relief as to this Court may seem just and proper.

Respectfully submitted,

July 29, 2005

Edward E. Vassallo (EV6588)
Timothy J. Kelly (TK 8241)
James M. Gibson (JG9234)
Tila M. Duhaime (TD8787)
FITZPATRICK, CELLA, HARPER &
    SCINTO
30 Rockefeller Plaza
New York, New York 10112-3800
Tel: (212) 218-2100
Fax: (212) 218-2200
Attorneys for Plaintiffs

NY_Main 514532_1.DOC

- 15 -

# EXHIBIT A

Joseph R. Solfanelli
David J. Solfanelli
SOLFANELLI & SOLFANELLI
800 Penn Security Bank, Suite 800
142 North Washington Avenue
Scranton, Pennsylvania  18503
Telephone: (570) 961-5824
Facsimile: (570) 346-1425

Anthony F. Lo Cicero
Marc J. Jason
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, New York  10016
Telephone: (212) 336-8000
Facsimile: (212) 336-8001

Attorneys for Plaintiff

### IN THE UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF PENNSYLVANIA
### SCRANTON DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| CALVIN CLOTHING COMPANY, INC., | : |
| | :     Civil Action 3:04-CV-2729 |
|                 Plaintiff, | : |
| | : |
|      v. | :       JUDGE MUNLEY, J. |
| | : |
| CALVIN KLEIN, INC.; CALVIN KLEIN | : |
| TRADEMARK TRUST and PHILLIPS-VAN | :   **JURY TRIAL** |
| HEUSEN CORP., | :   **DEMANDED** |
|                 Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

### AMENDED COMPLAINT

Plaintiff Calvin Clothing Company, Inc. ("Calvin Clothing"), by and

through its attorneys, complaining of defendants Calvin Klein, Inc. ("CKI")

310825.1

and Calvin Klein Trademark Trust (the "Trust") (together, CKI and the Trust are "Calvin Klein") and Phillips-Van Heusen Corp. ("PVH") (collectively, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.    Calvin Clothing seeks a declaratory judgment adjudging and declaring that it is the senior user throughout the United States of the trademark CALVIN, as applied to apparel, and in particular men's and children's apparel.  Furthermore, Calvin Clothing seeks injunctive relief and damages for acts of trademark infringement, false designation of origin, unfair competition and unfair trade practices engaged in by defendants CKI and PVH in violation of the laws of the United States and the Commonwealth of Pennsylvania.  Those acts involve CKI's and PVH's use of the trademark CALVIN on men's and children's apparel in contravention of Calvin Clothing's acknowledged rights in that mark.

## THE PARTIES

2.    Calvin Clothing is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania, having an office and place of business at 300 Brook Street, Scranton, PA 18505.

3.    Upon information and belief, CKI is a corporation duly organized and existing under the laws of the State of New York, and which

maintains its headquarters at 205 West 39th Street, New York, New York 10016.   Upon further information and belief, CKI is doing and/or transacting business within this judicial district, including the activities complained of herein.

4.   Upon information and belief, the Trust is a business trust organized and existing under the laws of the State of Delaware, which maintains an office at 205 West 39th Street, New York, New York 10018. Upon further information and belief, the Trust is the record owner of certain trademarks complained of herein, and is doing and/or transacting business within this judicial district, including the activities complained of herein.

5.   Upon information and belief, Calvin Klein is a wholly-owned subsidiary of PVH, a corporation duly organized and existing under the laws of the State of Delaware, and which maintains its headquarters at 200 Madison Avenue, New York, New York 10016.   Upon further information and belief, PVH is doing and/or transacting business within this judicial district, including the activities complained of herein.

**JURISDICTION AND VENUE**

6.   This  Amended  Complaint  arises  under  the  Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; the Trademark Act of 1946, as

amended, 15 U.S.C. § 1051 *et seq.*; and related claims pursuant to the common law of the Commonwealth of Pennsylvania.   This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338 and 1367 and 15 U.S.C. § 1121.

7.   Venue is appropriate in this district pursuant to 28 U.S.C. § 1391 in that the Defendants do and/or transact business in this district, and a substantial part of the events and omissions giving rise to Calvin Clothing's claims occurred in this district.

