Anthony F. Lo Cicero (AL 7538)
Marc J. Jason (MJ 0934)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY  10016
Tel:  (212) 336-8000
Fax:  (212) 336-8001
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| PHILLIPS-VAN HEUSEN CORP.,<br>CALVIN KLEIN, INC. and CALVIN<br>KLEIN TRADEMARK TRUST,<br><br>            Plaintiffs,<br><br>        v.<br><br>CALVIN CLOTHING COMPANY, INC.,<br>and STAR RIDE KIDS, INC.,<br><br>            Defendants. | Civil Action No. 05-CV-6802 (JSR)<br><br>**DEFENDANTS' ANSWER,<br>AFFIRMATIVE DEFENSES AND<br>COUNTERCLAIMS** |

- - - - - - - - - - - - - - - - - - - - -x

Defendants Calvin Clothing Company, Inc. ("Calvin Clothing") and Star Ride Kids, Inc. ("Star Ride") (together referred to as the "Defendants"), by their attorneys, for their answer and affirmative defenses to the Complaint filed by plaintiffs Phillips-Van Heusen Corp. ("PVH"), Calvin Klein, Inc. ("CKI") and the Calvin Klein Trademark Trust ("the Trust") (collectively, the "Plaintiffs") states as follows:

<u>Nature of Action</u>

1.     Defendants admit that the Plaintiffs have brought this action for trademark infringement, trademark dilution, false designation of origin and unfair competition.  Defendants further admit that Plaintiffs seek a declaratory judgment that

321858.1

use by Plaintiffs of a "Calvin" mark does not violate any rights of Calvin Clothing. Defendants further admit that this action also seeks cancellation of five of Calvin Clothing's trademark registrations and seeks to prevent registration of six of its pending applications.  Except as specifically admitted herein, Defendants deny the truth of the allegations of paragraph 1.  The Defendants further specifically deny that the Plaintiffs have any rights in and to the mark "Calvin" alone, and deny that the Plaintiffs are entitled to any of the relief that they seek.

The Parties

2.      The Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2, and accordingly deny the same.

3.      The Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3, and accordingly deny the same.

4.      The Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of the first two sentences of paragraph 4, and accordingly deny the same.  The Defendants admit that Warnaco is not a party to this suit.

5.      Calvin Clothing admits the truth of the allegations of paragraph 5, except that Calvin Clothing denies that the activities complained of herein occurred at offices in New York.  Calvin Clothing further denies that it has conducted any business in

New York since approximately 2003.  Star Ride is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 5.

6.    Star Ride admits the truth of the allegations of paragraph 6.  Calvin Clothing is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 6.

<u>Jurisdiction and Venue</u>

7.    The Defendants admit the jurisdictional bases of this action.  The Defendants deny that the Plaintiffs are entitled to the relief that they seek.

8.    The Defendants admit that venue is proper in this district.  The Defendants deny that their activities give rise to any actionable claims by Plaintiffs, and further deny that a substantial part of the activities giving rise to Plaintiffs' claims occurred or will occur in this district.

Plaintiffs' World Famous "Calvin Klein"<br><u>Trademarks and the Federal Registrations Therefor</u>

9.    The Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9, and accordingly deny the same.

10.    The Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10, and accordingly deny the same.

11.    The Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11, and accordingly deny the same.

-3-

12.     The Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12, and accordingly deny the same.

13.     The Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13, and accordingly deny the same.

14.     The Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14, and accordingly deny the same.

15.     The Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15, and accordingly deny the same.

16.     The Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 16, and accordingly deny the same.

17.     The Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17, and accordingly deny the same.

18.     The Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18, and accordingly deny the same.

321858.1

<u>The Public's Association of "Calvin" With CKI</u>

19.    The Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19, and accordingly deny the same.

20.    The Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20, and accordingly deny the same.

<u>Defendant CCC's Predecessor</u>

21.    Calvin Clothing admits that use of its "Calvin" mark by its predecessor on boys' tailored clothing began in the 1930's.  Calvin Clothing further admits that a predecessor began use of the "Calvin" mark on men's tailored clothing at a later time, in about the late 1960's.  Calvin Clothing further admits that its predecessor obtained U.S. Registration Nos. 933,999 and 1,039,306.  Calvin Clothing specifically denies that its predecessor's sales of men's tailored clothing was "periodic," and that its uses of the "Calvin" mark was "limited."  Star Ride is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 21.

22.    Calvin Clothing denies the truth of the allegations of paragraph 22. Star Ride is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22, and accordingly denies the same.

