Anthony F. Lo Cicero (AL 7538)
Marc J. Jason (MJ 0934)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
Tel: (212) 336-8000
Fax: (212) 336-8001
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – –x

| | |
|---|---|
| PHILLIPS-VAN HEUSEN CORP.,<br>CALVIN KLEIN, INC. and CALVIN<br>KLEIN TRADEMARK TRUST,<br><br>              Plaintiffs,<br><br>        v.<br><br>CALVIN CLOTHING COMPANY, INC.,<br>and STAR RIDE KIDS, INC.,<br><br>              Defendants. | Civil Action No. 05-CV-6802 (JSR)<br><br>ECF Case<br><br>**MEMORANDUM OF LAW IN<br>SUPPORT OF DEFENDANTS'<br>MOTION FOR PARTIAL<br>SUMMARY JUDGMENT<br>DISMISSING (1) PLAINTIFFS'<br>CLAIMS FOR MONETARY<br>RELIEF AND (2) COUNT II OF<br>THE COMPLAINT** |

– – – – – – – – – – – – – – – – – – – – –x

Defendants Calvin Clothing Company, Inc. ("Calvin Clothing") and Star Ride Kids,

Inc. ("Star Ride"), by and through their counsel, submit this memorandum of law in

support of their motion for partial summary judgment in their favor as to Paragraphs 6-8

of the *ad damnum* clause of the Complaint, which seek monetary relief against

defendants, and as to Count II of the Complaint, which seeks cancellation of Calvin

Clothing's registration for the trademark CALVIN for men's suits and sport coats, U.S.

Trademark Registration No. 1,039,306 ("the '306 Registration").

325292.6

# Table of Contents

I.   PRELIMINARY STATEMENT ................................................................................ 1

II.  FACTUAL BACKGROUND.................................................................................... 2

   A. Ownership of the '306 Registration ...................................................................... 2

   B. The CALVIN Menswear Business ........................................................................ 3

III.  ARGUMENT.......................................................................................................... 8

   A. Plaintiff's Have Admitted That They Have Not Been Damaged by Defendants; and Their
      Claims for Monetary Relief Should Therefore be Stricken ..................................... 9

   B. Plaintiffs Have Failed to Prove That the CALVIN Mark for Menswear Has Been
      Abandoned; and Count II of the Complaint -- Which Seeks Cancellation of Calvin
      Clothing's Menswear Registration -- Should be Dismissed .............................. 11

      1.   The CALVIN Trademark Has Not Been Abandoned................................... 11

      2.   There Was No Abandonment Through Naked Licensing............................. 14

      3.   There Was No Fraud On The Trademark Office ......................................... 15

      4.   Plaintiffs Cannot Meet Their Heavy Burden of Proof ............................... 16

IV.  CONCLUSION...................................................................................................... 16

# Table of Authorities

Cases                                                                                          Page

*American Foods, Inc. v. Golden Flake, Inc.*,
312 F.2d 619 (5th Cir. 1963) ...................................................................................13

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).........................................................................................8, 10

*Anter v. Sharper Image Corp.*,
39 U.S.P.Q.2d 1282 (C.D. Cal. 1995).......................................................................13

*Brady v. Colchester*,
863 F.2d 205 (2d Cir. 1988)...................................................................................9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...............................................................................................8

*Creative Gifts, Inc. v. UFO*,
235 F.3d 540 (10th Cir. 2000) ...............................................................................13

*Dawn Donut Co. v. Hart's Food Stores, Inc.*,
267 F.2d 358 (2d Cir. 1959)..................................................................................12

*Exxon Corp. v. Oxxford Clothes, Inc.*,
109 F.3d 1070 (5th Cir. 1997) ...............................................................................13

*Frankel v. Central Moving & Storage Co., Inc.*,
1997 U.S. Dist. LEXIS 16886 (S.D.N.Y. 1997)........................................................14

*Goenaga v. March of Dimes Birth Defects Found.*,
51 F.3d 14 (2d Cir. 1995)........................................................................................8

*Healing Children, Inc. v. Heal Children, Inc.*,
786 F. Supp. 1209 (W.D. Pa. 1992).........................................................................11

