Anthony F. Lo Cicero (AL 7538)
Marc J. Jason (MJ 0934)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
Tel: (212) 336-8000
Fax: (212) 336-8001
Attorneys for Defendants/
Counterclaim Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| PHILLIPS-VAN HEUSEN CORP., CALVIN KLEIN, INC. and CALVIN KLEIN TRADEMARK TRUST, | Civil Action No. 05-CV-6802 (JSR) |
| Plaintiffs, | ECF Case |
| v. | **MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS I, III, IV, V, VII AND VIII OF THE COMPLAINT, AND ON DEFENDANTS' COUNTERCLAIMS** |
| CALVIN CLOTHING COMPANY, INC., and STAR RIDE KIDS, INC., | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - -x

Defendants Calvin Clothing Company, Inc. ("Calvin Clothing") and Star Ride Kids, Inc. ("Star Ride") (together, the "Defendants"), by and through their counsel, submit this memorandum of law in opposition to Plaintiffs' First Motion for Partial Summary Judgment on Counts I, III, IV, V, VII, and VIII of the Complaint, and on Defendants' Counterclaims.

337362.1

Table of Contents

I.    PRELIMINARY STATEMENT ......................................................................... 1

II.   FACTUAL BACKGROUND ............................................................................ 2

  A. Genuine Issues of Fact Exist as to the Effect of the Parties' Co-Existing  Registrations ....... 2

  B. Genuine Issues of Fact Exist as to Calvin Klein's Repeated Recognition of Calvin
     Clothing's Rights ................................................................................................ 5

  C. Genuine Issues of Fact Exist as to Whether Calvin Klein Has Rights To "Calvin" Alone .... 8

  D. Genuine Issues of Fact Exist as to Calvin Clothing's Objections to Calvin Klein's Use of
     "Calvin" Alone................................................................................................. 11

  E. Genuine Issues of Fact Exist as to the Alleged Segmentation of the Apparel Market ......... 14

  F. Genuine Issues of Fact Exist as to Calvin Clothing's *Bona Fides* in Acquiring the
     CALVIN Trademarks......................................................................................... 15

  G. Genuine Issues of Fact Exist as to Whether Calvin Klein Has Been Damaged................. 16

III.  ARGUMENT .................................................................................................. 19

IV.   CONCLUSION ...............................................................................................25

337362.1

Table of Authorities

## FEDERAL CASES

Page

*Calvin Klein Industrial Inc. v. Calvins Pharms. Inc.*, 8 U.S.P.Q. 2d 1269
(T.T.A.B. 1988) ...................................................................................10, 11, 23

*France Milling Co., Inc. v. Washburn-Crosby Co., Inc.*, 7 F.2d 304 (2d Cir. 1925).........22

*Joseph & Feiss Co. v. Sportempos, Inc.*, 451 F.2d 1402 (C.C.P.A. 1971) ........................19

*Morehouse Manufacturing Corp. v. J. Strickland Co.*, 407 F.2d 881 (C.C.P.A.
1969) .....................................................................................................................19

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209 (2d Cir. 2003) ...........................20

*Physicians Formula Cosmetics, Inc. v. West Cabot Cosmetics, Inc.*, 857 F.2d 80
(2d Cir.  1988)......................................................................................................21

*Polaroid Corp. v. Polarad Electrics Corp.*, 287 F.2d 492 (2d Cir.), *cert. denied*,
368 U.S. 820 (1961)..............................................................................................22

*Rosenthal A.G. v. Ritelite, Ltd.*, 986 F. Supp. 133 (E.D.N.Y. 1997) ...............................19

*Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167 (2d Cir. 1976).......................19

## FEDERAL STATUTES

15 U.S.C. §1052(d) ...............................................................................................4

15 U.S.C. §1072......................................................................................................3

15 U.S.C. § 1115......................................................................................................2

37 C.F.R. §2.33 ......................................................................................................4

Fed. R. Civ. P. 15(b) ...........................................................................................17

## MISCELLANEOUS

4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*,
§23:10 (4th Ed. 2005) ..........................................................................................17

337362.1

## I.   PRELIMINARY STATEMENT

Plaintiffs' "first" motion for partial summary judgment[1] is illustrative of their litigation tactics.  Thousands of pages of documents have been produced, more than twenty depositions were conducted in this action, and many more were taken in related proceedings in the PTO.[2]  Despite a seemingly limitless litigation budget, the plaintiffs have chosen to ignore much of the evidence adduced in discovery[3]-- in particular the evidence of the parties' understanding of their respective rights during decades of peaceful coexistence, namely that Calvin Clothing owns CALVIN and Calvin Klein owns CALVIN KLEIN.

This understanding guided the conduct of Calvin Clothing and Calvin Klein for decades, until the acquisition of Calvin Klein by Phillips-Van Heusen ("PVH") in late 2002 to 2003.  PVH disregarded Calvin Clothing's CALVIN mark during the due diligence period and the acquisition.  Subsequently, PVH, through its former CEO, Mark Weber, informed Calvin Clothing that it is now determined to "bury" Calvin Clothing in legal fees.  Jason Decl. Ex. 1 (Alperin 10/20/05 Tr. 73-75).  And Calvin Klein, under the PVH ownership, has turned its back on its long-standing relationship with Calvin Clothing.  At the very least, this long-standing relationship implicates numerous disputed issues of material fact regarding the relative equitable positions of the parties.

Plaintiffs also have ignored the deposition testimony of their two survey experts. The combined effect of the two reports is to demonstrate that there is no added

---

[1]  Plaintiffs' decision to file two separate partial summary judgment motions was deemed by the Court to be an "obvious evasion" of the twenty-five page limit for memoranda of law set forth in paragraph 2(e) of the individual rules of practice of Judge Rakoff.  The Court has indicated that it will assess financial sanctions against the plaintiffs for these tactics.
[2]  By Stipulation of the parties entered by the Court on September 15, 2005, discovery conducted in the PTO proceedings is to be treated as if it were conducted in this action.