## FACTS

Calvin Clothing and its Use and Ownership of the CALVIN Mark

8.   Calvin Clothing has been manufacturing apparel under the CALVIN label for almost seventy (70) years.   It was started in 1935 by a gentleman who named the new company after his young son, Calvin Siegal. At that time, Calvin Clothing began using the mark CALVIN at least on boys' suits and tailored clothing, including dress trousers and sports jackets.

9.   Over the years, Calvin Clothing's business became successful, and apparel bearing the CALVIN trademark was sold throughout the United States.   Calvin Siegal eventually joined the company in 1948 and became its president in 1951.   His son, Henry Siegal, subsequently joined the company and was its president through the 1980's until 1992.

10.   Throughout its history, the company responded to the fashion tastes of its customers and changes in the apparel market.  For example, in the late 1960's, Calvin Clothing naturally expanded its activities and began using the CALVIN mark on men's suits and sports coats, and such use has continued to the present day.  During the 1970's and 1980's, Calvin Clothing also produced a line of men's apparel including suits, sport coats and overcoats under the CFM CALVIN FOR MEN brand.

11.   Beginning in the 1970's, a Scranton, PA based business, owned by the Alperin family, was a key trouser supplier of Calvin Clothing.  As Calvin Clothing thrived, so did its relationship with Gold Star, Mfg., AAA Trouser and Mayflower, Mfg., the Alperin family businesses.  At its peak, Calvin Clothing's patronage was responsible for over 35% of the 600 employees of these companies.  In 1993, the Alperin family began to take steps to insulate its factories and employees from foreign competition by selling its products directly to retailers.  In furtherance of this strategy, it successfully acquired several apparel companies and ultimately acquired the Calvin Clothing business.

12.   As a result of industry trends, especially the consolidation among manufacturers and retailers, Calvin Clothing was bought by Palm

Beach Inc. in 1980, which in turn was purchased by Crystal Brands in 1988, and, ultimately, by Plaid Holding's, Inc. in 1992. Unable to resist foreign competitive pressures, Plaid Holding's filed for bankruptcy in 1994, and the management of the continuously profitable Calvin Clothing division suggested that the Alperin family consider purchasing the division from Plaid Holding's. In May 1995, the Alperin family purchased the assets of the business, including all raw materials, work in process, finished goods, orders, patterns and designs and trademarks (including the CALVIN trademarks).

13.   Around the time of the Alperin family's acquisition of the Calvin Clothing business, a fashion trend was developing which necessitated an adjustment of the product line. Men and children were wearing fewer suits and people started "dressing down." It was becoming acceptable for boys to attend church and other special events in something other than suits or blazers and dress slacks. Calvin Clothing successfully reacted to these trends by creating its CALVIN sportswear lines.

14.   Over the years, the Alperin family has purchased several companies serving various segments of the apparel market. They have developed product lines under the CALVIN trademark to take advantage of

cross marketing opportunities and economics and efficiencies of scale. The company has manufactured lines of CALVIN mens' tailored clothing, boys' and girls' sportswear, infant and toddler wear and school uniform apparel as part of the product lines of each of its businesses. Currently, CALVIN labeled product represents over $14,000,000 in annual retail volume, down from a level of $20 million at its peak in 2002.

15.     Beginning more than three decades ago, Calvin Clothing began to register its CALVIN mark with the U.S. Patent and Trademark Office ("PTO"). Calvin Clothing is now the owner of the following federal trademark registrations:

(a)    U.S. Trademark Registration No. 933,999, issued May 16, 1972, for the mark CALVIN for boys' and students' tailored clothing, consisting of [coats], pants, slacks, top coats and sport coats ("the '999 Registration");

(b)    U.S. Trademark Registration No. 1,039,306, issued May 11, 1976, for the mark CALVIN for men's suits and sport coats ("the '306 Registration");

(c)    U.S. Trademark Registration No. 2,453,672, issued May 22, 2001, for the mark CALVIN (design), for boys' and

children's clothing, namely, suits, sportcoats, trousers, shirts, pullover vests, sweaters, socks, overalls, coats and jackets ("the '672 Registration");