<u>In 1996, Defendant CCC Acquired the Assets
of the Calvin Boys' Tailored Clothing Business</u>

23.    Calvin Clothing admits that in 1996, the Alperin family formed Calvin Clothing and purchased the assets of the on-going business of the boys' tailored clothing

-5-

321858.1

division of Plaid Holdings, Inc., including without limitation, all raw materials, work in process, finished goods, orders, patterns and designs, as well as all of the CALVIN trademarks and certain other trademarks. Calvin Clothing further admits that, as part of the global transaction, the value assigned to the trademarks in the Asset Purchase Agreement was one dollar. Star Ride is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23.

Defendants' Wrongful Activities

24.     Calvin Clothing admits having filed the applications referenced in paragraph 24 and states that the applications and the registrations that issued thereon speak for themselves. Calvin Clothing denies that the applications were for "a wide range of clothing never previously sold by CCC's predecessors in the decades of its existence." Star Ride is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24.

25.     Calvin Clothing denies the truth of the allegations of paragraph 25. Star Ride is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25.

26.     Calvin Clothing admits that CKI filed oppositions and petitions to cancel the referenced ten applications and registrations, and that the proceedings have been stayed by the PTO. Except as specifically admitted herein, Calvin Clothing denies the truth of the remaining allegations of paragraph 26. Star Ride is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26.

27.    Calvin Clothing denies the truth of the allegations of paragraph 27. Star Ride is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 27.

28.    Defendants admit that Calvin Clothing has licensed "Calvin" marks to Star Ride covering many of the product categories in the trademark registrations reflected in paragraph 24 above.  Except as specifically admitted herein, Defendants deny the truth of the remaining allegations of paragraph 28.

<u>The Pennsylvania Action</u>

29.    Calvin Clothing admits the truth of the allegations of paragraph 29. Star Ride is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 29.

30.    Calvin Clothing admits the truth of the allegations of paragraph 30. Star Ride is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 30.

31.    Calvin Clothing admits the truth of the allegations of paragraph 31. Star Ride is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 31.

Count I
<u>Declaratory Judgment</u>

32.    Defendants repeat and incorporate by reference their replies to the allegations contained in paragraphs 1 through 31 above.

33.    Calvin Clothing admits the truth of the allegations of paragraph 33. This Count is not directed at Star Ride, and therefore no response to the allegations of this paragraph is required from Star Ride.

34.    Calvin Clothing denies the truth of the allegations of paragraph 34. This Count is not directed at Star Ride, and therefore no response to the allegations of this paragraph is required from Star Ride.

35.    Calvin Clothing admits that the Plaintiffs seek a declaration from this Court, but denies that the Plaintiffs are entitled to the declaration that they seek.  This Count is not directed at Star Ride, and therefore no response to the allegations of this paragraph is required from Star Ride.

Count II
Cancellation of Reg. No. 1,039,306

36.    Defendants repeat and incorporate by reference their replies to the allegations contained in paragraphs 1 through 31 above.

37.    Calvin Clothing admits that CKI and the Trust have petitioned to cancel Calvin Clothing's Registration No. 1,039,306 and that the PTO has stayed that proceeding.  Calvin Clothing denies that CKI and the Trust are entitled to cancel such registration.  This Count is not directed at Star Ride, and therefore no response to the allegations of this paragraph is required from Star Ride.

38.    Calvin Clothing denies the truth of the allegations of paragraph 38. This Count is not directed at Star Ride, and therefore no response to the allegations of this paragraph is required from Star Ride.

321858.1

39.     Calvin Clothing admits that CKI and the Trust seek an Order to cancel Reg. No. 1,039,306, but denies that CKI and the Trust are entitled to such Order.  This Count is not directed at Star Ride, and therefore no response to the allegations of this paragraph is required from Star Ride.

Count III
Dismissal with Prejudice of Defendants' Six Pending
Trademark Applications and Cancellations
of Defendants' Four New Trademark Registrations

40.     Defendants repeat and incorporate by reference their replies to the allegations contained in paragraphs 1 through 31 above.

41.     Calvin Clothing denies the truth of the allegations of paragraph 41. This Count is not directed at Star Ride, and therefore no response to the allegations of this paragraph is required from Star Ride.

42.     Calvin Clothing admits that CKI and the Trust seek the Court orders referenced in paragraph 42, but denies that CKI and the Trust are entitled to such Court orders.  This Count is not directed at Star Ride, and therefore no response to the allegations of this paragraph is required from Star Ride.

Count IV
Infringement of Plaintiffs'
Federal Trademark Registrations

43.     Defendants repeat and incorporate by reference their replies to the allegations contained in paragraphs 1 through 31 above.

44.     Defendants admit the truth of the allegations of the first sentence of paragraph 44.  Defendants deny the truth of the allegations of the second sentence of paragraph 44.

Count V
<u>False Designation of Origin</u>

45.     Defendants repeat and incorporate by reference their replies to the allegations contained in paragraphs 1 through 31 above.