*ITC Ltd. v. Punchgini, Inc.*,
373 F. Supp.2d 275 (S.D.N.Y. 2005)......................................................................8, 9

*Miller Brewing Co. v. Oland's Breweries (1971) Ltd.*,
548 F.2d 349 (C.C.P.A. 1976) .................................................................................9

*Morehouse Manufacturing Corp. v. Strickland*,
407 F.2d 881 (C.C.P.A. 1969) ...............................................................................14

*Pacific International Rice Mills, Inc. v. Rice Growers Ass'n,*
14 U.S.P.Q.2d 1659 (E.D. Cal. 1989)..........................................................................................11

*Parson's Co. v. Christman,*
9 U.S.P.Q.2d 1477 (T.T.A.B. 1988) ............................................................................................10

*Rosenthal A.G. v. Ritelite, Ltd.,*
986 F. Supp. 133 (E.D.N.Y. 1997) ..............................................................................................13

*Sands Taylor & Wood Co. v. Quaker Oats Company,*
978 F.2d 947 (7th Cir. 1992) ...................................................................................................9, 12

*Saratoga Vichy Spring Co., Inc. v. Lehman,*
625 F.2d 1037 (2d Cir. 1980).......................................................................................................14

*Schieffelin & Co. v. The Molson Cos.,*
9 U.S.P.Q.2d 2069 (T.T.A.B. 1989) ............................................................................................12

*The Joseph & Feiss Co. v. Sportempos, Inc.,*
451 F.2d 1402 (C.C.P.A. 1971) ...................................................................................................13

*The Nestle Company Inc. v. Nash-Finch Co.,*
4 U.S.P.Q.2d 1085 (T.T.A.B. 1987) ............................................................................................13

Statutes

15 U.S.C. § 1127................................................................................................................1, 9, 10

Fed. R. Civ. P. 56.............................................................................................................8, 10

Fed. R. Civ. P. 9(b)..................................................................................................................13

## I.     PRELIMINARY STATEMENT

Paragraph 6 of the *ad damnum* clause of the Complaint seeks an award of the damages sustained by plaintiffs resulting from defendants' activities as alleged in the Complaint.     Paragraph 7 seeks an award of plaintiffs' resultant lost profits; and Paragraph 8 seeks a trebling of these claims for monetary relief.

In response to defendants' Rule 30(b)(6) deposition notice, plaintiffs identified Calvin Klein's president and chief operating officer as well as its senior global advertising executive to testify concerning plaintiffs' alleged damages.    Both executives testified clearly and without equivocation that they could point to no such damage and surely could not quantify any.   Recognizing this reality, plaintiffs failed to submit any expert testimony on the financial issues.  Plaintiffs' admitted inability to prove damages requires that their claims for monetary recovery be stricken.

Count II of the plaintiffs' Complaint seeks cancellation of Calvin Clothing's '306 registration based upon alleged abandonment of the mark and the alleged improper renewal of the registration while the mark was allegedly not in use.  Under United States Trademark Law, abandonment occurs only when use of a mark has been discontinued with intent not to resume use.[1]  15 U.S.C. § 1127.  A discontinuation of use without intent to resume use has not occurred here, and the plaintiffs cannot produce evidence to the contrary sufficient to sustain their strict burden of proof.   This is because the evidence, which has been adduced both in this action and in prior proceedings, establishes without dispute that Calvin Clothing (and its predecessors) have been using

---

[1]  Under the statute, abandonment can also occur when the trademark owner engages in some course of conduct that causes the mark to become generic.  Plaintiffs do not make this allegation, and this is not an issue in this case.

the CALVIN mark which is the subject of the '306 Registration, in connection with men's suits and sport coats, continuously since the 1970's.  There has never been any cessation of use of the mark.  And despite the plaintiffs' misimpression that the mark was not in use during the 1980's and 1990's, the testimony of independent, third-party witnesses, documents produced by a third party and a stipulation by the parties as to other testimony have confirmed that indeed it was.