337362.1

confusion (or damage) resulting from the activities complained of in Counts I, III, IV, V, VII or VIII as compared to the "confusion" caused by Calvin Clothing's sale of boys' tailored clothing -- an activity that plaintiffs admit they cannot and do not contest.  At the very least, this raises issues of fact as to the equities of the case and the alleged damage sustained by plaintiffs sufficient to preclude a grant of summary judgment.

Finally, plaintiffs have ignored the statutory presumption of exclusive rights that attaches to Calvin Clothing's registrations for the accused CALVIN (Line), CALVIN (Star) and CALVIN COLLECTION marks under 15 U.S.C. § 1115.  Yet an additional disputed issue of fact is raised as to whether plaintiffs have overcome this presumption.

Plaintiffs' motion should be denied, and the parties should proceed with the bench trial.

## II.    FACTUAL BACKGROUND

A.    <u>Genuine Issues of Fact Exist as to the Effect of the Parties' Co-Existing Registrations</u>

Calvin Clothing's predecessor was started in 1935 by Calvin Siegal's father.  At that time, the company began using the mark CALVIN on boys' suits and tailored clothing.  Jason Decl. Ex. 2 (C. Siegal Tr. 12).  In 1970, Calvin Clothing filed an application to register its CALVIN mark, stating a date of first use in commerce as March 15, 1935.  The registration, U.S. Registration No. 933,999 ("the '999 Registration") issued on May 16, 1972.  Jason Decl. Ex. 3.  The validity of the '999 Registration and Calvin Clothing's rights with respect to the goods listed in that registration are not contested by the plaintiffs.

---

[3] This includes ignoring Defendants' responses to an extremely burdensome set of 281 requests for admission.

337362.1

In 1968, more than three decades after Calvin Clothing began using its CALVIN mark on boys' tailored clothing throughout the United States, Calvin Klein began using the CALVIN KLEIN mark on women's coats and dresses. Jason Decl. Ex. 4 (Klein Tr. 6).

At least as early as March 10, 1969, Calvin Clothing became the first of the companies to expand use of its trademark when it expanded use of its CALVIN mark to men's suits and sportcoats. Jason Decl. Ex. 2 (C. Siegal Tr. 10-11). The application to register the CALVIN mark for these goods was filed by Calvin Clothing in 1975, and the mark registered on May 11, 1976 under United States Registration No. 1,039,306 ("the '306 Registration"). Jason Decl. Ex. 5.

By early 1975, Calvin Klein had received actual notice of Calvin Clothing's CALVIN mark and of its use on boys' and students' clothing as well as on men's clothing. Jason Decl. Ex. 6 (Defendants' Ex. 38: CK00003-CK00005; CC844-CC845) Moreover, by the middle of 1976, Calvin Clothing had two federal trademark registrations for its CALVIN mark: the '999 Registration and the '306 Registration, both of which provided Calvin Klein with constructive notice of Calvin Clothing's claim of ownership rights in the CALVIN mark. 15 U.S.C. §1072. Thus, when Calvin Klein first expanded its brand into men's clothing in late 1976 or early 1977, with its introduction of men's suits and tailored clothing, it did so with full knowledge of Calvin Clothing and of its CALVIN mark and registrations. To sum up, by the mid 1970's, Calvin Clothing was first in the boys' and students' apparel market; the first to expand its brand beyond its original product classifications; the first in the men's apparel market; and the first to register its mark.

337362.1

Calvin Klein did not file an application to register its CALVIN KLEIN trademark until March 15, 1976, for women's apparel. That registration issued in 1978. Jason Decl. Ex. 7 (U.S. Registration No. 1,086,041). Subsequently, in 1980 Calvin Klein filed an application to register its mark for men's suits and tailored clothing with full knowledge of Calvin Clothing's '306 Registration for CALVIN for identical goods. (The Calvin Klein registration issued as U.S. Registration No. 1,226,396-- Jason Decl. Ex. 8). In filing that trademark application, Calvin Klein admitted that CALVIN KLEIN and CALVIN were not confusingly similar, even for identical goods, men's suits and tailored clothing. 37 C.F.R. §2.33 ("[t]he verified statement must allege... that...no other person has the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when applied to the goods or services of the other person, to cause confusion or mistake or to deceive..."). In allowing the registration, the Patent and Trademark Office ("PTO") agreed that the marks were not confusingly similar, since the PTO is statutorily prohibited from registering confusingly similar trademarks. 15 U.S.C. §1052(d).

Similarly, in November 1992, Calvin Klein filed an application for, *inter alia*, boys' suits, claiming a first use date of August 4, 1992 (which issued as U.S. Registration No. 1,810,850-- Jason Decl. Ex. 9). By filing this application for goods that are identical to those in which Calvin Clothing has undisputed rights with its CALVIN mark, Calvin Klein was again admitting that CALVIN KLEIN and CALVIN were not confusingly similar and could both be used on boys' suits. 37 C.F.R. §2.33. Clearly, the conduct of Calvin Klein over the years demonstrates that it believed that as long as the parties stuck with their

respective marks, CALVIN on the one hand and CALVIN KLEIN on the other hand, confusion was not likely, even for identical goods.

In the late 1990's, after the Alperin family acquired the Calvin Clothing business, Calvin Clothing began developing new product lines under the CALVIN mark to diversify its offerings and to take advantage of new marketing opportunities and efficiencies of scale. Since the 1980's, the apparel industry had become more "brand-centric" and fewer apparel companies were selling products solely within narrow product classifications. Jason Decl. Ex. 10 (Santacroce Report ¶16). In connection with the efforts to grow its brand and its business, Calvin Clothing filed applications to register what the plaintiffs' have termed "new" CALVIN marks. Plaintiffs' Brief at 9. Despite the likelihood of confusion alleged by the plaintiffs and the apparent fame of the Calvin Klein brand, the experts at the PTO saw fit to issue four new "Calvin" registrations between May 2001 and May 2002. Jason Decl. Ex. 11. Significantly, none of these four applications was opposed by Calvin Klein. Rather, Calvin Klein instituted proceedings to cancel these already issued registrations within weeks of the closing of the acquisition of Calvin Klein by PVH. Jason Decl. Ex. 12 (Fischer Tr. 10); Jason Decl. Ex. 37.