(d)   U.S. Trademark Registration No. 2,573,181, issued May 28, 2002, for the mark CALVIN (design), for outerwear, namely, raincoats, topcoats, ski jackets, wind resistant jackets, vest coats, jackets, shirts, dresses, sports coats, suits, shorts, sweaters, pants, trousers and leggings ("the '181 Registration");

(e)   U.S. Trademark Registration No. 2,573,182, issued May 28, 2002, for the mark CALVIN (design), for outerwear, namely, raincoats, topcoats, ski jackets, wind resistant jackets, vest coats, jackets, shirts, dresses, sports coats, suits, shorts, sweaters, pants, trousers and leggings ("the '182 Registration");

(f)   U.S. Trademark Registration No. 2,573,183, issued May 28, 2002, for the mark CALVIN COLLECTION, for outerwear, namely, raincoats, topcoats, ski jackets, wind resistant jackets, vests, coats, jackets, shirts, dresses, sports

coats, suits, shorts, sweaters, pants, trousers and leggings ("the '183 Registration");

16.   Both the '999 Registration and the '306 Registration have become incontestable pursuant to 15 U.S.C. § 1065.  As a result, subject to exceptions not relevant here, the '999 and '306 Registrations are conclusive evidence of the validity of the registered CALVIN mark, of Calvin Clothing's ownership of that mark and its exclusive right to use that mark in commerce in connection with the goods listed in those registrations.

17.   Calvin Clothing's registrations are all in full force and effect and, along with Calvin Clothing's goodwill in connection with its use of the CALVIN mark, have never been abandoned.

18.   In addition to the above referenced registrations, Calvin Clothing is the owner of following federal trademark applications:

(a)   United States Trademark Application No. 76/029,753 for the trademark BABY CALVIN for clothing for infants and children, namely, shirts, blouses, sweatshirts, t-shirts, tank tops, sweaters, coats, vests, shorts, pants, leggings, jump suits, jumpers, skirts, dresses, bathing suits, overalls, bib overalls, pajamas, hats, mittens, dickies, socks and tights;

(b)     United States Trademark Application No. 76/029,754 for the trademark BABY CALVIN (design) for clothing for infants and children, namely, shirts, blouses, sweatshirts, t-shirts, tank tops, sweaters, coats, vests, shorts, pants, leggings, jump suits, jumpers, skirts, dresses, bathing suits, overalls, bib overalls, pajamas, hats, mittens, dickies, socks and tights;

(c)     United States Trademark Application No. 75/477,627 for the trademark CALVIN SPORT for shirts, suits, sport coats, shirts, trousers and vests;

(d)     United States Trademark Application No. 75/477,628 for the trademark CALVIN AMERICA for shirts, suits, sport coats, shirts, trousers and vests;

(e)     United States Trademark Application No. 76/365,813 for the trademark CALVIN SCHOOLWEAR (design) for clothing and gymwear, namely, shirts, sweaters, jumpers, shorts, pants, sport jackets, skirts, jackets, belts, ties and socks; and

(f)     United States Trademark Application No. 76/365,814 for

the trademark CALVIN SCHOOLWEAR for clothing and

gymwear, namely, shirts, sweaters, jumpers, shorts, pants,

sport jackets, skirts, jackets, belts, ties, socks and shoes.

19.     Calvin Clothing's apparel offered under the CALVIN mark has

been successful for decades.   It is sold throughout the United States in

specialty stores and department stores, and has achieved a well deserved

reputation for high quality.  As a result, the CALVIN mark and the goodwill

associated therewith are of inestimable value to Calvin Clothing.

Calvin Klein and its Co-Existence Under the CALVIN
KLEIN mark with Calvin Clothing's CALVIN Mark

20.     Calvin Klein began doing business in the 1960's, and in or about

1968 it began using the mark CALVIN KLEIN on women's coats, more than

thirty years after Calvin Clothing first used the mark CALVIN.   On

information and belief, Mr. Klein himself had been aware of Calvin Clothing

and the CALVIN brand from the early stages of his career.

21.     Throughout Mr. Klein's incredibly successful career building his

name into a mega brand, Calvin Clothing has taken the position that as long

as apparel products were identified as originating from Calvin Klein, they

were distinct and would not hurt Calvin Clothing's very successful CALVIN

brand.   Over the years there is ample evidence of the two companies' "understanding" of this tacit agreement, and it was in the interest of both companies to maintain this status quo.