46.     Defendants deny the truth of the allegations of paragraph 46.

Count VI
<u>Federal Trademark Dilution</u>

47.     Defendants repeat and incorporate by reference their replies to the allegations contained in paragraphs 1 through 31 above.

48.     Defendants deny the truth of the allegations of paragraph 48.

Count VII
<u>Common Law Trademark Infringement</u>

49.     Defendants repeat and incorporate by reference their replies to the allegations contained in paragraphs 1 through 31 above.

50.     Defendants deny the truth of the allegations of paragraph 50.

Count VIII
<u>Unfair Competition and Dilution Under State Law</u>

51.     Defendants repeat and incorporate by reference their replies to the allegations contained in paragraphs 1 through 31 above.

52.     Defendants deny the truth of the allegations of paragraph 50.

<u>First Affirmative Defense</u>

53.     The Complaint fails to state a claim upon which relief can be granted.

-10-

<u>Second Affirmative Defense</u>

54.     Calvin Clothing's rights in the "Calvin" trademarks predate any alleged rights of the Plaintiffs and are superior to those of the Plaintiffs.

<u>Third Affirmative Defense</u>

55.     Plaintiffs' causes of action are barred by the doctrine of laches.

<u>Fourth Affirmative Defense</u>

56.     Plaintiffs are barred from obtaining any relief sought in the Complaint by reason of their own unclean hands.

<u>Fifth Affirmative Defense</u>

57.     Plaintiffs' causes of action are barred by the doctrines of estoppel and waiver.

WHEREFORE, Defendants demand:

1.     A judgment dismissing the Complaint with prejudice; and

2.     Such other and further relief as the Court may deem just and proper.

## **COUNTERCLAIMS**

Defendant/Counterclaim Plaintiff Calvin Clothing Company, Inc. ("Calvin Clothing"), by and through its attorneys, complaining of Plaintiffs/Counterclaim Defendants Calvin Klein, Inc. ("CKI") and Calvin Klein Trademark Trust (the "Trust") (together, CKI and the Trust are "Calvin Klein") and Phillips-Van Heusen Corp. ("PVH") (collectively, "Counterclaim Defendants"), alleges as follows:

-11-

## Nature Of The Action

1.     Calvin Clothing seeks a declaratory judgment adjudging and declaring that it is the senior user throughout the United States of the trademark CALVIN, as applied to apparel, and in particular men's and children's apparel. Furthermore, Calvin Clothing seeks injunctive relief and damages for acts of trademark infringement, false designation of origin, unfair competition and unfair trade practices engaged in by Counterclaim Defendants CKI and PVH in violation of the laws of the United States, the State of New York, the Commonwealth of Pennsylvania and other states.  Those acts involve CKI's and PVH's use of the trademark CALVIN on men's and children's apparel in contravention of Calvin Clothing's acknowledged rights in that mark.

## The Parties

2.     Calvin Clothing is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania, having an office and place of business at 300 Brook Street, Scranton, PA 18505.

3.     Upon information and belief, CKI is a corporation duly organized and existing under the laws of the State of New York, and which maintains its headquarters at 205 West 39th Street, New York, New York 10016.

4.     Upon information and belief, the Trust is a business trust organized and existing under the laws of the State of Delaware, which maintains an office at 205 West 39th Street, New York, New York 10018.  Upon further information and belief, the

Trust is the record owner of certain trademarks complained of herein, and is doing and/or transacting business within this judicial district.

5.     Upon information and belief, Calvin Klein is a wholly-owned subsidiary of PVH, a corporation duly organized and existing under the laws of the State of Delaware, and which maintains its headquarters at 200 Madison Avenue, New York, New York 10016.  Upon further information and belief, PVH is doing and/or transacting business within this judicial district.

### Jurisdiction And Venue

6.     These Counterclaims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.*; and related claims pursuant to the common law of the State of New York, the Commonwealth of Pennsylvania, and other states.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338 and 1367 and 15 U.S.C. § 1121.

7.     Venue is appropriate in this district pursuant to 28 U.S.C. § 1391 in that the Counterclaim Defendants reside in this district.

### Facts

#### Calvin Clothing and its Use and Ownership of the CALVIN Mark

8.     Calvin Clothing has been manufacturing apparel under the CALVIN label for almost seventy (70) years.  It was started in 1935 by a gentleman who named the new company after his young son, Calvin Siegal.  At that time, Calvin Clothing began using the mark CALVIN at least on boys' suits and tailored clothing, including dress trousers and sports jackets.

-13-

9.     Over the years, Calvin Clothing's business became successful, and apparel bearing the CALVIN trademark was sold throughout the United States.  Calvin Siegal eventually joined the company in 1948 and became its president in 1951.  His son, Henry Siegal, subsequently joined the company and was its president through the 1980's until 1992.