## II.    FACTUAL BACKGROUND

### A.    Ownership of the '306 Registration

The application to register the CALVIN mark for men's suits and sport coats was first filed in 1975 by the Calvin Clothing Corporation.  The mark registered on May 11, 1976 under United States Registration No. 1,039,306 ("the '306 Registration"). (Copy of '306 Registration attached to the Declaration of Anthony F. Lo Cicero ("Lo Cicero Decl.") at Exhibit A) (Statement of Material Facts ("SOMF") ¶1).  In 1982, the Calvin Clothing Corporation became a wholly-owned subsidiary of the Palm Beach Company.  *See* Deposition of Henry Siegal ("Siegal Tr.") 12 (attached to the Lo Cicero Decl. at Exhibit B).  In 1989, the mark came under the ownership of Palm Beach Company when Calvin Clothing Corporation was merged into the Palm Beach Company.  *See* Trademark Assignment Abstract of Title for U.S. Trademark Registration No. 1,039,306 (attached to the Lo Cicero Decl. at Exhibit C).  Finally, in 1996, Palm Beach Company sold the mark to defendant Calvin Clothing, whose principal is James Alperin.  Declaration of James Alperin ("Alperin Decl.") ¶7 and Exhibit 5 thereto.  (SOMF ¶¶10-11.)

B.    The CALVIN Menswear Business

Historically, the defendant's predecessor, Calvin Clothing Corporation, had two divisions - a boys' division and a men's division. Siegal Tr. 8-9. The company sold men's tailored clothing under the CALVIN label through its men's division. *Id.* (SOMF ¶¶3-4.) In addition, however, men's tailored clothing was also sold through the boys' division sales force. *See* Deposition of Gary Bader dated November 4, 2004 ("Bader 11/4/04 Tr.") 20-22 (attached to the Lo Cicero Decl. at Exhibit D). (SOMF ¶¶5-9.)

Beginning in the 1970's, a number of Scranton, Pennsylvania-based businesses owned by the Alperin family, including Gold Star Mfg., AAA Trouser, and Mayflower Mfg., were key trouser suppliers to Calvin Clothing Corporation. These businesses supplied to, among other things, men's tailored suit trousers to Calvin Clothing Corporation. Alperin Decl. ¶2; Siegal Tr. 25-26. (SOMF ¶3.) These businesses would cut and sew pants and sew labels into the pants. Alperin Decl. ¶2; Siegal Tr. 25-26. It was the Alperin family that ultimately, in 1996, purchased the Calvin Clothing business and now owns and operates Calvin Clothing. Alperin Decl. ¶¶ 1, 2, 7. Between the 1970's and up until the 1996 purchase, the Alperin family businesses were producing men's tailored pants and sewing the CALVIN label into them for both the menswear and Calvin youthwear divisions of the Calvin Clothing Corporation; and thus James Alperin has personal knowledge that, at a minimum, men's tailored suit trousers were being sold under the CALVIN trademark throughout that period. Alperin Decl. ¶ 2.

Henry Siegal was President of the Calvin Clothing Corporation from 1982-1992. Plaintiffs deposed Mr. Siegal in connection with the Cancellation Proceeding on

November 5, 2004.  Mr. Siegal no longer has any relationship with Calvin Clothing and is a disinterested third party.

Henry Siegal started working for the Calvin Clothing Corporation (then run by his father, Calvin Siegal), during summers when he was in school, and started working for the company full time in 1975.  Siegal Tr. 6.  He assumed management responsibilities in the late 1970's, and in approximately 1982, he became President of the company.  Siegal Tr. 6-7.  According to Mr. Siegal's testimony, when he was a manager in the late 1970's and early 1980's, the company was selling men's tailored clothing under the CALVIN label.  Siegal Tr. 9.  Mr. Siegal testified that Calvin Clothing Corporation continued to sell men's tailored clothing throughout his tenure at the company, which ended in 1992.  (SOMF ¶4.)  He summed up his testimony as follows:

> Q.  During the time that you were associated with Calvin Clothing, do you have any knowledge that Calvin Clothing ever discontinued the use of the trademark Calvin in connection with men's suits or sport coats?
>
> A.  No, we did not.

Siegal Tr. 39.

Gary Bader has been both a customer of Calvin Clothing and a salesman for Calvin Clothing.  Plaintiffs deposed Mr. Bader in connection with the Cancellation Proceeding on November 4, 2004 after serving him with a subpoena, and again on December 12, 2005 in this action.  Other than as a customer, Mr. Bader has no relationship with Calvin Clothing and is a disinterested third party.  The parties have reached a stipulation as to many of the facts which Mr. Bader testified to.