B.   Genuine Issues of Fact Exist as to Calvin Klein's Repeated Recognition of Calvin Clothing's Rights

Over the course of more than thirty years, Calvin Klein and its licensees have repeatedly recognized Calvin Clothing's rights in and to its CALVIN mark and its rights to expand use of the mark. Some examples in the evidentiary record of Calvin Klein's recognition are as follows:

-- By letter dated February 19, 1975, counsel for Calvin Klein's predecessor recognized Calvin Clothing's rights to expand use of the CALVIN mark into menswear:

"...[W]e have no complaint with regard to your clients' [sic] use of his trademark "Calvin" in connection with menswear, despite the fact that his registration does not cover men's clothing or more specifically men's suits..." Jason Decl. Ex. 6 (Defendants' Ex. 38: CC 844-845).   Thus, Calvin Klein recognized that Calvin Clothing's rights extended to products beyond those that were specifically enumerated in the '999 Registration.

    -- In 1980, Calvin Klein's exclusive licensee for jeans contacted counsel for Calvin Clothing regarding use of the mark "Calvin" or "Calvin's" in connection with its women's line.   Jason Decl. Ex. 6 (Defendants' Ex. 38: CC848-CC849)    Presumably, this communication was with the approval of Calvin Klein and thereby constituted Calvin Klein's acknowledgment of Calvin Clothing's rights in jeanswear.   Counsel for Calvin Clothing responded appropriately, that discussions should take place directly between Calvin Klein and Calvin Clothing in the context of their understandings and course of dealing. Jason Decl. Ex. 6 (Defendants' Ex. 38: CC850).

    -- As reflected in a series of correspondence from 1981 (Jason Decl. Ex. 6 (Defendants' Ex. 38: CK00010-CK00013)), Calvin Klein's fragrance licensee, Calvin Klein Cosmetics Corp., recognized that Calvin Clothing's rights extended to fragrance even though they understood that "Calvin Clothing Corp. is not in the cosmetics business." (CK00011)  Consequently, as reflected in his letter dated May 20, 1981, the President of Calvin Klein Cosmetics Corp. made a "request to use the name "Calvin" on our new men's fragrance..." (CK00010)  Such request was granted by Calvin Clothing under the conditions that "the packaging will carry [the] full corporate name, Calvin Klein Cosmetics Corp....", and that "Calvin Klein Cosmetics Corp. will not file for registration of

the name CALVIN in the U.S. Patent and Trademark Office." (CK00012)  Calvin Klein has always lived up to these obligations.  (*See* Jason Decl. Ex. 13 (Defendants' Ex. 44): in accordance with its agreement, Calvin Klein never applied to register "Calvin" for fragrance in the United States even though it has such registrations elsewhere throughout the world; Jason Decl. Ex. 14 (Defendants' Ex. 57): re-launched "Calvin" fragrance bears full CALVIN KLEIN mark on packaging.)

-- In 1983, Calvin Klein recognized that Calvin Clothing's rights extended beyond tailored clothing and into activewear when it asked permission from Calvin Clothing to use the phrase "Calvin's 100% Activewear" on a Calvin Klein men's activewear line. Jason Decl. Ex. 6 (Defendants' Ex. 38: CC851-CC853)  Calvin Klein provided assurances that the phrase would be "used only in conjunction with the "Calvin Klein" trademark both on the garments and in their advertising," and Calvin Clothing consented to the use by Calvin Klein based upon that condition.  (CC853)  Again, Calvin Klein complied with its obligations.  Jason Decl. Ex. 15 (Miles-Graeter 3/2/06 Tr. 34-35).

-- In the mid 1990's, prior to a brief re-launch of Calvin Klein's "Calvin" men's fragrance, the president of Calvin Klein was apprised of the history of the original launch, including the correspondence reflecting Calvin Clothing's grant of permission to Calvin Klein to use the designation "Calvin."  Jason Decl. Ex. 15 (Miles-Graeter 3/2/06 Tr. 49-50).  Calvin Klein continued to comply with its obligations.  Jason Decl. Ex. 14 (Defendants' Ex. 57).

-- As recently as two or three years ago, Calvin Klein recognized that Calvin Clothing's rights in its CALVIN mark extended to women's better sportswear, as the president of Calvin Klein, Tom Murry, contacted Jim Alperin of Calvin Clothing to

337362.1

discuss Calvin Klein's proposed use of the designation "Calvin/Calvin Klein." Jason Decl.

Ex. 16 (Murry 2/24/06 Tr. 55-56, 63).

The Defendants' expert witness in this case, George Santacroce, has reviewed the

early correspondence between the parties from the standpoint of the apparel industry,

and he has opined that it reflects a common understanding of their rights in their

respective marks. He has stated that

> "[i]n my opinion as an apparel executive, this
> correspondence clearly points to a recognition on both sides
> of the other's existence and of the rights granted to them
> under their respective trademarks. In my view it clearly
> demonstrates that Calvin Klein recognized that the trademark
> CALVIN had potential application by Calvin Clothing
> Company to Activewear, Fragrance and other product
> categories beyond boys' and men's tailored apparel, and that
> Calvin Klein actively sought permission from the Calvin
> Clothing Company for its use." Jason Decl. Ex. 10
> (Santacroce Report ¶41.)

C.   Genuine Issues of Fact Exist as to Whether Calvin Klein Has Rights To
     "Calvin" Alone

The plaintiffs claim that, over the years, Calvin Klein has made use of "Calvin"

alone in connection with a number of products, including CALVIN KLEIN apparel, and

that plaintiffs have "common law" rights in the CALVIN mark. Plaintiffs' Brief at 2, 5.