22.   In January and February 1975, Calvin Clothing placed Calvin Klein on actual, written notice that Calvin Clothing had been using its CALVIN mark on men's clothing of Calvin Clothing's '999 Registration for boys' and students' clothing, and of its use and application to register the mark CFM CALVIN FOR MEN for men's clothing.[1]

23.   At that time, in 1975, Calvin Klein acknowledged Calvin Clothing's right to the mark CALVIN for menswear by stating in writing that "we have no complaint with regard to [Calvin Clothing's] use of [its] trademark 'Calvin' in connection with menswear."

24.   Upon information and belief, during the late 1970's, Calvin Klein expanded its use of the CALVIN KLEIN trademark from women's apparel to men's suits and tailored clothing, years after Calvin Clothing had expanded from boys' and students' apparel to men's suits and tailored clothing under its CALVIN brand.

---

[1]   The mark CFM CALVIN FOR MEN was registered by Calvin Clothing on January 27, 1977.  This mark has since been abandoned.

25.  Thereafter, in 1980 and 1982, with knowledge of Calvin Clothing's trademark rights and registrations of CALVIN for boys' and men's suits and tailored clothing, Calvin Klein filed applications to register the CALVIN KLEIN trademark for men's tailored clothing.  In doing so, it swore under oath that such uses would not cause confusion with any other prior trademark.  Subsequently, Calvin Klein further expanded its CALVIN KLEIN brand into childrenswear, decades after Calvin Clothing had begun in that field.

26.  In 1982, when Calvin Klein licensed a line of boys' wear to Puritan Fashions, Calvin Clothing agreed not to object "as long as all persons having to do with sales, advertising labeling, packaging and licensing boys' wear under the name Calvin Klein should be advised that any and all references to such products should be by the full name 'Calvin Klein' and not by the abbreviation of the name to 'Calvin' alone."

27.  In 1992, Calvin Klein filed a trademark application for boys' suits and sport coats, identical products being sold at the same time under the CALVIN trademark, signing a sworn declaration that the mark CALVIN KLEIN was not confusingly similar to any other mark of which it was aware. Again, Calvin Clothing did not object.

28.   Upon information and belief, the CALVIN KLEIN brand has been very successful.  Upon information and belief, Calvin Klein and its licensees have spent more than one billion dollars in advertising and promoting the brand and have grossed many billions of dollars in sales of CALVIN KLEIN branded products.

29.   Upon information and belief, PVH purchased Calvin Klein, including all of its intellectual property, in or about 2003.

The Prior Working Relationship Between Calvin Clothing and Calvin Klein

30.   For decades, the parties co-existed relatively peacefully.  They confirmed the scope of their respective rights amongst themselves, namely that Calvin Clothing owned the CALVIN mark and Calvin Klein owned the CALVIN KLEIN mark.  Further, as evidenced by the federal trademark registrations received by the parties, the PTO has also decided that the parties can co-exist under their respective marks, even for identical goods, since the PTO is prohibited by law from issuing registrations for confusingly similar trademarks.  15 U.S.C. § 1052(d).

31.   Several times in the late 1970's and early 1980's, Calvin Clothing made it clear in writing that it considered any use of the name CALVIN alone, separate from the surname KLEIN, to be an infringement of

Calvin Clothing's rights.  Calvin Klein evidently agreed, since when Calvin Klein sought to use the name CALVIN separate from KLEIN, it sought Calvin Clothing's permission to do so.  In making one such request in 1983, Calvin Klein indicated that its use of the phrase CALVIN'S would always be accompanied by the full name, CALVIN KLEIN.

32.   As such, the parties agreed, throughout their course of dealing, to differentiate their product lines by their respective trademarks, CALVIN and CALVIN KLEIN.  The parties even cooperated in joint efforts to police their brands.