10.    Throughout its history, the company responded to the fashion tastes of its customers and changes in the apparel market.  For example, in the late 1960's, Calvin Clothing naturally expanded its activities and began using the CALVIN mark on men's suits and sports coats, and such use has continued to the present day.  During the 1970's and 1980's, Calvin Clothing also produced a line of men's apparel including suits, sport coats and overcoats under the CFM CALVIN FOR MEN brand.

11.    Beginning in the 1970's, a Scranton, PA based business, owned by the Alperin family, was a key trouser supplier of Calvin Clothing.  As Calvin Clothing thrived, so did its relationship with Gold Star, Mfg., AAA Trouser and Mayflower, Mfg., the Alperin family businesses.  At its peak, Calvin Clothing's patronage was responsible for over 35% of the 600 employees of these companies.  In 1993, the Alperin family began to take steps to insulate its factories and employees from foreign competition by selling its products directly to retailers.  In furtherance of this strategy, it successfully acquired several apparel companies and ultimately acquired the Calvin Clothing business.

12.    As a result of industry trends, especially the consolidation among manufacturers and retailers, Calvin Clothing was bought by Palm Beach Inc. in 1980, which in turn was purchased by Crystal Brands in 1988, and, ultimately, by Plaid

Holding's, Inc. in 1992.  Unable to resist foreign competitive pressures, Plaid Holding's

filed for bankruptcy in 1994, and the management of the continuously profitable Calvin

Clothing division suggested that the Alperin family consider purchasing the division from

Plaid Holding's.  In May 1995, the Alperin family purchased the assets of the business,

including all raw materials, work in process, finished goods, orders, patterns and designs

and trademarks (including the CALVIN trademarks).

13.    Around the time of the Alperin family's acquisition of the Calvin

Clothing business, a fashion trend was developing which necessitated an adjustment of

the product line.  Men and children were wearing fewer suits and people started

"dressing down."  It was becoming acceptable for boys to attend church and other special

events in something other than suits or blazers and dress slacks.  Calvin Clothing

successfully reacted to these trends by creating its CALVIN sportswear lines.

14.    Over the years, the Alperin family has purchased several companies

serving various segments of the apparel market.  They have developed product lines

under the CALVIN trademark to take advantage of cross marketing opportunities and

economics and efficiencies of scale.  The company has manufactured lines of CALVIN

mens' tailored clothing, boys' and girls' sportswear, infant and toddler wear and school

uniform apparel as part of the product lines of each of its businesses.  Currently, CALVIN

labeled product represents approximately $12,000,000 in annual retail volume, down

from a level of $20 million at its peak in 2002.

321858.1

15.  Beginning more than three decades ago, Calvin Clothing began to register its CALVIN mark with the U.S. Patent and Trademark Office ("PTO").  Calvin Clothing is now the owner of the following federal trademark registrations:

(a)  U.S. Trademark Registration No. 933,999, issued May 16, 1972, for the mark CALVIN for boys' and students' tailored clothing, consisting of [coats], pants, slacks, top coats and sport coats ("the '999 Registration");

(b)  U.S. Trademark Registration No. 1,039,306, issued May 11, 1976, for the mark CALVIN for men's suits and sport coats ("the '306 Registration");

(c)  U.S. Trademark Registration No. 2,453,672, issued May 22, 2001, for the mark CALVIN (design), for boys' and children's clothing, namely, suits, sportcoats, trousers, shirts, pullover vests, sweaters, socks, overalls, coats and jackets ("the '672 Registration");

(d)  U.S. Trademark Registration No. 2,573,181, issued May 28, 2002, for the mark CALVIN (design), for outerwear, namely, raincoats, topcoats, ski jackets, wind resistant jackets, vest coats, jackets, shirts, dresses, sports coats, suits, shorts, sweaters, pants, trousers and leggings ("the '181 Registration");

(e)  U.S. Trademark Registration No. 2,573,182, issued May 28, 2002, for the mark CALVIN (design), for outerwear, namely, raincoats, topcoats, ski jackets, wind resistant jackets, vest coats, jackets, shirts, dresses, sports coats, suits, shorts, sweaters, pants, trousers and leggings ("the '182 Registration");

(f)  U.S. Trademark Registration No. 2,573,183, issued May 28, 2002, for the mark CALVIN COLLECTION, for outerwear, namely, raincoats, topcoats, ski jackets, wind resistant jackets, vests, coats, jackets, shirts, dresses, sports coats, suits, shorts, sweaters, pants, trousers and leggings ("the '183 Registration");

-16-

16.   Both the '999 Registration and the '306 Registration have become incontestable pursuant to 15 U.S.C. § 1065.  As a result, subject to exceptions not relevant here, the '999 and '306 Registrations are conclusive evidence of the validity of the registered CALVIN mark, of Calvin Clothing's ownership of that mark and its exclusive right to use that mark in commerce in connection with the goods listed in those registrations.