Mr. Bader is the owner and operator of a clothing store in Cedarhurst, New York called Boys World of Cedarhurst, which has been in business since 1988. Bader 11/4/04 Tr. 7, 11. He bought men's-sized suits from Calvin Clothing to sell in his store, and did from about 1998 to 2001. Bader 11/4/04 Tr. 13-17. (SOMF ¶9.)

Prior to operating his clothing store on a full-time basis, Mr. Bader was a sales representative who worked for the Calvin Youthwear Division of the Plaid Clothing Group from January 1993 to December 1996. Bader 12/12/05 Tr. 12 (Lo Cicero Decl. Ex. E). During that time and as a Calvin Youthwear Division sales representative, Mr. Bader sold Calvin brand boys' suits and boys' sport coats and Calvin brand students' suits and students' sport coats. The Calvin brand boys' suits and boys' sport coats varied in size from 8 to 20. The Calvin brand students' suits and students' sport coats varied in size from 35 to 42 as reflected in specifications outlined in the Stipulation which is attached to the Lo Cicero Decl. as Exhibit I. Mr. Bader did not sell any Calvin brand suits or sports coats other than boys' and students' suits, and boys' and students' sports coats. Lo Cicero Decl. Ex. I, 1-6. However, it is undisputed that size 35-42 suits (Calvin youthwear "student" sizes) are men's suit sizes. Wyse Tr. 31-33 (attached to the Lo Cicero Decl. as Ex. J).[2] Lo Cicero Decl. Ex. I ¶ 7. See also Larry Fletcher 2/14/06 Tr. 66-67; Allan Ellinger Tr. 155; Norman Moskowitz Tr. 40-41; and Isaac Gabbay Tr. 89, 108 (attached to the Lo Cicero Decl. as Exs. K through N, respectively.) Moreover, if

---

[2] The Calvin brand students' suits and students' sport coats sold by the Calvin Youthwear Division were different from the suits and sport coats sold by the Calvin Menswear Division. Men's suits and sport coats sold by the Calvin Menswear Division under its various brands with the same size designation as the Calvin brand students' suits had a different design, construction and fabrication than the Calvin brand students' suits.

called to testify at trial, Mr. Bader would testify that he sold Calvin brand students' suits to at least one store that did not sell boys' apparel.  Lo Cicero Decl. Ex. I, ¶ 8.

In March of 1996, the Alperin family purchased the Calvin Clothing business, including the '306 Registration, from Palm Beach as an on-going business complete with inventory and orders in process.  Alperin Decl. ¶ 7 and Exhibit 5 thereto.  (SOMF ¶10.) During the negotiations of the transaction, the seller, Palm Beach Company, Inc., insisted that, as a condition of the purchase, an exclusive license to use the CALVIN mark on men's wear be granted back to it.  Alperin Decl. ¶¶ 4-5.  (SOMF ¶12.)  While Mr. Alperin agreed to license back the mark to Palm Beach, he took care to insist that the license contain a clause stating that if the CALVIN mark were not used for two consecutive years, or if Palm Beach went out of the men's tailored clothing business, that the license would terminate and all rights would revert to the licensor, Calvin Clothing.  Alperin Decl. ¶ 6 and Exhibit 4 thereto.  (SOMF ¶13.)  The license was executed as of April 1, 1996.  *Id.*  (SOMF ¶14.)  Shortly after the purchase and execution of the license, James Alperin, on behalf of Calvin Clothing, signed the renewal application for the '306 Registration.  Alperin Decl. ¶ 8.  (SOMF ¶15.)

On or about September 14, 1998, Mr. Alperin asked James Murray, the President of Palm Beach, if the CALVIN mark was in use on menswear pursuant to the license from Calvin Clothing. Mr. Murray advised him that it was not.  Pursuant to the terms of the license, Mr. Alperin terminated it by letter dated November 6, 1998.  Alperin Decl. ¶¶ 9-10 and Exhibit 6 thereto.  (SOMF ¶16.)