The claim of common law rights to "Calvin" is specious and begs the questions as to why

Calvin Klein has a "Calvin" registration in every country in the world except the United

States. *See, e.g.*, Jason Decl. Ex. 13 (Defendants' Ex. 44). The reason they have not

registered "Calvin" in the United States is obvious -- they cannot do so because of Calvin

Clothing's pre-existing rights and registrations. Surely, if plaintiffs really had the rights

to "Calvin" that they are asserting, they would have procured a U.S. registration for the
mark as they have everywhere else in the world.

Plaintiffs' assertions that they have used the mark "Calvin" alone is disingenuous
for a number of reasons.  First, as the plaintiffs admit themselves in their brief, "[i]n
every case, the clothing also carried tags or labels bearing one or more of the full
CALVIN KLEIN marks."  Plaintiffs' Brief at 24.  *See also* Plaintiffs' Brief at 6, n. 4: "except
for possibly the CALVIN juniors' line in the 80's, such uses of "Calvin" alone on clothing
were accompanied by labels or hangtags showing the CALVIN KLEIN mark."  *Citing*
Murry 8/7/03 Tr. 10 (Jason Decl. Ex. 17).  *See also* Jason Decl. Ex. 18 (Kelly Tr. 27):
"the label always has to say Calvin Klein on the inside."; Jason Decl. Ex. 15 (Miles-
Graeter 3/2/06 Tr. 33-34): Ms. Miles-Graeter testified that the "Calvin" junior women's
line from the 80's bore the label which says "A Division of Calvin Klein Industries.";
Jason Decl. Ex. 19 (Defendants' Ex. 6).

Thus, garments from the "Calvin" juniors' division (which has not been in
existence for almost twenty years) bore labels with the Calvin Klein mark.  Jason Decl.
Ex. 15 (Miles-Graeter 3/2/06 Tr. 33-34).[4]  Plaintiffs also point to a line of CALVIN KLEIN
jeans for men and women promoted as 'The Calvin Bootcut" and "The Original Calvin."
As the president of Calvin Klein Jeans, Colleen Kelly, testified, these simply denoted the
fits of particular jeans (Jason Decl. Ex. 18 (Kelly Tr. 29)); the designations are not now
in use and there is no planned use for them in the future (Jason Decl. Ex. 18)(Kelly Tr.
29-32); and all of the jeans would have borne the CK/Calvin Klein Jeans label (Jason
Decl. Ex. 18)(Kelly Tr. 30).

337362.1

Additional periodic uses of "Calvin" cited by the plaintiffs, such as on men's fragrance (Plaintiffs' Brief at 4) and on "Calvin 100% Activewear" t-shirts (Plaintiffs' Brief at 5-6), have been **with the permission of Calvin Clothing**; and, as part of that permission, the products bore the full CALVIN KLEIN trademark on packaging, labeling or elsewhere on the product.   Jason Decl. Ex. 6 (Defendants' Ex. 38: CK00010-CK00013; CC851-CC853).

Thus, any use of the designation "Calvin" alone by Calvin Klein has fallen into one of two categories: (1) use has been with Calvin Clothing's permission and in combination with use of the "Calvin Klein" mark; or (2) use has been without Calvin Clothing's knowledge, for a limited time, and still in combination with use of the "Calvin Klein" mark.

Plaintiffs also have cited the "Calvin Condoms" T.T.A.B. opposition[5] for the proposition that "Calvin" means Calvin Klein to the public and the media.   Plaintiffs' Brief at 5.   However, the Plaintiffs have ignored that the T.T.A.B. declined to make several significant rulings in that case.     Notwithstanding the Brooke Shields advertisement from twenty-five years ago that the plaintiffs are so fond of referring to (Plaintiffs' Brief at 5) or the other magazine articles about Calvin Klein, the Board held that "the record does not establish that [Calvin Klein] has made any trademark use of CALVINS." *Calvin Klein*, 8 U.S.P.Q.2d at 1271 n. 3.   Furthermore, the Board held that "the record clearly establishes that a third party -- Calvin Clothing Corporation -- has made use of CALVIN... Indeed, the use of CALVIN on apparel by Calvin Clothing

---

[4]   Moreover, Calvin Siegal testified that he had no knowledge of the Calvin Klein juniors' line.   Jason Decl. Ex. 2 (C. Siegal Tr. 43).
[5]   *Calvin Klein Indus. Inc. v. Calvins Pharms. Inc.*, 8 U.S.P.Q.2d 1269 (T.T.A.B. 1988).

337362.1

Corporation predates any use of CALVIN or CALVIN KLEIN by opposer." *Id.* at 1272

(emphasis added).

D.    Genuine Issues of Fact Exist as to Calvin Clothing's Objections to Calvin Klein's Use of "Calvin" Alone

The Plaintiffs seek to minimize the history of the parties' relations, and they ignore Calvin Klein's past requests to Calvin Clothing and acknowledgement of Calvin Clothing's rights to CALVIN standing alone. The plaintiffs point to the fact that Calvin Clothing "never objected to use of the CALVIN KLEIN mark on any class of apparel." Plaintiffs' Brief p. 7. This is true: as long as Calvin Klein was using the full mark CALVIN KLEIN, Calvin Clothing did not object. Nevertheless, Calvin Clothing has a long history, ignored by the plaintiffs in their papers, of objecting to any use by Calvin Klein of the designation "Calvin" alone as a shortening of CALVIN KLEIN. Indeed, Calvin Clothing was careful to remind Calvin Klein that Calvin Clothing owned the exclusive rights to use CALVIN and that confusion could be avoided by Calvin Klein's scrupulous use of the full CALVIN KLEIN mark. On at least four separate occasions, Calvin Clothing made it clear in writing that it considered any use of the name "Calvin" separate from the surname "Klein" to infringe Calvin Clothing's rights in CALVIN:

-- By letter dated March 10, 1975, counsel for Calvin Clothing wrote to Calvin Klein objecting to an advertisement in the New York Times featuring the words "Calvin's Collection." Jason Decl. Ex. 6 (Defendants' Ex. 38: CK00002) Calvin Clothing objected "to the use by Calvin Klein, Ltd. of the words, 'Calvin' or 'Calvin's,' standing alone or used in conjunction with descriptive phrases or words in connection with women's apparel... In short, the advertisement of March 2, 1975, infringes the registered mark 'Calvin' owned by Calvin Clothing Corporation."