33.   Now, after more than thirty years of peaceful coexistence, and particularly after the purchase of Calvin Klein by PVH, on information and belief, the Defendants have launched a frontal assault intended to put Calvin Clothing out of business.  Bruce Klatsky, Chairman and CEO of PVH, has stated in discussions with Calvin Clothing that Calvin Clothing's right to use the CALVIN brand should be limited to boys' tailored clothing. Furthermore, other representatives of the Defendants have now asserted that any use by Calvin Clothing of the mark CALVIN is an infringement of the CALVIN KLEIN brand.  Statements to this effect have been explicitly made by Tom Murry, the President of Calvin Klein, Inc., as well as by

Mr. Klein himself, who has stated on the record at his deposition in a related proceeding that use of the word "Calvin" standing alone by Calvin Clothing on any item of apparel infringes Calvin Klein's rights.

34.   As a result of the Defendants' newly antagonistic position with respect to Calvin Clothing's CALVIN mark, Calvin Clothing has been unable to aggressively sell its products and market its brand.

35.   In August of 2003, Calvin Clothing contacted Tom Murry, President of Calvin Klein, expressing concern about a press release announcing that a Calvin Klein licensee, Happy Kids, "has been chosen to spearhead the return of the chic, notoriously provocative Calvin Klein label to the kids scene with rights to develop product in all categories for boys and girls." This represented Calvin Klein's expansion into identical products competing in Calvin Clothing's existing distribution channels, and Calvin Clothing expressed concerns that the prior understandings between the companies should not be breached.  Tom Murry assured Calvin Clothing that Happy Kids was not planning to produce any products other than jeanswear and that Happy Kids would be advised to always refer to products and the licensor by the full "Calvin Klein" name.

-16-

36. Despite these assurances, the September 2004 issue of Children's Business contained an interview with Mark Benun, VP of Happy Kids, disturbingly describing the product line. Benun said, "we've taken all the traditional categories and styles and redone them to a 'Calvin' point of view while supporting our bottoms." This was only one of several references in the interview where Benun described the line as being from "Calvin" and the products as well beyond the jeans and tee shirts previously produced under the CALVIN KLEIN trademarks.

37. Furthermore, upon information and belief, Calvin Klein or its licensee has sold and is selling t-shirts prominently emblazoned with the label "Calvin."

38. In the PTO, Calvin Klein has opposed Calvin Clothing's applications to register the marks CALVIN AMERICA, CALVIN SPORT, CALVIN BABY and CALVIN SCHOOLWEAR, arguing that Calvin Clothing has rights in only boys and students tailored clothing and is impermissibly expanding its brand into areas of apparel that are likely to cause consumer confusion with the CALVIN KLEIN brand. They argue this despite the fact that the apparel in question is already substantially covered by Calvin Clothing's registrations for the CALVIN mark.

310825.1

39.   Furthermore, Calvin Klein has instituted cancellation proceedings in the PTO to cancel the '306, '672, '181, '182 and '183 Registrations contending for the first time that the registrations for the CALVIN (or CALVIN COLLECTION) marks are likely to cause confusion with the CALVIN KLEIN mark and should be cancelled.

40.   These actions by the Defendants fly in the face of more than thirty years of dealings between the parties and rulings by the PTO.  In taking these actions, Defendants are either seeking to destroy Calvin Clothing's right to use the CALVIN mark or, at a minimum, to pigeonhole Calvin Clothing into an unsustainable niche market and improperly to restrict Calvin Clothing's right to use its mark to a narrow subset of goods covered by its original trademark registration.  In addition, the Defendants seek to improperly circumscribe the natural zones of expansion of Calvin Clothing's CALVIN brand within the apparel industry, even though such zones of expansion are covered by Calvin Clothing's existing trademark registrations.  In this way the Defendants seek to drive Calvin Clothing out of business.

## COUNT I  (Against All Defendants)

## Declaratory Judgment (28 U.S.C. §§ 2201, 2202)

41.    Calvin Clothing repeats and realleges each and every allegation set forth in paragraphs 1 through 40 above as if fully set forth herein.

42.    As set forth above, an actual controversy exists between Calvin Clothing and the Defendants with respect to rights regarding the CALVIN trademark.  The Defendants' threats, including that any use by Calvin Clothing of the mark CALVIN constitutes an infringement of the CALVIN KLEIN brand, have created on the part of Calvin Clothing a reasonable apprehension that the Defendants will initiate a suit for trademark infringement.

43.    Despite their statements and threats to the contrary, the Defendants do not own any protectible rights under the Trademark Act in the name and mark CALVIN with respect to apparel, and in particular, men's and children's apparel.  Calvin Clothing's use of the mark CALVIN with respect to such apparel predates any use by Defendants by years or even decades.