17.   Calvin Clothing's registrations are all in full force and effect and, along with Calvin Clothing's goodwill in connection with its use of the CALVIN mark, have never been abandoned.

18.   In addition to the above referenced registrations, Calvin Clothing is the owner of following federal trademark applications:

(a)   United States Trademark Application No. 76/029,753 for the trademark BABY CALVIN for clothing for infants and children, namely, shirts, blouses, sweatshirts, t-shirts, tank tops, sweaters, coats, vests, shorts, pants, leggings, jump suits, jumpers, skirts, dresses, bathing suits, overalls, bib overalls, pajamas, hats, mittens, dickies, socks and tights;

(b)   United States Trademark Application No. 76/029,754 for the trademark BABY CALVIN (design) for clothing for infants and children, namely, shirts, blouses, sweatshirts, t-shirts, tank tops, sweaters, coats, vests, shorts, pants, leggings, jump suits, jumpers, skirts, dresses, bathing suits, overalls, bib overalls, pajamas, hats, mittens, dickies, socks and tights;

(c)   United States Trademark Application No. 75/477,627 for the trademark CALVIN SPORT for shirts, suits, sport coats, shorts, trousers and vests;

(d)   United States Trademark Application No. 75/477,628 for the trademark CALVIN AMERICA for shirts, suits, sport coats, shorts, trousers and vests;

-17-

(e)   United States Trademark Application No. 76/365,813 for the trademark CALVIN SCHOOLWEAR (design) for clothing and gymwear, namely, shirts, sweaters, jumpers, shorts, pants, sport jackets, skirts, jackets, belts, ties and socks; and

(f)   United States Trademark Application No. 76/365,814 for the trademark CALVIN SCHOOLWEAR for clothing and gymwear, namely, shirts, sweaters, jumpers, shorts, pants, sport jackets, skirts, jackets, belts, ties, socks and shoes.

19.   Calvin Clothing's apparel offered under the CALVIN mark has been successful for decades.  It is sold throughout the United States in specialty stores and department stores, and has achieved a well deserved reputation for high quality.  As a result, the CALVIN mark and the goodwill associated therewith are of inestimable value to Calvin Clothing.

Calvin Klein and its Co-Existence Under the CALVIN
KLEIN mark with Calvin Clothing's CALVIN Mark

20.   Calvin Klein began doing business in the 1960's, and in or about 1968 it began using the mark CALVIN KLEIN on women's coats, more than thirty years after Calvin Clothing first used the mark CALVIN.  On information and belief, Mr. Klein himself had been aware of Calvin Clothing and the CALVIN brand from the early stages of his career.

21.   Throughout Mr. Klein's incredibly successful career building his name into a mega brand, Calvin Clothing has taken the position that as long as apparel products were identified as originating from Calvin Klein, they were distinct and would not hurt Calvin Clothing's very successful CALVIN brand.  Over the years there is ample evidence of the two companies' "understanding" of this tacit agreement, and it was in the interest of both companies to maintain this status quo.

-18-

22.    In January and February 1975, Calvin Clothing placed Calvin Klein on actual, written notice that Calvin Clothing had been using its CALVIN mark on men's clothing of Calvin Clothing's '999 Registration for boys' and students' clothing, and of its use and application to register the mark CFM CALVIN FOR MEN for men's clothing.[1]

23.    At that time, in 1975, Calvin Klein acknowledged Calvin Clothing's right to the mark CALVIN for menswear by stating in writing that "we have no complaint with regard to [Calvin Clothing's] use of [its] trademark 'Calvin' in connection with menswear."

24.    Upon information and belief, during the late 1970's, Calvin Klein expanded its use of the CALVIN KLEIN trademark from women's apparel to men's suits and tailored clothing, years after Calvin Clothing had expanded from boys' and students' apparel to men's suits and tailored clothing under its CALVIN brand.

25.    Thereafter, in 1980 and 1982, with knowledge of Calvin Clothing's trademark rights and registrations of CALVIN for boys' and men's suits and tailored clothing, Calvin Klein filed applications to register the CALVIN KLEIN trademark for men's tailored clothing.  In doing so, it swore under oath that such uses would not cause confusion with any other prior trademark.  Subsequently, Calvin Klein further expanded its CALVIN KLEIN brand into childrenswear, decades after Calvin Clothing had begun in that field.