-6-

Immediately upon learning that Palm Beach was not using the CALVIN mark on men's tailored clothing and terminating the license, Calvin Clothing commenced production of men's suits and sport coats under the CALVIN label. Calvin Clothing received its first order for CALVIN men's suits on November 1, 1998, and the product shipped on April 1, 1999. (SOMF ¶ 17.) Calvin Clothing has been selling CALVIN-label men's suits continuously since that time, with current sales of approximately $1.9 million per year. Alperin Decl. ¶¶ 11-13. (SOMF ¶18.) Samples from the current line of CALVIN brand menswear have been produced to the plaintiffs in this action. Alperin Decl. ¶16 and Exhibit 8 thereto. (SOMF ¶19.)

In short, Mr. Siegal has testified that for as long as he was associated with Calvin Clothing, from the late 1970's through 1992, it was selling men's suits and sport coats under the CALVIN trademark. Mr. Bader has testified that from January of 1993 through 1996, he sold numerous men's suits and sport coats for Calvin Clothing. And Mr. Alperin has testified that (a) the Alperin family businesses supplied men's tailored suit trousers bearing the CALVIN trademark from the 1970's until Mr. Alperin's purchase of the business in 1996; (b) Palm Beach Company insisted upon a menswear license as a condition of sale of the Calvin Clothing business and CALVIN trademarks to Calvin Clothing; (c) Mr. Alperin took steps to ensure a reversion of rights in the event Palm Beach Company did not use the menswear mark; (d) as soon as Mr. Alperin discovered the licensee's non-use, he terminated the license pursuant to its terms; and (e) immediately upon terminating the license, he commenced production and sale of men's suits under the CALVIN label, and such activities continue to this day.

In the Cancellation Proceeding, the plaintiffs primarily relied upon the testimony of James Murray, the President of Palm Beach, for factual support of their abandonment claim, and they intend to rely upon him again in this action as reflected in their interrogatory responses.[3]  Mr. Murray's testimony, however, does not create a genuine issue of fact.  His statements regarding alleged non-use of the CALVIN mark on menswear were always highly qualified, and he was very careful to couch his answers as beliefs, opinions, and "best of his recollections" rather than hard and fast facts.  His testimony was neatly summed up on cross-examination:

> Q.   So as you sit here today, you can't say that the Calvin name for men's clothing wasn't sold to shows [sic] specialty stores?
>
> A.   I can't say definitively.  The only thing I did say is that I don't recall that it was.

Murray Tr. 23-24 (attached to the Lo Cicero Decl. at Exhibit F).

As further evidence of his lack of knowledge of non-use of the CALVIN mark on menswear, Mr. Murray testified that he was unaware of his company's negotiation of the license back of the CALVIN mark in 1996, and was even unaware of the license. Murray Tr. 20, 25-26.   Thus, Mr. Murray's testimony raises no issue of fact to contradict the unequivocal testimony of Messrs. Siegal, Bader and Alperin that the CALVIN mark was in use on menswear.

## III.   ARGUMENT

Summary judgment is appropriate when no genuine issue of material fact exists to be tried and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

---

[3] *See* Plaintiffs' First Amended Responses to Defendants' First Set of Interrogatories to Plaintiffs, response to Interrogatory No. 19.  Lo Cicero Decl. at Exhibit O.

P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *ITC Ltd. v. Punchgini, Inc.,* 373 F. Supp. 2d 275, 278 (S.D.N.Y. 2005).  A disputed material fact is only genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 250; *ITC Ltd.,* 373 F. Supp. 2d at 278.

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim. *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir. 1995).  Thus, the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions.  *Brady v. Colchester,* 863 F.2d 205, 211 (2d Cir. 1988).

    A.    Plaintiff's Have Admitted That They Have Not Been Damaged by Defendants; and Their Claims for Monetary Relief Should Therefore be Stricken

Paul Thomas Murry is the president and chief operating officer of plaintiff Calvin Klein, Inc., and Regina Szeto is its vice president of global advertising.  Murry 2/24/06 Tr. 8; Szeto Tr. 11 (attached to the Lo Cicero Decl. Exhibits H and G thereto).  These two senior executives were designated pursuant to Rule 30(b)(6) to testify on the subject of the damages allegedly suffered by plaintiffs as a result of defendants' claims of activities. Lo Cicero Decl. ¶19 and Exhibit P thereto.