-- By letter dated May 17, 1975, counsel for Calvin Clothing objected to a Calvin Klein display of menswear entitled "Calvin's Come-On" that appeared in the Daily New Record. Jason Decl. Ex. 6 (Defendants' Ex. 38: CC846)  Counsel advised that "[s]uch use of the word "Calvin" infringes the registered mark "Calvin", which is owned by the Calvin Clothing Corporation."

-- On July 31, 1978, Calvin Siegal wrote directly to Mr. Calvin Klein regarding an advertisement in the New York Times by Saks Fifth Avenue introducing "The Calvin Klein Man." Jason Decl. Ex. 6 (Defendants' Ex. 38: CK00006)  Mr. Siegal stated that:

> "[w]e hope to have your assurance that all persons having anything to do with your advertising, labeling and packaging are informed of our prior rights in the mark CALVIN and that they are instructed to draft their advertising copy in such a way that readers and customers will not associate your men's clothing with us.  We also would hope that retailers, such as Saks, will be cautioned always to refer to your products by the full name CALVIN KLEIN and never to abbreviate the name to CALVIN alone."

-- On June 29, 1982, counsel for Calvin Clothing wrote to Calvin Klein regarding Calvin Klein's entry into the boyswear business.  Jason Decl. Ex. 6 (Defendants' Ex. 38: CK00014)  He stated that:

> "[i]n order to assure that there will be no likelihood of confusing or deceiving purchasers due to the similarity of the name "Calvin Klein" to the established trademark "CALVIN" in the boys' wear field, all persons ... should be informed that any and all references to such products should be by the full name "Calvin Klein" and not by an abbreviation to the name "Calvin" alone.  If these precautions are observed, problems in the future should be avoided."

-- Calvin Siegal testified that Calvin Clothing wrote to retail stores and asked them not to use the name CALVIN when they were referring to CALVIN KLEIN.  Jason Decl. Ex. 2 (C. Siegal Tr. 36-37).  Mr. Siegal also testified that in letters to retailers, Calvin

Clothing pointed out to them that they would not be eligible for Calvin Clothing's co-op advertising if they did not cooperate.  Jason Decl. Ex. 2 (C. Siegal Tr. 42).

Thus, in no way did Calvin Clothing ever sanction use of the mark "Calvin" alone by Calvin Klein except in limited instances and under the condition that such use was in conjunction with the full "Calvin Klein" mark.  Moreover, Calvin Clothing's decisions not to initiate formal legal action against Calvin Klein were consistent with the understanding between the two companies to peacefully co-exist.

Meanwhile, Calvin Klein's conduct has been guided for decades by its agreements with Calvin Clothing:

-- Calvin Klein has never applied to register the mark "Calvin" in the United States for any product.  Jason Decl. Ex. 15 (Miles-Graeter 3/2/06 Tr. 55-56).  Calvin Klein has registrations for "Calvin" in every country in the world except the United States.  Jason Decl. Ex. 13 (Defendants' Ex. 44).

-- The full CALVIN KLEIN mark is always used on Calvin Klein products, even those few which bear a "Calvin" designation.  Jason Decl. Ex. 15 (Miles-Graeter 3/2/06 Tr. 32-35); Jason Decl. Ex. 20 (Szeto Tr. 29-31).

-- Calvin Klein has never granted a license for the mark "Calvin" alone.  Jason Decl. Ex. 15 (Miles-Graeter 3/2/06 Tr. 48).

-- Calvin Klein advertisements have not used the designation "Calvin" alone except for one series in the 1980's.  Jason Decl. Ex.20 (Szeto Tr. 58).

-- Calvin Klein licensees are made to understand that they cannot use "Calvin" alone pursuant to their license agreements.  Jason Decl. Ex. 21 (J. Benun Tr. 40); Jason Decl. Ex. 22 (Defendants' Ex. 2).

E.   <u>Genuine Issues of Fact Exist as to the Alleged Segmentation of the Apparel Market</u>

The Plaintiffs portray the apparel market as extremely segmented, an industry made up of specialists. *See, e.g.*, Plaintiffs' Brief pp. 6-7, 18. The purpose of this is two-fold: first, to exaggerate their argument that Calvin Clothing never before expanded beyond an initial, narrow product category and should not be allowed to do so now (Plaintiffs' Brief p. 6-7); and second, to minimize the crucial significance that Calvin Clothing came first in both children's and men's apparel (Plaintiffs' Brief p. 18). Plaintiffs' characterization belies the testimony of both Defendants' and Plaintiffs' expert witnesses that <u>consumers</u> do not perceive segmentation in the apparel industry. Rather, consumers perceive unified brands and are unaware of different product licensees and manufacturers.

Specifically, Defendants' expert, George Santacroce, stated in his report that the apparel industry has shifted from being segmented by product classification to being more "brand-centric." Jason Decl. Ex. 10 (Santacroce Report ¶16). While different licensees or manufacturers may produce the goods under a single brand, Mr. Santacroce stated that "[f]rom the consumer's perspective, they are unaware of these licensing relationships. Consumers view a branded 'family' of products as coming from only one company, one brand." Jason Decl. Ex. 10 (Santacroce Report ¶18).

This analysis was echoed by Plaintiffs' rebuttal expert, Allen Sirkin, who is also PVH's president and chief operating officer. Mr. Sirkin testified that customers of a particular brand of dress shirt or winged tip shoe would think that tailored clothing under the same brand came from the same company. "If they had the same label on it, yes. I don't think the customer understands the sourcing logistics and product

development issues that we as specialists do." Jason Decl. Ex. 23 (Sirkin Tr. 48). "Generally speaking an answer would be if it carried the same brand name, it is perceived to be of the same company." Jason Decl. Ex. 23 (Sirkin Tr. 49).