44.    Use by Calvin Clothing of the mark CALVIN on men's or children's apparel does not infringe any rights that Defendants may have.

310825.1                                -19-

## COUNT II  (Against CKI and PVH)

## Trademark Infringement (15 U.S.C. §1114)

45.    Calvin Clothing repeats and realleges each and every allegation set forth in paragraphs 1 through 40 above as if fully set forth herein.

46.    CKI's and PVH's use on apparel of the CALVIN trademark in interstate commerce constitutes trademark infringement without the consent of Calvin Clothing in violation of 15 U.S.C. §1114, in that such use is likely to cause reverse confusion, deception and mistake among the consuming public and trade as to the source or origin of Calvin Clothing's apparel products bearing such CALVIN mark.

47.    CKI and PVH have saturated the market with advertising and promotion of their brand such that the same has overwhelmed Calvin Clothing, and CKI and PVH are now misappropriating the CALVIN trademark.   As a result, Calvin Clothing has lost value in its CALVIN trademark, its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets.

48.    The manufacture, promotion, offering for sale and sale of apparel by CKI and PVH bearing the CALVIN brand is likely to cause confusion and mistake in the minds of the purchasing public, and, in particular, tends to and does falsely create the impression that the Calvin

Clothing's products are authorized, sponsored, or approved by CKI and PVH when, in fact, they are not.

49.    Upon information and belief, CKI and PVH have acted willfully, in knowing and direct contravention of Calvin Clothing's rights.

50.    Such conduct on the part of CKI and PVH has caused and will continue to cause irreparable injury to Calvin Clothing, including injury to its reputation for which it has no adequate remedy at law, and damage in an amount to be proved at trial.

## COUNT III  (Against CKI and PVH)

## False Designation of Origin (15 U.S.C. §1125(a) )

51.    Calvin Clothing repeats and realleges each and every allegation set forth in paragraphs 1 through 40 above as if fully set forth herein.

52.    CKI's and PVH's use on apparel of the CALVIN trademark in interstate commerce constitutes false designation of origin or false or misleading descriptions or representations of fact without the consent of Calvin Clothing in violation of 15 U.S.C. §1125(a), in that such use is likely to cause confusion, deception and mistake among the consuming public and trade as to the source or origin of Calvin Clothing's apparel products bearing such CALVIN mark.

310825.1                                    -21-

53.   Such conduct on the part of CKI and PVH has caused and will continue to cause irreparable injury to Calvin Clothing, including injury to its reputation and the dilution of the distinctive quality of its marks, for which it has no adequate remedy at law, and damage in an amount to be proved at trial.

**COUNT IV  (Against CKI and PVH)**

**<u>Common Law Unfair Competition</u>**

54.   Calvin Clothing repeats and realleges each and every allegation set forth in paragraphs 1 through 40 above as if fully set forth herein.

55.   This claim arises under the common law of the Commonwealth of Pennsylvania and alleges willful and intentional unfair competition by CKI and PVH.

56.   As more fully set forth above, the use by CKI and PVH of the mark CALVIN on their products constitutes passing off, unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices wherein CKI's and PVH's conduct is likely to cause confusion in the trade as to the source of Calvin Clothing's products, or is likely to lead the public to believe that Calvin Clothing and its goods are in some way connected with Calvin Klein when in fact they are not, all to the

detriment of Calvin Clothing and in violation of the common law of the Commonwealth of Pennsylvania.

57.   Such conduct on the part of CKI and PVH has caused and will continue to cause irreparable injury to Calvin Clothing, including injury to its reputation and the dilution of the distinctive quality of its marks, for which it has no adequate remedy at law, and damage in an amount to be proved at trial.

WHEREFORE, plaintiff Calvin Clothing prays for judgment as follows:

1.   A judicial declaration by this Court that Calvin Clothing is entitled and authorized to use in interstate commerce the mark CALVIN in connection with apparel, and in particular, men's and children's apparel.

2.   A judicial declaration that Calvin Clothing's rights in the mark CALVIN on apparel, and in particular, men's and children's apparel, was prior to and is superior to the rights of Defendants.