26.    In 1982, when Calvin Klein licensed a line of boys' wear to Puritan Fashions, Calvin Clothing agreed not to object "as long as all persons having to do with

---

[1]   The mark CFM CALVIN FOR MEN was registered by Calvin Clothing on January 27, 1977. This mark has since been abandoned.

sales, advertising labeling, packaging and licensing boys' wear under the name Calvin Klein should be advised that any and all references to such products should be by the full name 'Calvin Klein' and not by the abbreviation of the name to 'Calvin' alone."

27.   In 1992, Calvin Klein filed a trademark application for boys' suits and sport coats, identical products being sold at the same time under the CALVIN trademark, signing a sworn declaration that the mark CALVIN KLEIN was not confusingly similar to any other mark of which it was aware.  Again, Calvin Clothing did not object.

28.   Upon information and belief, the CALVIN KLEIN brand has been very successful.  Upon information and belief, Calvin Klein and its licensees have spent more than one billion dollars in advertising and promoting the brand and have grossed many billions of dollars in sales of CALVIN KLEIN branded products.

29.   Upon information and belief, PVH purchased Calvin Klein, including all of its intellectual property, in or about 2003.

The Prior Working Relationship Between Calvin Clothing and Calvin Klein

30.   For decades, the parties co-existed relatively peacefully.  They confirmed the scope of their respective rights amongst themselves, namely that Calvin Clothing owned the CALVIN mark and Calvin Klein owned the CALVIN KLEIN mark. Further, as evidenced by the federal trademark registrations received by the parties, the PTO has also decided that the parties can co-exist under their respective marks, even for identical goods, since the PTO is prohibited by law from issuing registrations for confusingly similar trademarks.  15 U.S.C. § 1052(d).

-20-

31.     Several times in the late 1970's and early 1980's, Calvin Clothing made it clear in writing that it considered any use of the name CALVIN alone, separate from the surname KLEIN, to be an infringement of Calvin Clothing's rights.  Calvin Klein evidently agreed, since when Calvin Klein sought to use the name CALVIN separate from KLEIN, it sought Calvin Clothing's permission to do so.  In making one such request in 1983, Calvin Klein indicated that its use of the phrase CALVIN'S would always be accompanied by the full name, CALVIN KLEIN.

32.     As such, the parties agreed, throughout their course of dealing, to differentiate their product lines by their respective trademarks, CALVIN and CALVIN KLEIN.  The parties even cooperated in joint efforts to police their brands.

33.     Now, after more than thirty years of peaceful coexistence, and particularly after the purchase of Calvin Klein by PVH, on information and belief, the Counterclaim Defendants have launched a frontal assault intended to put Calvin Clothing out of business.  Bruce Klatsky, Chairman and CEO of PVH, has stated in discussions with Calvin Clothing that Calvin Clothing's right to use the CALVIN brand should be limited to boys' tailored clothing.  Furthermore, other representatives of the Counterclaim Defendants have now asserted that any use by Calvin Clothing of the mark CALVIN is an infringement of the CALVIN KLEIN brand.  Statements to this effect have been explicitly made by Tom Murry, the President of Calvin Klein, Inc., as well as by Mr. Klein himself, who has stated on the record at his deposition in a related proceeding that use of the word "Calvin" standing alone by Calvin Clothing on any item of apparel infringes Calvin Klein's rights.

-21-

34. As a result of the Counterclaim Defendants' newly antagonistic position with respect to Calvin Clothing's CALVIN mark, Calvin Clothing has been unable to aggressively sell its products and market its brand.

35. In August of 2003, Calvin Clothing contacted Tom Murry, President of Calvin Klein, expressing concern about a press release announcing that a Calvin Klein licensee, Happy Kids, "has been chosen to spearhead the return of the chic, notoriously provocative Calvin Klein label to the kids scene with rights to develop product in all categories for boys and girls." This represented Calvin Klein's expansion into identical products competing in Calvin Clothing's existing distribution channels, and Calvin Clothing expressed concerns that the prior understandings between the companies should not be breached. Tom Murry assured Calvin Clothing that Happy Kids was not planning to produce any products other than jeanswear and that Happy Kids would be advised to always refer to products and the licensor by the full "Calvin Klein" name.

36. Despite these assurances, the September 2004 issue of Children's Business contained an interview with Mark Benun, VP of Happy Kids, disturbingly describing the product line. Benun said, "we've taken all the traditional categories and styles and redone them to a 'Calvin' point of view while supporting our bottoms." This was only one of several references in the interview where Benun described the line as being from "Calvin" and the products as well beyond the jeans and tee shirts previously produced under the CALVIN KLEIN trademarks.

37. Furthermore, upon information and belief, Calvin Klein or its licensee has sold and is selling t-shirts prominently emblazoned with the label "Calvin."