When deposed, both executives testified that they could not identify any damage which was suffered by plaintiffs and could not give any quantification of damages. Murry 2/24/06 Tr. 59-61; Szeto Tr. 86-87.

325292.6

Specifically, Ms. Szeto testified as follows:

> Q.  One of the categories that you have been designated to testify about relates to damages.
>
> Are you aware of that?
>
> A.  Yes.
>
> Q.  I appreciate the fact that you are not a lawyer, and I'm certainly not going to ask you any questions that would call for a legal conclusion, but do you believe that CKI has suffered any damage as a result of the activities of Calvin Clothing Company?
>
> A.  Has it in the past?
>
> Q.  Has it in the past, excellent.
>
> A.  I'm not aware of it so far.

If anything, Mr. Murry's testimony was even stronger:

> Q.  Do you know of any facts that would demonstrate that the activities of Calvin Clothing Company of damaged Calvin Klein, Inc.?
>
> MR. VASSALLO: Objection to form.
>
> Q.  You can answer even though he objects.
>
> A.  I don't have specific knowledge of factual information regarding that.
>
> Q.  To the best of your knowledge has the amount of any damage that would have been caused by the activities of Calvin Clothing Company been quantified in any way?
>
> A.  It's the same answer, I don't have any specific knowledge of factual information of damage, no.

In view of these party admissions, Plaintiffs' claims for damages (Par. 6), lost profits (Par. 7) and the trebling of these amounts (Par. 8) should be dismissed.

Section 35 of the Lanham Act allows recovery of, *inter alia,* "any damages sustained by the plaintiff." 15 U.S.C. §1117.  Since the plaintiffs' designated witnesses could not identify any damages that were sustained, the plaintiffs' claims for monetary recovery should be stricken.

B.     Plaintiffs Have Failed to Prove That the CALVIN Mark
       for Menswear Has Been Abandoned; and Count II of the
       Complaint -- Which Seeks Cancellation of Calvin Clothing's
       Menswear Registration -- Should be Dismissed

         1.     The CALVIN Trademark Has Not Been Abandoned

Under United States trademark law, a mark is considered abandoned where (1)
use has been discontinued, and (2) there is no intent to resume [use] within the
reasonably foreseeable future. *ITC Ltd.*, 373 F. Supp. 2d at 279, *citing Silverman v. CBS,
Inc.*, 870 F.2d 40, 46 (2d Cir. 1989); 15 U.S.C. § 1127.  These conditions have not been
met here, and the plaintiffs have not and cannot adduce any evidence to the contrary.

As demonstrated by the deposition testimony of Messrs. Siegal and Bader, and the
Declaration of James Alperin, the mark at issue has been in continuous use on men's
tailored clothing from the 1970's through the present.  The only period when the mark
arguably was not in use was when it was licensed to Palm Beach from 1996 to 1998.
Calvin Clothing is willing to assume for purposes of this motion that Palm Beach did not
use the mark during the time it was licensed.  Even if this brief period of non-use were
accepted as true, the inclusion in the license of the right to terminate in the event of non-
use, and the fact that Calvin Clothing did indeed terminate the license once non-use was
discovered, show a clear intention to resume use.  *See e.g., Miller Brewing Co. v. Oland's
Breweries (1971) Ltd.,* 548 F.2d 349 (C.C.P.A. 1976) (renewal of license constituted
evidence of lack of intent to abandon mark); *Sands, Taylor & Wood v. Quaker Oats Co.,*
18 U.S.P.Q. 2d 1457 (N.D. Ill. 1990), *affd in part, rev'd in part,* 978 F.2d 947 (7th Cir.
1992) (agreement of sale included a license back, which constituted evidence of intent to

resume use); *see also Person's Co. v. Christman*, 9 U.S.P.Q.2d 1477 (T.T.A.B. 1988) (attempt to sell rights to mark is inconsistent with intent to abandon).

Calvin Clothing always had the intention to exploit the CALVIN mark on men's suits and sport coats and specifically made sure in the license that it would be able to resume use if Palm Beach's use ceased. Alperin Decl. ¶ 15. In fact, Calvin Clothing <u>did immediately</u> resume use of the mark after terminating the license for non-use. Alperin Decl. ¶10-11. Since intent not to resume use is a required element of abandonment, the plaintiffs cannot possibly prevail on their abandonment claim.