F.   Genuine Issues of Fact Exist as to Calvin Clothing's *Bona Fides* in Acquiring the CALVIN Trademarks

Plaintiffs have repeatedly mischaracterized the transaction by which Calvin Clothing acquired the CALVIN trademark by stating that Calvin Clothing paid one dollar for the mark. Plaintiffs' Brief at 9; Plaintiffs' Statement of Facts ¶71. The fact is that Calvin Clothing purchased an on-going business division, complete with inventory, customers and accounts receivable for in excess of $1.2 million. Jason Decl. Ex. 24 (Plaintiffs' Ex. 3: CC620-CC660). The trademarks purchased, including the CALVIN mark, were a part of that business, and the allocation of the purchase price to specific assets purchased was a matter for accountants and tax professionals. Jason Decl. Ex. 1 (Alperin 10/20/05 Tr. 24-26). Additionally, James Alperin, the principal of Calvin Clothing, and his family were trouser contractors that began working for Calvin Clothing in the mid 1960's. Jason Decl. Ex. 25 (Alperin 10/16/03 Tr. 6-8). The Alperin family made dress pants and suit bottoms for Calvin Clothing boys' and men's suits for many years (Jason Decl. Ex. 25: Alperin 10/16/03 Tr. 6-8) and purchased the Calvin Clothing business in 1996 (Jason Decl. Ex. 25: Alperin 10/16/03 Tr. 5-6) Thus. Calvin Clothing is not, as Calvin Klein would have the Court believe, a "Johnny-come-lately" profiteer which has suddenly appeared to ride the coattails of Calvin Klein. Rather, the Alperin family history with Calvin Clothing dates back further than the entire history of Calvin Klein.

337362.1

G.   Genuine Issues of Fact Exist as to Whether Calvin Klein Has Been Damaged

As set forth in defendants' motion for partial summary judgment, filed on March 20, 2006, Calvin Klein's President and Chief Operating Officer as well as its senior global advertising executive -- both of whom were designated by plaintiffs to testify on this subject -- testified that they could point to no damage caused by the activities of Calvin Clothing as alleged in the Complaint.  Jason Decl. Ex. 16 (Murry 2/24/06 Tr. 59-60; Jason Decl. Ex. 20 (Szeto Tr. 86-87).   Plaintiffs' own surveys explain why.

Plaintiffs' survey evidence demonstrates that plaintiffs would not be damaged by "new" CALVIN registrations because consumer confusion levels for boy's tailored clothing, as to which Calvin Clothing has an existing, unchallenged and incontestable registration, are the same as those for "new" CALVIN marks.

Helfgott Survey

The plaintiffs are relying upon survey two surveys to support their likelihood of confusion argument.  The first survey, by Dr. Myron Helfgott, was originally produced in connection with the prior TTAB proceedings.  Plaintiffs' Brief at 13; Jason Decl. Ex. 26 (Defendants' Ex. 51: CK05005-CK05037).  Dr. Helfgott's survey demonstrates that the levels of confusion for the marks on goods for which Calvin Clothing has indisputable prior rights, i.e. boys' suits and tailored clothing, are the same as for those goods in which Calvin Klein has prior rights, i.e. women's dresses.  Mr. Helfgott's testimony was summed up as follows:

> Q.   So that you can't give the opinion that any of these tests yielded a higher likelihood of confusion between the Calvin Clothing mark, whatever that was, on the one hand and Calvin Klein, then did Stimulus H, which was Calvin which included boys' suits, correct?"

> A.   Yes, I think all of these measure to the same statistical level, the same level of confusion with minor variations from one to the next.

Jason Decl. Ex. 27 (Helfgott Tr. 93-94).   This is a critical point because the Plaintiffs do not dispute Calvin Clothing's prior rights to the mark CALVIN for boys' suits. (*See, e.g.,* Complaint ¶34).

These survey results clearly raise the issue of "reverse confusion."   (*See* 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §23:10 (4th Ed. 2005): "In 'reverse confusion,' customers purchase the senior user's goods under the mistaken impression that they are getting the goods of the junior user.   That is, reverse confusion occurs when the junior user's advertising and promotion so swamps a senior user's reputation in the market that customers are likely to be confused into thinking that the senior user's goods are those of the junior user.")   Since Calvin Clothing is the "senior user" with respect to boys' and men's clothing, any confusion between CALVIN and CALVIN KLEIN for those goods would be reverse confusion.   To the extent that the same levels of confusion exist with respect to those goods for which Calvin Clothing has prior, incontestable rights, if such evidence is deemed to be probative, the reverse confusion may merit cancellation of Calvin Klein's registrations for those goods and an amendment of the pleadings to conform to such evidence. Fed. R. Civ. P. 15(b).

Ford Survey

In addition to the Helfgott survey conducted during the TTAB proceedings, the plaintiffs commissioned a new survey for this action at a cost of approximately $180,000.   Jason Decl. Ex. 28 (Ford Tr. 10).   The plaintiffs have provided no explanation of the extreme disparity between the results of the Helfgott survey and those of the Ford survey.   For example, Dr. Helfgott found 82 percent confusion for the

mark CALVIN SCHOOLWEAR while Dr. Ford found 23.14 percent confusion for the same mark and the same goods.  Jason Decl. Ex. 26 (Defendants' Ex. 51: CK05022); Jason Decl. Ex. 29 (Ford Report, P003481).  These disparities raise obvious questions regarding the methodology and accuracy of the two surveys.

Notwithstanding the disparate results, the Ford survey is significant because it confirms the finding of the Helfgott survey that levels of confusion for the CALVIN marks on goods for which Calvin Clothing has prior rights and incontestable registrations, such as men's suits and tailored clothing, are similar to the levels of confusion for all goods.  Although Dr. Ford did not test boys' suits, he opined that, if he had done so, he "wouldn't be surprised if [the results] were similar to the schoolwear [results]."  Jason Decl. Ex. 28 (Ford Tr. 83-84).  Thus, the Ford survey confirms that Calvin Clothing's natural expansion of its product offerings beyond its original boys' and men's tailored clothing has been shown not to cause any more confusion than goods for which Calvin Clothing has incontestable trademark registrations.