3.   A judicial declaration that the Defendants do not own any protectible rights under the Trademark Act in the name and mark CALVIN with respect to apparel, and in particular, men's and children's apparel.

4.   That a permanent injunction be issued enjoining CKI and PVH and their officers, directors, principals, agents, servants, successors, assigns,

employees, attorneys, and all persons in active concert or participation with them:

     (a)   from using the CALVIN mark, or any marks confusingly similar thereto, in connection with the sale or offering for sale of apparel;

     (b)   from otherwise infringing the CALVIN mark;

     (c)   from otherwise unfairly competing with Calvin Clothing or infringing Calvin Clothing's rights;

5. That CKI and PVH be required to take affirmative steps to explain to the media that CKI's and PVH's brand is CALVIN KLEIN and not CALVIN.

6. That CKI and PVH be required, pursuant to 15 U.S.C. § 1118, to deliver up for destruction all of their apparel products bearing the CALVIN mark.

7. That the Court award damages to Calvin Clothing resulting from the infringing activities of CKI and PVH, and that the award to Calvin Clothing be increased as provided for under 15 U.S.C. § 1117.

8.     That Calvin Clothing have recovery of damages, including punitive damages, from CKI and PVH pursuant to the laws of the Commonwealth of Pennsylvania.

9.     That Calvin Clothing have recovery from CKI and PVH of the costs of this action and its reasonable attorneys' fees as provided for under 15 U.S.C. § 1117.

10.     That Calvin Clothing have such other and further relief as this Court may deem just and proper under the circumstances.

Respectfully submitted,

Dated: May 23, 2005                 By: _____
                                         Anthony F. Lo Cicero (NY 7538)
                                         *Pro Hac Vice*

                                         Joseph R. Solfanelli (PA 19044)
                                         David J. Solfanelli
                                         SOLFANELLI & SOLFANELLI
                                         800 Penn Security Bank, Suite 800
                                         142 North Washington Avenue
                                         Scranton, Pennsylvania  18503
Of counsel:                              Telephone: (570) 961-5824
                                         Facsimile: (570) 346-1425
Anthony F. Lo Cicero (NY 7538)
Marc J. Jason (NY 0934)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
Attorneys for Calvin Clothing Company, Inc.
90 Park Avenue
New York, New York  10016
Telephone: (212) 336-8000
Facsimile: (212) 336-8001

310825.1                              -25-

Joseph R. Solfanelli
David J. Solfanelli
SOLFANELLI & SOLFANELLI
800 Penn Security Bank, Suite 800
142 North Washington Avenue
Scranton, Pennsylvania  18503
Telephone: (570) 961-5824
Facsimile: (570) 346-1425

Anthony F. Lo Cicero
Marc J. Jason
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, New York  10016
Telephone: (212) 336-8000
Facsimile: (212) 336-8001

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA
## SCRANTON DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CALVIN CLOTHING COMPANY, INC.,     :

                              :        Civil Action No.

             PLAINTIFF,       :

                              :

    v.                         :

                              :

CALVIN KLEIN, INC.; CALVIN KLEIN     :
TRADEMARK TRUST and PHILLIPS-VAN     :
HEUSEN CORP.,                      :

               DEFENDANTS.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### CERTIFICATE OF SERVICE

       I hereby certify that on the 23rd day of May 2005, a copy of the Amended Complaint was served by Facsimile, First Class Mail, postage prepaid, and E-mail on the following counsel:

Edward E. Vassallo, Esq.
Tila M. Duhaime, Esq.
Fitzpatrick, Cella, Harper & Scinto
30 Rockefeller Plaza, 38th Floor
New York, New York 10112
Facsimile: (212) 218-2200
E-mail: TDuhaime@fchs.com

Michael P. Perry, Esq.
Christopher P. Caputo, Esq.
O'Malley, Harris, Durkin & Perry, PC
345 Wyoming Avenue
Scranton, PA 18503
Facsimile: (570) 348-4092
E-mail: CCaputo@omalleyandharris.com

310861.1

RESPECTFULLY SUBMITTED,

By:

Marc J. Jason
Pro Hac Vice
Amster Rothstein & Ebenstein LLP
90 Park Avenue
New York, N.Y. 10016

310861.1