-22-

38.   In the PTO, Calvin Klein has opposed Calvin Clothing's applications to register the marks CALVIN AMERICA, CALVIN SPORT, CALVIN BABY and CALVIN SCHOOLWEAR, arguing that Calvin Clothing has rights in only boys and students tailored clothing and is impermissibly expanding its brand into areas of apparel that are likely to cause consumer confusion with the CALVIN KLEIN brand.  They argue this despite the fact that the apparel in question is already substantially covered by Calvin Clothing's registrations for the CALVIN mark.  These opposition proceedings are currently stayed, and the Counterclaim Defendants have asserted claims in this action seeking to compel Calvin Clothing to file express abandonments of these applications.

39.   Furthermore, Calvin Klein has instituted cancellation proceedings in the PTO to cancel the '306, '672, '181, '182 and '183 Registrations contending for the first time that the registrations for the CALVIN (or CALVIN COLLECTION) marks are likely to cause confusion with the CALVIN KLEIN mark and should be cancelled.  The Counterclaim Defendants have also asserted claims in this action seeking to cancel these registrations.

40.   These actions by the Counterclaim Defendants fly in the face of more than thirty years of dealings between the parties and rulings by the PTO.  In taking these actions, Counterclaim Defendants are either seeking to destroy Calvin Clothing's right to use the CALVIN mark or, at a minimum, to pigeonhole Calvin Clothing into an unsustainable niche market and improperly to restrict Calvin Clothing's right to use its mark to a narrow subset of goods covered by its original trademark registration.  In addition, the Counterclaim Defendants seek to improperly circumscribe the natural zones

-23-

of expansion of Calvin Clothing's CALVIN brand within the apparel industry, even though such zones of expansion are covered by Calvin Clothing's existing trademark registrations.  In this way the Counterclaim Defendants seek to drive Calvin Clothing out of business.

COUNT I  (Against All Counterclaim Defendants)
Declaratory Judgment (28 U.S.C. §§ 2201, 2202)

41.   Calvin Clothing repeats and realleges each and every allegation set forth in paragraphs 1 through 40 above as if fully set forth herein.

42.   As set forth above, an actual controversy exists between Calvin Clothing and the Counterclaim Defendants with respect to rights regarding the CALVIN trademark.  The Counterclaim Defendants' threats, including that any use by Calvin Clothing of the mark CALVIN constitutes an infringement of the CALVIN KLEIN brand, created on the part of Calvin Clothing a reasonable apprehension that the Counterclaim Defendants would ultimately initiate a suit for trademark infringement.  This action instituted by the Counterclaim Defendants bears out that apprehension.

43.   Despite their statements and threats to the contrary, the Counterclaim Defendants do not own any protectible rights under the Trademark Act in the name and mark CALVIN with respect to apparel, and in particular, men's and children's apparel.  Calvin Clothing's use of the mark CALVIN with respect to such apparel predates any use by Counterclaim Defendants by years or even decades.

44.   Use by Calvin Clothing of the mark CALVIN on men's or children's apparel does not infringe any rights that Counterclaim Defendants may have.

-24-

COUNT II  (Against CKI and PVH)
Trademark Infringement (15 U.S.C. §1114)

45.   Calvin Clothing repeats and realleges each and every allegation set forth in paragraphs 1 through 40 above as if fully set forth herein.

46.   CKI's and PVH's use on apparel of the CALVIN trademark in interstate commerce constitutes trademark infringement without the consent of Calvin Clothing in violation of 15 U.S.C. §1114, in that such use is likely to cause reverse confusion, deception and mistake among the consuming public and trade as to the source or origin of Calvin Clothing's apparel products bearing such CALVIN mark.

47.   CKI and PVH have saturated the market with advertising and promotion of their brand such that the same has overwhelmed Calvin Clothing, and CKI and PVH are now misappropriating the CALVIN trademark.  As a result, Calvin Clothing has lost value in its CALVIN trademark, its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets.

48.   The manufacture, promotion, offering for sale and sale of apparel by CKI and PVH bearing the CALVIN brand is likely to cause confusion and mistake in the minds of the purchasing public, and, in particular, tends to and does falsely create the impression that the Calvin Clothing's products are authorized, sponsored, or approved by CKI and PVH when, in fact, they are not.

49.   Upon information and belief, CKI and PVH have acted willfully, in knowing and direct contravention of Calvin Clothing's rights.

50.   Such conduct on the part of CKI and PVH has caused and will continue to cause irreparable injury to Calvin Clothing, including injury to its reputation

for which it has no adequate remedy at law, and damage in an amount to be proved at trial.

COUNT III  (Against CKI and PVH)
False Designation of Origin (15 U.S.C. §1125(a) )

51.   Calvin Clothing repeats and realleges each and every allegation set forth in paragraphs 1 through 40 above as if fully set forth herein.