Finally, the plaintiffs cannot meet the threshold for a *prima facie* case of abandonment through non-use for a period of three consecutive years as provided in 15 U.S.C. § 1127. Mr. Bader has unequivocally testified that he sold men's suits and sport coats throughout his employment with Calvin Clothing, which ended in 1996. The license to Palm Beach was dated April 1, 1996, and, assuming *arguendo* that beginning on day one of the license the mark was not in use, and even disregarding Calvin Clothing's continued use on men's sizes sold as part of its students' line, the mark was in use again less than three years later, in November of 1998.

In opposing this motion for summary judgment, the plaintiffs "may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or ... otherwise ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Indeed, disputes over peripheral facts *cannot* defeat summary judgment. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477

at 248.  As stated above, discovery on this issue has already taken place here and in the Cancellation Proceeding, and the plaintiffs have no affirmative evidence that the CALVIN trademark was discontinued with an intent not to resume use.  Rather, plaintiffs merely had a belief, and that belief has been belied by the testimony of two witnesses subpoenaed in the PTO proceedings by Plaintiffs themselves.

Based on positions taken during the Cancellation Action, another weak argument that the plaintiffs may make is that because Henry Siegal testified that he believed the mark that was used on men's clothing during his tenure was CALVIN FOR MEN, rather than CALVIN, that Calvin Clothing thus was not using the CALVIN trademark, at least for the period of Mr. Siegal's tenure, which was from the late 1970's through 1992.  This argument fails for several reasons.  First, Mr. Siegal also testified that it was possible that the CALVIN trademark was used on men's clothes.  Siegal Tr. 11. Second, Mr. Bader testified that he personally sold men's suits bearing the CALVIN trademark to customers throughout his tenure, from 1993 to 1996.

In any event, use of the mark CALVIN FOR MEN would constitute use of the trademark CALVIN as a matter of law.  The "FOR MEN" portion of the mark is purely descriptive.  It has been repeatedly held that a change in a mark that does not affect the distinctive characteristics of the mark represents a continuity of the prior mark.  *See, e.g., Healing Children, Inc. v. Heal Children, Inc.,* 786 F. Supp. 1209, 1215 (W.D. Pa. 1992) ("where the distinctive character of the mark is not changed, the mark is, in effect, the same and the rights obtained by virtue of the earlier use of the prior form inure to the later form."); *Pacific Int'l Rice Mills, Inc. v. Rice Growers Ass'n,* 14 U.S.P.Q.2d 1659 (E.D.

Cal. 1989); *Schieffelin* & Co. v. *The Molson* Cos., 9 U.S.P.Q.2d 2069 (T.T.A.B. 1989); *Sands, Taylor,* 978 F.2d at 955 ("Minor changes in a mark which do not change the basic, overall commercial impression created on buyers will not constitute any abandonment.").

### 2.    There Was No Abandonment Through Naked Licensing

In opposition to Calvin Clothing's motion for summary judgment in the Cancellation Proceeding, plaintiffs alleged that Calvin Clothing abandoned the mark CALVIN for men's tailored clothing by licensing the mark to Palm Beach without sufficient exercise of quality control. However, given that there is no evidence that Palm Beach ever used the CALVIN trademark in connection with men's clothing, there was no quality for Calvin Clothing to exercise control over. Calvin Clothing had the right to exercise control over the quality of the goods produced under the license pursuant to the license agreement. *See* Exhibit 6 to Alperin Decl. But this right turned out to be moot, as there is no evidence that goods were produced pursuant to license.