The Ford survey is also significant because Dr. Ford was able to determine that the addition of the descriptive terms AMERICA, SPORT, BABY and COLLECTION, as well as the star and line designs, to the CALVIN mark does not cause any additional confusion beyond that of the CALVIN mark alone.  Jason Decl. Ex. 28 (Ford Tr. 71, 74, 79-83).

In sum, the Ford and Helfgott surveys demonstrate that levels of confusion between the CALVIN marks and the CLAVIN KLEIN mark are comparable regardless of the type of apparel that is tested, and regardless of whether the mark tested is CALVIN alone or with a descriptive modifier or design.  Consequently, since Calvin Clothing has

-18-

an undisputed, incontestable registration for CALVIN for boys' tailored clothing (the '999 Registration), the Court must allow the additional registrations and applications that the plaintiffs are contesting because the plaintiffs themselves have demonstrated that no added damage to the plaintiffs could possibly be attributed to such additional registrations. The law is well-settled that, where an applicant to register a mark already has an existing registration, if there is no added damage that would be caused by further registrations, there is no ground for sustaining a challenge to registration. *See, e.g., Joseph & Feiss Co. v. Sportempos, Inc.*, 451 F.2d 1402, 1403-4 (C.C.P.A. 1971); *Morehouse Mfg. Corp. v. J. Strickland Co.*, 407 F.2d 881, 884 (C.C.P.A. 1969).

## III.   ARGUMENT

Courts have recognized that one of the interests protected by the Lanham Act is a "senior user's interest in being able to enter a related field at some future time." *Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1172 (2d Cir. 1976); *Rosenthal A.G. v. Ritelite, Ltd.*, 986 F. Supp. 133, 140 (E.D.N.Y. 1997). Defendants' apparel industry expert, George Santacroce, recognized that it is common for apparel brands to expand their offerings as part of their growth. Jason Decl. Ex. 10 (Santacroce Report ¶17). In fact, Mr. Santacroce opined that "[a]ny company that intends to survive, grow and build equity and sustainability in its brand and its business MUST diversify and expand to meet the shifts in market conditions driven by consumer preferences and demands." (Jason Decl. Ex. 10) (Santacroce Report ¶26.) He recognized that both Calvin Clothing and Calvin Klein have engaged in these expansion strategies, albeit at different stages of their development. (Jason Decl. Ex. 10) (Santacroce Report ¶27.)

In their brief, the plaintiffs cite cases purporting to support their position that Calvin Clothing should not be permitted to expand its business in light of the plaintiffs' intervening rights. Plaintiffs' Brief at 14-18. These cases are inapposite in that they uniformly involve laches and acquiescence on the part of the senior user and other distinguishing facts. Significantly, however, the cases do acknowledge that a determination of whether or not a party is entitled to expand use of its trademark is based in large part upon the equities of the particular case. Therefore, resolution of the many factual issues in this case will be crucial in the resolution of the parties' respective rights, and call for denial of plaintiffs' motion for summary judgment on three issues.

*Patsy's* Case

The plaintiffs have cited the *Patsy's* case, among others, for the proposition that Calvin Clothing, the senior user, should not be allowed to expand use of its CALVIN brand to related fields in the face of the junior user's, Calvin Klein's, prior entry into those related fields. *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209 (2d Cir. 2003); Plaintiffs' Brief at 17. Plaintiffs go so far as to say that this case in "on all fours with *Patsy's*." *Id.* There are, however, numerous differences between the *Patsy's* case and this case.

First, Patsy's involved marks that were concededly similar -- PATSY'S PIZZERIA v. PATSY'S ITALIAN RESTAURANT. Indeed, they were identical concerning the inherently distinctive and dominant portion of the marks. Additionally, the typescript that was used by the parties, along with other aspects of the label, was strikingly similar. *Id.* at 218. Here, the marks are not confusingly similar, as recognized by both parties over the

course of several decades and as recognized by the PTO in concurrently registering both the CALVIN and CALVIN KLEIN marks for identical goods.

Second, laches played an important role in *Patsy's*. The Court held that the senior user had accepted the existence of the junior user for decades for the same restaurant services and could not prevent the junior user from using its mark for pasta sauce. *Id.* at 216-7. In this case, rather than sitting on its rights as the plaintiffs have asserted, Calvin Clothing made sure that Calvin Klein was cognizant of its rights to the mark "Calvin" alone, and the parties acknowledged early on that their CALVIN and CALVIN KLEIN marks were not confusingly similar. In addition, Calvin Clothing vigilantly reminded Calvin Klein not to use the "Calvin" mark without "Klein." The historical correspondence between the parties clearly demonstrates that Calvin Clothing did not sit on its rights. To the contrary, the parties understood that no problems would ensue as long as Calvin Clothing remained CALVIN and Calvin Klein remained CALVIN KLEIN. Moreover, since even the PTO recognized that the marks weren't confusingly similar, Calvin Clothing had no reason to believe that its rights would be eroded by Calvin Klein's use of its CALVIN KLEIN mark.

Third, the *Patsy's* Court was greatly influenced by the fact that the senior user fabricated evidence to bolster its claim. This colored the entire decision.

Finally, it is important to note that, despite certain limitations imposed by the Court, the senior user in Patsy's <u>was allowed</u> to expand use of its brand to pasta sauce.

*Physician's Formula* Case

The Physicians Formula case cited by the plaintiffs is similarly inapposite. *Physicians Formula Cosmetics, Inc. v. West Cabot Cosmetics, Inc.*, 857 F.2d 80 (2d Cir.