52.   CKI's and PVH's use on apparel of the CALVIN trademark in interstate commerce constitutes false designation of origin or false or misleading descriptions or representations of fact without the consent of Calvin Clothing in violation of 15 U.S.C. §1125(a), in that such use is likely to cause confusion, deception and mistake among the consuming public and trade as to the source or origin of Calvin Clothing's apparel products bearing such CALVIN mark.

53.   Such conduct on the part of CKI and PVH has caused and will continue to cause irreparable injury to Calvin Clothing, including injury to its reputation and the dilution of the distinctive quality of its marks, for which it has no adequate remedy at law, and damage in an amount to be proved at trial.

COUNT IV  (Against CKI and PVH)
Common Law Unfair Competition

54.   Calvin Clothing repeats and realleges each and every allegation set forth in paragraphs 1 through 40 above as if fully set forth herein.

55.   This claim arises under the common law of the State of New York, the Commonwealth of Pennsylvania and other states and alleges willful and intentional unfair competition by CKI and PVH.

-26-

56.    As more fully set forth above, the use by CKI and PVH of the mark
CALVIN on their products constitutes passing off, unfair methods of competition,
unconscionable acts and practices, and unfair and deceptive acts and practices wherein
CKI's and PVH's conduct is likely to cause confusion in the trade as to the source of
Calvin Clothing's products, or is likely to lead the public to believe that Calvin Clothing
and its goods are in some way connected with Calvin Klein when in fact they are not, all
to the detriment of Calvin Clothing and in violation of the common law of the State of
New York, the Commonwealth of Pennsylvania and other states.

57.    Such conduct on the part of CKI and PVH has caused and will
continue to cause irreparable injury to Calvin Clothing, including injury to its reputation
and the dilution of the distinctive quality of its marks, for which it has no adequate
remedy at law, and damage in an amount to be proved at trial.

WHEREFORE, Defendant/Counterclaim Plaintiff Calvin Clothing prays for
judgment as follows:

1.    A judicial declaration by this Court that Calvin Clothing is entitled
and authorized to use in interstate commerce the mark CALVIN in connection with
apparel, and in particular, men's and children's apparel.

2.    A judicial declaration that Calvin Clothing's rights in the mark
CALVIN on apparel, and in particular, men's and children's apparel, were prior to and
are superior to the rights of Counterclaim Defendants.

3.    A judicial declaration that the Counterclaim Defendants do not own any protectible rights under the Trademark Act in the name and mark CALVIN with respect to apparel, and in particular, men's and children's apparel.

4.    That a permanent injunction be issued enjoining CKI and PVH and their officers, directors, principals, agents, servants, successors, assigns, employees, attorneys, and all persons in active concert or participation with them:

a.    from using the CALVIN mark, or any marks confusingly similar thereto, in connection with the sale or offering for sale of apparel;

b.    from otherwise infringing the CALVIN mark;

c.    from otherwise unfairly competing with Calvin Clothing or infringing Calvin Clothing's rights;

5.    That CKI and PVH be required to take affirmative steps to explain to the media that CKI's and PVH's brand is CALVIN KLEIN and not CALVIN.

6.    That CKI and PVH be required, pursuant to 15 U.S.C. § 1118, to deliver up for destruction all of their apparel products bearing the CALVIN mark.

7.    That the Court award damages to Calvin Clothing resulting from the infringing activities of CKI and PVH, and that the award to Calvin Clothing be increased as provided for under 15 U.S.C. § 1117.

8.    That Calvin Clothing have recovery of damages, including punitive damages, from CKI and PVH pursuant to the laws of the State of New York, the Commonwealth of Pennsylvania and other states.

9.   That Calvin Clothing have recovery from CKI and PVH of the costs of this action and its reasonable attorneys' fees as provided for under 15 U.S.C. § 1117.

10.   That Calvin Clothing have such other and further relief as this Court may deem just and proper under the circumstances.

This 21 day of September, 2005.

By: _____
Anthony F. LoCicero (AL 7538)
Marc J. Jason (MJ 0934)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
Attorneys for Defendants
90 Park Avenue
New York, NY  10016
Tel:  (212) 336-8000
Fax:  (212) 336-8001
Attorneys for Defendants/
Counterclaim Plaintiffs

321858.1

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served via facsimile and U.S. Mail first class delivery on September 21, 2005 a copy of the foregoing DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS upon attorneys for plaintiffs:

> Edward E. Vassallo, Esq.
> Timothy J. Kelly, Esq.
> James M. Gibson, Esq.
> Tila M. Duhaime, Esq.
> FITZPATRICK, CELLA, HARPER & SCINTO
> 30 Rockefeller Plaza
> New York, New York 10112-3800
> Tel: (212) 218-2100
> Fax: (212) 218-2200

Marc J. Jason

321858.1