The purpose behind quality control requirements is to prevent a fraud on the public, as it is inherently deceptive. *See, e.g., Dawn Donut Co. v. Hart's Food Stores, Inc.,* 267 F.2d 358, 367 (2d Cir. 1959). Therefore, if the public is not encountering the trademark on the licensed products, then there is nothing to protect, and quality control requirements have no relevance. Suffice it to say that the plaintiffs have no evidence that the alleged lack of quality control in this case resulted in a loss of trademark significance of the CALVIN mark as applied to men's tailored clothing. The plaintiffs will

be unable to meet the "strict" and "stringent" burden of proof required to establish loss of trademark significance through alleged naked licensing.[4]

### 3.    There Was No Fraud On The Trademark Office

Plaintiffs have alleged that Calvin Clothing "improperly, inequitably, and illegally renewed" the '306 Registration by "falsely alleging use" when it knew or should have known that the mark was not in use. Such allegations amount to a charge of fraud on the PTO. Notably, this claim was not plead with particularity as required by the Federal Rules (Fed. R. Civ. P. 9(b)) because there are no such facts to plead. As has been demonstrated above, the mark was in use. Plaintiffs' fraud claim is ancillary to and entirely dependent upon the validity of the abandonment claim. Because Plaintiffs' abandonment claim fails, Plaintiffs' fraud claim does as well.

Moreover, it is important to note that Calvin Clothing had no need to falsely renew the '306 Registration in order to preserve its rights in menswear. Whether or not the registration was renewed, Calvin Clothing's rights flowed from its undisputed rights in boys' and students' tailored clothing dating back to the 1930's. Whether boys' tailored clothing and men's tailored clothing are considered to be substantially "the same goods," or whether men's tailored clothing is considered to be within the natural zone of expansion, Calvin Clothing had, and has, rights in menswear regardless of the '306 Registration. *See Rosenthal A.G. v. Rite Lite, Ltd.*, 986 F. Supp. 133 (E.D.N.Y.

---

[4] *See, e.g., The Nestle Co. Inc. v. Nash-Finch Co.*, 4 U.S.P.Q. 2d 1085 (T.T.A.B. 1987); *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 548 (10th Cir. 2000*); Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1075 - 76 (5th Cir. 1997*); Anter v. Sharper Image Corp.*, 39 U.S.P.Q.2d 1282, 1288 (C.D. Cal. 1995*); American Foods, Inc. v. Golden Flake, Inc.*, 312 F.2d 619, 624-25 (5th Cir. 1963).

1997); *The Joseph & Feiss Co. v. Sportempos, Inc.*, 451 F.2d 1402 (C.C.P.A. 1971);

*Morehouse Mfg. Corp. v. Strickland*, 407 F.2d 881 (C.C.P.A. 1969).

### 4.    Plaintiffs Cannot Meet Their Heavy Burden of Proof

In order to prevail on their Count II to cancel the '306 Registration, the plaintiffs

must meet their burden in showing that Calvin Clothing or its predecessors stopped

using the CALVIN mark on tailored menswear without an intent to resume its use.

Such a property forfeiture must be "strictly proven." *Frankel v. Central Moving &*

*Storage Co., Inc.*, 95 CV 6330, 1997 U.S. Dist. LEXIS 16886, *9 (S.D.N.Y. Oct. 29,

1997); *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980).

The factual support for the plaintiffs' abandonment claim rests primarily with

James Murray, whose tentative testimony fails to raise a genuine issue of fact in view

of the testimony of third party witnesses Henry Siegal and Gary Bader and by party

witness James Alperin.    At best, the plaintiffs' evidence of non-use is not enough to

sustain their strict burden to cancel Calvin Clothing's valid and incontestable

registration.    Moreover, plaintiffs' evidence of intent not to resume use is non-existent,

and cannot overcome the overwhelming evidence of intent to use the mark.

Accordingly the plaintiffs cannot possibly sustain their "strict" burden of proof on this

issue, and Count II should be dismissed.

## IV.    CONCLUSION

For all of the reasons stated above, Calvin Clothing's motion for summary

judgment should be granted, Paragraphs 6-8 of the *ad damnum* clause of the Complaint

should be stricken, and Count II of the Complaint should be dismissed with prejudice.

This __ day of March, 2006          By: _____

                                        Anthony F. LoCicero (AL 7538)
                                        Marc J. Jason (MJ 0934)
                                        AMSTER, ROTHSTEIN & EBENSTEIN LLP
                                        90 Park Avenue
                                        New York, NY  10016
                                        Tel:  (212) 336-8000
                                        Fax:  (212) 336-8001
                                        Attorneys for Defendants/
                                        Counterclaim Plaintiffs