337362.1

1988).  As in Patsy's, laches played an important role in the decision as the court noted that the senior user made no effort to assert its rights against the junior user for sixteen years.  *Id.* at 82 n. 1.  As discussed above, such is not the case here in which Calvin Clothing asserted its rights in its CALVIN mark, and the parties maintained their understanding that Calvin Clothing is CALVIN and Calvin Klein is CALVIN KLEIN.  The court recognized that a "refusal to apply the 'expansion of business doctrine' to protect the senior user is based upon the equities of the particular case, most often the senior user's laches coupled with the junior user's efforts to market its product."  *Id.*  In this case, the equities favor Calvin Clothing.  Calvin Clothing vigilantly protected its CALVIN mark; and Calvin Clothing and Calvin Klein agreed early on that their brands could co-exist.  This agreement is evidenced by Calvin Klein's expansion of its brand after it had knowledge of Calvin Clothing and its CALVIN mark and registrations.

*France Milling*

Similarly, *France Milling Co., Inc. v. Washburn-Crosby Co., Inc.*, 7 F.2d 304 (2d Cir. 1925), another case relied upon by plaintiffs, is inapposite because of the major role played by laches and acquiescence.  In addition, *France Milling* is not really a case about expansion of a brand.   Rather, it is about a commonplace, indistinctive trademark (GOLD LABEL) and the narrow protection that such a common trademark is afforded.  This has nothing to do with the case at bar.

*Polaroid* Analysis

The plaintiffs undertake an analysis of the eight *Polaroid* factors used in the Second Circuit to evaluate the issue of likelihood of confusion.[6]  Plaintiffs assertion that there is a likelihood of confusion between the CALVIN marks and CALVIN KLEIN is

clearly at odds with the experts at the PTO. The PTO recently issued four "new" CALVIN registrations despite the "famous" CALVIN KLEIN mark. Moreover, Calvin Klein was able to register its CALVIN KLEIN mark for men's and boys' tailored clothing despite pre-existing CALVIN registrations for identical goods. Clearly the PTO does not consider the CALVIN and CALVIN KLEIN marks to be confusingly similar. It is disingenuous for the plaintiffs to now claim a likelihood of confusion, after more than thirty years, in the face of all the existing registrations and in the absence of, after all these years of any actual confusion. In considering that analyses, the court should be guided by the respective burdens of proof of the parties and in particular the statutory presumptions afford the several CALVIN registrations by Calvin Clothing and now challenged by Calvin Klein.

(a) Strength of the mark - The Defendants acknowledge that CALVIN KLEIN is a strong mark. However, the plaintiffs try to sneak into their analysis that they own a famous CALVIN mark. They do not. As explained above, the plaintiffs have not used "Calvin" alone without the full "Calvin Klein" mark. The plaintiffs admit this themselves in their papers. The "famous" Brooke Shields commercial that the plaintiffs refer to again and again is more than twenty-five years old. Moreover, even in the late 1980's, when the commercial was only slightly past its time, the TTAB held that "the record does not establish that [Calvin Klein] has made any trademark use of CALVINS." *Calvin Klein*, 8 U.S.P.Q.2d at 1271 n. 3. In addition, plaintiffs do not have a registration for "Calvin" in the United States despite have such registrations throughout the rest of

---

[6] *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820 (1961).

the world. Clearly, "Calvin" is not a mark in which plaintiffs have any rights in the United States.

(b) Similarity of the marks - The CALVIN marks and CALVIN KLEIN marks are not similar. This is evidenced by the PTO's registration of these marks for identical goods. In addition, the plaintiffs survey experts, Drs. Helfgott and Ford, have established that the descriptive modifiers added to the CALVIN mark do not increase confusion. This factor favors the Defendants.

(c) and (d) Proximity of the Products and Bridging the Gap - The parties are both in the apparel business. Calvin Clothing's efforts to expand its business into areas where the plaintiffs are already operating is no different from Calvin Klein's expansion into menswear and boyswear in the 1970's and 1980's, two areas where Calvin Clothing was already operating and in which Calvin Clothing had registrations for its CALVIN mark. This factor favors the Defendants.

(e) Channels of Trade - Calvin Clothing's CALVIN products do not travel in the same channels of trade as CALVIN KLEIN products. By way of example, the president of Calvin Klein testified that he had seen CALVIN product only once, in Steinmart, a discount retailer with about 200 stores. He then testified that Steinmart is not an approved Calvin Klein account. Jason Decl. Ex. 16 (Murry 2/24/06 Tr. 57-58).

(f) Actual Confusion - There have been no instances of actual confusion despite co-existence of over thirty years in the same industry. Plaintiffs' Brief at 22. There has not even been confusion over the last ten years when Calvin Clothing has expanded its product offerings and has sold millions of dollars of sportswear. This factor strongly favors the Defendants.

-24-

(g) Bad Faith of the junior user - Plaintiffs assertion of bad faith is absurd.  First of all, Calvin Clothing is the SENIOR USER of the CALVIN mark, predating Calvin Klein by over thirty years.  Second, plaintiffs' own survey experts have demonstrated that Calvin Clothing's "new" registrations and applications cause no additional confusion.  Finally, the record shows that Calvin Clothing has instructed its licensees to use the full name -- Calvin Clothing Company -- on products to further reduce any chance of confusion. Jason Decl. Ex. 10 (Santacroce Report ¶37).  This factor favors Defendants.

<u>Additional factors</u>

The *Polaroid* court recognized that its list of factors is not exhaustive, and that "the court may have to take other variables into account."  *Id*. at 495.  In this case, the course of conduct of the parties over three decades, as set forth above, should factor heavily in the Court's determination of the registrability of the CALVIN marks, and Calvin Clothing's continued right to use these marks.

## IV.   CONCLUSION

For all of the reasons stated above, Plaintiffs' First Motion for Partial Summary Judgment on Counts I, III, IV, V, VII, and VIII of the Complaint, and on Defendants' Counterclaims should be denied.

This 3rd day of April, 2006

By: _____

Anthony F. LoCicero (AL 7538)
Marc J. Jason (MJ 0934)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY  10016
Tel:  (212) 336-8000
Fax:  (212) 336-8001
Attorneys for Defendants/Counterclaim Plaintiffs

337362.1