Anthony F. Lo Cicero (AL 7538)
Marc J. Jason (MJ 0934)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
Tel: (212) 336-8000
Fax: (212) 336-8001
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| PHILLIPS-VAN HEUSEN CORP., CALVIN KLEIN, INC. and CALVIN KLEIN TRADEMARK TRUST, | Civil Action No. 05-CV-6802 (JSR) |
| Plaintiffs, | ECF Case |
| v. | **MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS FOR CANCELLATION OF U.S. TRADEMARK REG. 1,039,306** |
| CALVIN CLOTHING COMPANY, INC., and STAR RIDE KIDS, INC., | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - x

Defendants Calvin Clothing Company, Inc. ("Calvin Clothing") and Star Ride Kids, Inc. ("Star Ride") (together, the "Defendants"), by and through their counsel, submit this memorandum of law in opposition to Plaintiffs' Second Motion for Partial Summary Judgment on Plaintiffs' Claims for Cancellation of U.S. Trademark Reg. 1,039,306.

# Table of Contents

I.   PRELIMINARY STATEMENT ............................................................................... 1

II.  ARGUMENT ....................................................................................................... 3

  A. The CALVIN Trademark Has Been In Continuous Use On Men's Tailored Clothing From 1969 Through The Present................................................................... 4

  B. The CALVIN Trademark Was Not Legally Abandoned ..................................... 10

    1.   The Plaintiffs' Delay ................................................................................ 13

    2.   The 1996 – 1998 Period ........................................................................... 15

  C. The '306 Registration Was Not Fraudulently Renewed And Should Not Be Cancelled ..... 17

III. CONCLUSION ................................................................................................... 22

# Table of Authorities

Page

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ...................................................................................3

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)...................................................................................3

*Deere & Co. v. MTD Holdings, Inc.,*
No. 00 Civ. 5936 (LMM), 2003 U.S. Dist. LEXIS 19161 (S.D.N.Y. Oct. 27, 2003) ........4

*Eh Yacht, LLC v. Egg Harbor, LLC,*
84 F. Supp. 2d 556 (D.N.J. 2000) ...............................................................3

*Frankel v. Central Moving & Storage Co., Inc.,*
95 CV 6330, 1997 U.S. Dist LEXIS 16886 (S.D.N.Y. Oct. 29, 1997) ...............................4

*Healing Children, Inc. v. Heal Children, Inc.,*
786 F. Supp. 1209 (W.D. Pa. 1992) ...........................................................13

*ITC Ltd. v. Punchgini, Inc.,*
373 F. Supp. 2d 275 (S.D.N.Y. 2005) .........................................................3

*Joseph & Feiss Co. v. Sportempos, Inc.,*
451 F.2d 1402 (C.C.P.A. 1971) ..................................................................21

*Macaulay v. Malt-Diastase Co.,*
4 F.2d 944 (D.C. Cir. 1925) .......................................................................14

*Miller Brewing Co. v. Oland's Breweries (1971) Ltd.,*
548 F.2d 349 (C.C.P.A. 1976) ...................................................................16

*Mobil Oil Corp. v. Pegasus Petroleum Corp.,*
No. 83 Civ.9170 (LFM), 1986 U.S. Dist. LEXIS 26013 (S.D.N.Y. May 1, 1986),
*aff'd* 818 F.2d 254 (2d Cir. 1987) .............................................................17

*Morehouse Mfg Corp. v. J. Strickland Co.,*
407 F.2d 881 (C.C.P.A. 1969)....................................................................21

*Pacific Int'l Rice Mills, Inc. v. Rice Growers Ass'n,*
14 U.S.P.Q.2d 1659 (E.D. Cal. 1989) .........................................................13

338247.1                                    -ii-

*Person's Co. v. Christman,*
9 U.S.P.Q.2d 1477 (T.T.A.B. 1988) ...............................................................16

*Pilates, Inc. v. Current Concepts*, 120 F. Supp. 2d 286 (S.D.N.Y. 2000) .......................20

*Rauland Borg Corp. v. TCS Mgmt. Group,*
No. 93 C 6096, 1995 U.S. Dist. LEXIS 5390 (N.D. Ill. Apr. 20, 1995) ...........................18

*Rooms & Gardens, Inc. v. Rooms & Gardens,*
2002 TTAB LEXIS 163 (T.T.A.B. Feb. 20, 2002) ...................................................14, 15

*Rosenthal A.G. v. Ritelite, Ltd.,*
986 F. Supp. 133 (E.D.N.Y. 1997) .................................................................21

*Sands, Taylor & Wood Co. v. Quaker Oats Co.,*
978 F.2d 947 (7th Cir. 1992) ....................................................................13, 16

*Sands, Taylor & Wood v. Quaker Oats Co.,*
18 U.S.P.Q. 2d 1457 (N.D. Ill. 1990) .............................................................16

*Saratoga Vichy Spring Co. v. Lehman,*
625 F.2d 1037 (2d Cir. 1980) ....................................................................3, 4

*Scarves by Vera, Inc. v. Todo Imports Ltd.,*
544 F.2d 1167 (2d Cir. 1976) .....................................................................21

*Schieffelin & Co. v. The Molson Cos.,*
9 U.S.P.Q.2d 2069 (T.T.A.B. 1989) ...............................................................13

*Torres v. Cantine Torresella S.r.l.,*
808 F.2d 46 (Fed. Cir. 1986) .....................................................................20

*Total Control Apparel, Inc. v. DMD Int'l Imports, LLC,*
409 F. Supp. 2d 403 (S.D.N.Y. 2006) ..............................................................15, 16

*Yocum v. Covington,*
216 U.S.P.Q. (BNA) 210 (TTAB 1982) ...............................................................21

## FEDERAL STATUTES

15 U.S.C. §1127..................................................................................1, 3, 10

Fed. R. Civ. P. 9(b) .............................................................................17

Fed. R. Civ. P. 56(c) ............................................................................3

## I.   PRELIMINARY STATEMENT

Plaintiffs' Second Motion for Partial Summary Judgment on Plaintiffs' Claims for Cancellation of U.S. Trademark Reg. 1,039,306 (Plaintiffs' "Second Motion") seeks summary judgment with respect to the Plaintiffs' claims of alleged abandonment and alleged fraudulent renewal of U.S. Trademark Reg. 1,039,306 ("the '306 Registration"). The Defendants have also filed a partial summary judgment motion with respect to Count II of the Complaint seeking to cancel Calvin Clothing's U.S. Trademark Registration No. 1,039,306, because the Plaintiffs' claims of abandonment and fraudulent renewal cannot be factually substantiated based on the factual record in this case.[1]

Under United States Trademark Law, abandonment occurs when use of a mark has been discontinued with intent not to resume use.[2]   15 U.S.C. § 1127.   A discontinuation of use without intent to resume use has not occurred here, and the Plaintiffs have not produced evidence to the contrary sufficient to sustain their strict burden of proof.   The evidence, which has been adduced both in this action and in the prior TTAB proceedings,[3] establishes without dispute that Calvin Clothing (and its

---

[1] *See* D.I. 24, Defendants' Motion for Partial Summary Judgment Dismissing (1) Plaintiffs' Claims for Monetary Relief and (2) Count II of the Complaint ("Defs. SJ Motion").   In order to avoid duplication of the factual record submitted as part of Defs. SJ Motion, where possible herein, the Defendants have cited to Defendants' Local Rule 56.1 Statement of Material Facts ("Defs. SOMF") (D.I. 21), the Declaration of Anthony F. Lo Cicero ("Lo Cicero Decl.") and accompanying exhibits (D.I. 22), and the Declaration of James Alperin ("Alperin Decl.") and accompanying exhibits (D.I. 23), which were submitted with Defs. SJ Motion.

[2] Under the statute, abandonment can also occur when the trademark owner engages in some course of conduct that causes the mark to become generic.   However, the Plaintiffs have not made this allegation, and this is not an issue in this case.

[3] By stipulation of the parties entered by the Court on September 15, 2005, discovery conducted in the PTO proceedings is to be treated as if it were conducted in this action.

338247.1

predecessors) have been using the CALVIN mark which is the subject of the '306 Registration, in connection with men's trousers, suits and sportcoats, continuously since 1969. There has never been any cessation of the use of the mark. Furthermore, despite conjecture by the Plaintiffs that the mark was not in use during the 1980s and 1990s, the testimony of independent, third-party witnesses, documents produced by a third party, and a stipulation by the parties as to other testimony have confirmed that indeed the mark was in use. In fact, party-witness James Alperin has testified as to his *first-hand* knowledge of the use of the CALVIN mark during that period.

Discovery is closed and the Plaintiffs have not proffered any affirmative evidence to sustain their claim that the CALVIN trademark was discontinued with intent not to resume use. Rather, the Plaintiffs merely had a belief, and that belief has been belied by the testimony of two witnesses subpoenaed in the PTO proceedings by the Plaintiffs themselves. Thus, while the Defendants agree that there is no genuine issue of disputed fact with respect to the Plaintiffs' abandonment and fraud claims, the existing facts, as presented herein and in the Defendants' own Summary Judgment Motion, indisputably establish that the CALVIN mark was not abandoned.

Since there was no abandonment of the CALVIN mark by Calvin Clothing or its predecessors at any time, including in 1996 when the '306 Registration was renewed, the Plaintiffs' claim of fraudulent renewal of the '306 Registration also fails as a matter of law. There were no false or misleading statements in the renewal application for the '306 Registration submitted on behalf of Calvin Clothing. Furthermore, the Plaintiffs

have not put forth a shred of evidence that Calvin Clothing made any deliberate attempt to mislead the PTO, because there is none.

Thus, the Plaintiffs' Second Motion seeking summary judgment on the Plaintiffs' claims for cancellation should be denied.

## II.    ARGUMENT

Summary judgment is appropriate when no genuine issue of material fact exists to be tried and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *ITC Ltd. v. Punchgini, Inc.*, 373 F. Supp. 2d 275, 278 (S.D.N.Y. 2005). A disputed material fact is only genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 250; *ITC Ltd.*, 373 F. Supp. 2d at 278.

Under United States trademark law, a mark is considered abandoned where (1) use has been discontinued, and (2) there is no intent to resume use within the reasonably foreseeable future. 15 U.S.C. § 1127. Because abandonment constitutes forfeiture of a property right, it must be proven by clear and convincing evidence. *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980); *Pilates, Inc. v. Current Concepts*, 120 F. Supp. 2d 286, 295 (S.D.N.Y. 2000); *Eh Yacht, LLC v. Egg Harbor, LLC*, 84 F. Supp. 2d 556, 564 (D.N.J. 2000). Thus, in order to prevail on their claim to cancel the '306 Registration, the Plaintiffs would have to meet their burden in showing that the undisputed evidence establishes that Calvin Clothing or its

predecessors stopped using the CALVIN mark on tailored menswear without an intent

to resume its use, and such a property forfeiture would need to be "strictly proven."[4]

*Frankel v. Central Moving & Storage Co., Inc.*, 95 CV 6330, 1997 U.S. Dist. LEXIS 16886,

*9 (S.D.N.Y. Oct. 29, 1997); *Saratoga*, 625 F.2d at 1044.

To the contrary, the discovery which has taken place in this action and the prior

TTAB proceedings, clearly establishes that Calvin Clothing and its predecessors <u>have</u>

continuously used the mark from 1969 to the present.  Therefore, the Plaintiffs' have not

carried their strict burden; they cannot establish abandonment by clear and convincing

evidence; and they clearly have not shown entitlement to summary judgment.

A.     The CALVIN Trademark Has Been In Continuous Use On
       <u>Men's Tailored Clothing From 1969 Through The Present</u>

In their Second Motion, the Plaintiffs allege that the CALVIN mark was

abandoned at some point during the mid-1980s to mid-1990s.  Plaintiffs' Second Motion

at pp. 2-10.  As discussed below, however, the evidence adduced both in this action and

in prior TTAB proceedings, establishes without dispute that Calvin Clothing (and its

predecessors) have been using the CALVIN mark which is the subject of the '306

Registration, in connection with men's tailored clothing, continuously from 1969 through

the present.[5]

---

[4] Although not the case here, even where a statutory presumption of abandonment has been established by nonuse for more than three consecutive years, "[w]hile presumption of nonuse for three consecutive years shifts the burden of production, the ultimate burden of proof as to both elements [of abandonment] will remain with the party claiming the abandonment defense." *Deere & Co. v. MTD Holdings, Inc.,* No. 00 Civ. 5936 (LMM), 2003 U.S. Dist. LEXIS 19161, *12-13 (S.D.N.Y. Oct. 27, 2003).

[5] As discussed herein, the only period when the CALVIN mark arguably was not in use was when it was licensed to Palm Beach from 1996 to 1998.

<u>1969 - 1996</u>

The application to register the CALVIN mark for men's suits and sportcoats was first filed in 1975 by the Calvin Clothing Corporation. The mark registered on May 11, 1976 under the '306 Registration, which reflects a claim of use beginning in 1969.[6] (Copy of '306 Registration attached to D.I. 22, Lo Cicero Decl. Ex. A) (D.I. 21, Defs. SOMF ¶1).

From the 1970s up until the Alperin family purchased the Calvin Clothing business in 1996,[7] the Alperin family businesses were producing men's tailored pants containing the CALVIN label for both the Menswear and Calvin Youthwear divisions of the Calvin Clothing Corporation.[8] James Alperin, now President of Calvin Clothing, was involved in the production aspect of his family's businesses since 1981, and between 1988 and his family's acquisition of Calvin Clothing in 1996, he was entirely responsible for production scheduling.  D.I. 23, Alperin Decl. ¶¶ 1, 2.  Thus, he has *first-hand*

---

[6] In 1982, the Calvin Clothing Corporation became a wholly-owned subsidiary of the Palm Beach Company.  *See* D.I. 22, Lo Cicero Decl. Ex. B (Deposition of Henry Siegal ("H. Siegal Tr.") 12). Then, in 1989, the CALVIN mark came under the ownership of Palm Beach Company when Calvin Clothing Corporation was merged into the Palm Beach Company.  *See* Trademark Assignment Abstract of Title for U.S. Trademark Registration No. 1,039,306 (attached to D.I. 22, Lo Cicero Decl. Ex. C).

[7] Finally, in 1996, Palm Beach Company sold the mark to defendant Calvin Clothing, whose principal is James Alperin.  D.I. 23, Alperin Decl. ¶7 and Ex. 5 thereto.  (D.I. 21, Defs. SOMF ¶¶10-11).

[8] Beginning in the 1970s, a number of Scranton, Pennsylvania-based businesses owned by the Alperin family, including Gold Star Mfg., AAA Trouser, and Mayflower Mfg., were key trouser suppliers to Calvin Clothing Corporation.  These businesses supplied to, among other things, men's tailored suit trousers to Calvin Clothing Corporation. D.I. 23, Alperin Decl. ¶2; D.I. 22, Lo Cicero Decl. Ex. B (H. Siegal Tr. 25-26).  (D.I. 21, Defs. SOMF ¶3.)  These businesses would cut and sew pants and sew labels into the pants.  D.I. 23, Alperin Decl. ¶2; D.I. 22, Lo Cicero Decl. Ex. B (H. Siegal Tr. 25-26).  It was the Alperin family that ultimately, in 1996, purchased the Calvin Clothing business and now owns and operates Calvin Clothing.  D.I. 23, Alperin Decl. ¶¶ 1, 2, 7.

knowledge of the brands that were being produced at that time, and was personally aware that, at a minimum, men's tailored suit trousers were being sold under the CALVIN trademark throughout that period.  D.I. 23, Alperin Decl. ¶ 2.

Further, as the Plaintiffs recognize, Calvin Siegal, former president of Calvin Clothing Corporation and now a disinterested third party, testified without equivocation that Calvin Clothing had been selling men's clothing under the Calvin name continuously from at least the late 1960s to the time of his retirement in 1986.  Plaintiffs' Second Motion at p. 4 (citing Duhaime Decl. Exh. 22 (C. Siegal Tr. 48-49)).

The testimony of Henry Siegal, also a disinterested third party who no longer has any relationship with Calvin Clothing, also establishes use of the CALVIN mark during the relevant time period.  Mr. H. Siegal worked for Calvin Clothing Corporation full time beginning in 1975, assumed management responsibilities in the late 1970's, and was President of the Calvin Clothing Corporation from 1982-1992.  D.I. 22, Lo Cicero Decl. Ex. B (H. Siegal Tr. 6-7).

Mr. H. Siegal[9] testified that when he was a manager in the late 1970's and early 1980's, the company was selling men's tailored clothing under the CALVIN label.  D.I. 22, Lo Cicero Decl. Ex. B (H. Siegal Tr. 9).  Mr. H. Siegal further testified that Calvin Clothing Corporation continued to sell men's tailored clothing throughout his tenure at the company, which ended in 1992.  (D.I. 21, Defs. SOMF ¶4.)  His telling testimony can be summed up as follows:

> Q.   During the time that you were associated with Calvin

---

[9] Mr. Siegal was deposed by the Plaintiffs in connection with the Cancellation Proceeding on November 5, 2004.

> Clothing, do you have any knowledge that Calvin
> Clothing ever discontinued the use of the trademark
> Calvin in connection with men's suits or sport coats?

A.    No, we did not.

D.I. 22, Lo Cicero Decl. Ex. B (H. Siegal Tr. 39).

The testimony of Gary Bader further confirms that use of the CALVIN mark continued into and throughout the 1990s.  Mr. Bader was a sales representative who worked for the Calvin Youthwear Division of the Plaid Clothing Group from January 1993 to December 1996, and later became a customer of Calvin Clothing.[10]  D.I. 22, Lo Cicero Decl. Ex. E (Bader 12/12/05 Tr. 12).

During the approximately four years Mr. Bader worked as a Calvin Youthwear Division sales representative, from 1993 to 1996, Mr. Bader sold Calvin brand boys' suits and boys' sportcoats and Calvin brand students' suits and students' sport coats.  The Calvin brand boys' suits and boys' sportcoats varied in size from 8 to 20.  The Calvin brand students' suits and students' sportcoats varied in size from 35 to 42, as reflected in specifications outlined in the Stipulation which is attached to the Lo Cicero Decl. as Exhibit I (D.I. 22).[11]  Mr. Bader did not sell any Calvin brand suits or sportcoats other than boys' and students' suits, and boys' and students' sportcoats.  D.I. 22, Lo Cicero Decl. Ex. I (Parties' Stipulation ¶¶ 1-6).  However, it is undisputed that size 35 to 42 suits (Calvin youthwear "student" sizes) are men's suit sizes.  D.I. 22, Lo Cicero Decl. Exs. J, I

---

[10] Other than as a customer, Mr. Bader has no relationship with Calvin Clothing and is a disinterested third party.

[11] Mr. Bader was subpoenaed and deposed by the Plaintiffs in connection with the TTAB proceedings on November 4, 2004, and deposed again on December 12, 2005 in this action.  The parties have reached a stipulation as to many of the facts which Mr. Bader testified to.

(Wyse Tr. 31-33; Parties' Stipulation ¶ 7).[12]  *See also* D.I. 22, Lo Cicero Decl. Exs. K, L, M, N (Larry Fletcher 2/14/06 Tr. 66-67; Allan Ellinger Tr. 155; Norman Moskowitz Tr. 40-41; and Isaac Gabbay Tr. 89, 108).   Moreover, if called to testify at trial, Mr. Bader would testify that he sold Calvin brand students' suits to at least one store that did not sell boys' apparel. D.I. 22, Lo Cicero Decl. Ex. I (Parties' Stipulation ¶ 8).

Thus, it is beyond dispute that Calvin Clothing (and its predecessors) have been using the CALVIN mark, in connection with men's tailored clothing, continuously from the 1969 through 1996.

<u>1996 – 1998</u>

In March of 1996, when the Alperin family purchased the Calvin Clothing business, including the '306 Registration, as an on-going business complete with inventory and orders in process, the seller, Palm Beach Company, Inc., insisted that, as a condition of the purchase, an exclusive license to use the CALVIN mark on menswear be granted back to it.  D.I. 23, Alperin Decl. ¶¶ 4-5, 7 and Ex. 5 thereto.  (D.I. 21, Defs. SOMF ¶¶10, 12.)  Mr. Alperin agreed to license back the mark to Palm Beach Company, but he took care to insist that the license contain a clause stating that if the CALVIN mark were not used for two consecutive years, or if Palm Beach Company went out of the men's tailored clothing business, that the license would terminate and all rights would revert to the licensor, Calvin Clothing.  D.I. 23, Alperin Decl. ¶ 6 and Ex. 4 thereto.  (D.I. 21, Defs. SOMF ¶13.)  The license was executed as of April 1, 1996.  *Id.*

---

[12] The Calvin brand students' suits and students' sport coats sold by the Calvin Youthwear Division were different from the suits and sport coats sold by the Calvin Menswear Division. Men's suits and sport coats sold by the Calvin Menswear Division under its various brands with the same size designation as the Calvin brand students' suits had a different design, construction

(D.I. 21, Defs. SOMF ¶14.)   Shortly after the purchase and execution of the license, James Alperin, on behalf of Calvin Clothing, signed the renewal application for the '306 Registration.  D.I. 23, Alperin Decl. ¶ 8.  (D.I. 21, Defs. SOMF ¶15.)

On or about September 14, 1998, Mr. Alperin asked James Murray, the President of Palm Beach Company, if the CALVIN mark was in use on menswear pursuant to the license from Calvin Clothing.  Mr. Murray advised him that it was not.  Pursuant to the terms of the license, Mr. Alperin terminated it by letter dated November 6, 1998.  D.I. 23, Alperin Decl. ¶¶ 9-10 and Ex. 6 thereto.  (D.I. 21, Defs. SOMF ¶16.)

<u>1998 to Present</u>

Immediately upon learning that Palm Beach Company was not using the CALVIN mark on men's tailored clothing and terminating the license, Calvin Clothing commenced production of men's suits and sportcoats under the CALVIN label.   Calvin Clothing received its first order for CALVIN men's suits on November 1, 1998, and the product shipped on April 1, 1999.  (D.I. 21, Defs. SOMF ¶ 17.)  Calvin Clothing has been selling CALVIN-label men's suits continuously since that time, with current sales of approximately $1.9 million per year.  D.I. 23, Alperin Decl. ¶¶ 11-13.  (D.I. 21, Defs. SOMF ¶18.)   Samples from the current line of CALVIN brand menswear have been produced to the Plaintiffs in this action.  D.I. 23, Alperin Decl. ¶16 and Ex. 8 thereto. (D.I. 21, Defs. SOMF ¶19.)

Corroborating the foregoing, from about 1998 to 2001, Mr. Bader bought men's-sized suits from Calvin Clothing to sell in the clothing store he owns and operates in

---

and fabrication than the Calvin brand students' suits.

Cedarhurst, New York called Boys World of Cedarhurst, which has been in business since 1988. D.I. 22, Lo Cicero Decl. Ex. D (Bader 11/4/04 Tr. 7, 11, 13-17.  (D.I. 21, Defs. SOMF ¶¶5-9.)

B.   The CALVIN Trademark Was Not Legally Abandoned

As demonstrated by the deposition testimony of Messrs. H. Siegal and Bader, and the Declaration of James Alperin, the CALVIN mark was not discontinued for "more than a decade" at some point in the 1980s to 1990s as the Plaintiffs allege, (Plaintiffs' Second Motion at pp. 3-7), but rather has been in continuous use on men's tailored clothing from 1969 through the present.  In short, Mr. H. Siegal has testified that for as long as he was associated with Calvin Clothing, from the late 1970's through 1992, it was selling men's suits and sportcoats under the CALVIN trademark.  Mr. Alperin has testified that the Alperin family businesses supplied men's tailored suit trousers bearing the CALVIN trademark from the 1970's until Mr. Alperin's purchase of the business in 1996.  Mr. Bader has testified that from January of 1993 through 1996, he sold numerous men's-sized suits and sportcoats for Calvin Clothing.  From 1998 to 2001, Mr. Bader also bought men's-sized suits from Calvin Clothing to sell in his clothing store, Boys World of Cedarhurst.

Accordingly, the Plaintiffs have not, and could not possibly sustain their "strict" burden of proof to establish that the CALVIN trademark was legally abandoned because the evidence, adduced in this action and in prior TTAB proceedings, establishes without dispute that use of the CALVIN mark has ever been discontinued.  15 U.S.C. § 1127.

338247.1

-10-

The Plaintiffs primarily rely upon the testimony of James Murray, former president of Palm Beach Company, as the main factual support for their abandonment claim. However, Mr. Murray's tentative testimony does not establish that the mark at issue was legally abandoned, nor does it raise a genuine issue of fact in view of the testimony of third party witnesses Henry Siegal and Gary Bader and by party witness James Alperin.

Mr. Murray's statements regarding alleged non-use of the CALVIN mark on menswear were always highly qualified and speculative, and he was very careful to characterize his answers as beliefs, opinions, and to the best of his "recollection" rather than definitive statements and hard facts.[13] *See, e.g.,* Duhaime Decl. Ex. 17 (Murray Tr. 14) ("To my recollection, I don't remember ever selling that label"). This is far from the definitive statements that the Plaintiffs make Mr. Murray's testimony out to be. *See, e.g.,* Plaintiffs' Second Motion at 3. No where in his testimony does Mr. Murray unequivocally state that there was no use of the CALVIN mark on menswear.[14] In fact, on cross-examination, Mr. Murray's testimony is particularly telling:

> Q.  So as you sit here today, you can't say that the Calvin name for men's clothing wasn't sold to shows [sic] specialty stores?
>
> A.  I can't say definitively. The only thing I did say is that I don't recall that it was.

D.I. 22, Lo Cicero Decl. Ex. F (Murray Tr. 23-24).

---

[13] Further, Mr. Murray's lack of knowledge regarding the use or non-use of the CALVIN mark on menswear is also evident from his lack of awareness of his company's negotiation and license back of the CALVIN mark in 1996. D.I. 22, Lo Cicero Decl. Ex. F (Murray Tr. 20, 25-26).

[14] In fact, Mr. Murray admits that there "could have been some Calvin For Men's sales to small specialty stores." Duhaime Decl. Ex. 17 (Murray Tr. 15).

Mr. Bader and Mr. H. Siegal, on the other hand, have directly testified that they do know, and that the mark was used.[15]   D.I. 22, Lo Cicero Decl. Ex. I, B (Parties' Stipulation ¶¶ 7-8; H. Siegal Tr. 9, 39).   Significantly, Mr. Alperin has first-hand knowledge and directly testified that his family's company manufactured men's pants for Calvin Clothing containing CALVIN label, from the 1970s until the Alperin family's 1996 purchase.   Alperin Decl. ¶¶ 1, 2.   Even Mr. Murray admits that Mr. Alperin manufactured men's trousers for the Calvin Clothing.   Duhaime Decl. Ex. 17 (Murray Tr. 17).   Thus, Mr. Murray's testimony raises no issue of fact to contradict the unequivocal testimony of Messrs. H. Siegal, Bader and Alperin that the CALVIN mark was in use on menswear since 1969.   At best, the Plaintiffs' evidence of non-use is not enough to sustain their strict burden to cancel Calvin Clothing's valid and incontestable registration.   Moreover, the Plaintiffs' evidence of intent not to resume use is non-existent, and cannot overcome the overwhelming evidence of intent to use the mark.

Furthermore, despite the Plaintiffs' implication otherwise (Plaintiffs' Second Motion at p. 3), it is of no import that certain items of men's tailored clothing used the mark CALVIN FOR MEN rather than the CALVIN mark alone during the period of alleged abandonment in the 1980s and 1990s.   Use of the CALVIN FOR MEN mark constitutes

---

[15]  Although the Plaintiffs attempt to summarily dismiss Mr. H. Siegal's testimony by stating that he was unaware of any sales of men's suits under the CALVIN brand (Plaintiffs' Second Motion at p. 4), Mr. H. Siegal merely testified that he did not "know if someone just wanted to use just a plain Calvin label whether they would have got to it or not," but that he thought they "probably could have."  Duhaime Decl. Ex. 23 (Murray Tr. 11, 14-15).  However, Mr. H. Siegal specifically and definitively testified, for example, that Calvin Clothing was using Calvin For Men on menswear through the 1980s and at least until his tenure with the company ended in 1992.  D.I. 22, Lo Cicero Decl. Ex. B (H. Siegal Tr. 9, 11-13, 39); Duhaime Decl. Ex. 23 (H. Siegal Tr. 13-15); (D.I. 21, Defs. SOMF ¶4.)

use of the trademark CALVIN as a matter of law, since the "FOR MEN" portion of the mark is purely descriptive.  It has been repeatedly held that a change in a mark that does not affect the distinctive characteristics of the mark represents a continuity of the prior mark.  *See, e.g., Healing Children, Inc. v. Heal Children, Inc.,* 786 F. Supp. 1209, 1215 (W.D. Pa. 1992) ("where the distinctive character of the mark is not changed, the mark is, in effect, the same and the rights obtained by virtue of the earlier use of the prior form inure to the later form."); *Pacific Int'l Rice Mills, Inc. v. Rice Growers Ass'n,* 14 U.S.P.Q.2d 1659 (E.D. Cal. 1989); *Schieffelin & Co. v. The Molson Cos.,* 9 U.S.P.Q.2d 2069 (T.T.A.B. 1989); *Sands, Taylor & Wood Co. v. Quaker Oats Co.,* 978 F.2d 947, 955 (7th Cir. 1992) ("Minor changes in a mark which do not change the basic, overall commercial impression created on buyers will not constitute any abandonment.").

1.   The Plaintiffs' Delay

Although the Plaintiffs' bear the burden of proving abandonment and fraud by clear and convincing evidence, in an attempt to distract and compensate for the lack of factual basis for their claims, the Plaintiffs point to a lack of documentary evidence between 1986 and 1998 as an apparent basis for granting their motion (Plaintiffs' Second Motion at pp. 5-6).  If anything, the lack of documents has resulted from the Plaintiffs' delay in bringing their alleged abandonment claim, resulting in evidentiary prejudice to the Defendants and laches against the Plaintiffs.

The Plaintiffs allege abandonment of the CALVIN mark during some point in the mid-1980s to mid-1990s, but do not appear to dispute that Calvin Clothing has been selling men's tailored clothing under the CALVIN label since 1998.   Thus, the alleged

abandonment that the Plaintiffs' claim occurred was at least some seven years before they brought this action. Now, the Plaintiffs' seek to use this unreasonable delay to their advantage, since the Defendants have suffered evidentiary prejudice, as evidenced by the responses received from subpoenas for documents, documents having been destroyed, memories having faded, and Calvin Clothing's ability to demonstrate its pre-1998 sales having been seriously diminished, now seven years later.[16]   *See, e.g.,* Duhaime Decl. Ex. 64 (Declaration of Joshua Rovine of The Blackstone Group ("Rovine Decl.")).[17]

However, taking into account the consistent testimony offered here, and in the Defendants' own Summary Judgment Motion, the lack of documentary evidence due to the Plaintiffs' own delay is no reason not to grant summary judgment against the Plaintiffs and in favor of the Defendants. Indeed, crediting oral testimony accords with a long line of historical precedent respecting the probative nature of oral testimony. *See, e.g., Macaulay v. Malt-Diastase Co.*, 4 F.2d 944, 944 (D.C. Cir. 1925) (trademark use established based upon oral testimony only; "[p]roof may be established either by oral testimony or by documentary evidence. One is as competent as the other, and if the oral testimony is sufficient to establish proof, documentary evidence is unnecessary"); *see also Rooms & Gardens, Inc. v. Rooms & Gardens*, 2002 TTAB LEXIS 163, at *7 (T.T.A.B. Feb. 20, 2002) ("Oral testimony, if sufficiently probative, is normally satisfactory to establish priority of use in a trademark proceeding").

---

[16] Further, when the Alperin family purchased Calvin Clothing in 1996, Mr. Alperin did not receive historical sales receipts.

2.   The 1996 – 1998 Period

The only period when the CALVIN mark arguably was not in use was when it was licensed to Palm Beach Company from 1996 to 1998.  *See* Plaintiffs' Second Motion at p. 8.  Calvin Clothing is willing to assume for purposes of this motion that Palm Beach did not use the mark during the time it was licensed.  However, even if this brief period of non-use were accepted as true, the Plaintiffs cannot meet the threshold for a *prima facie* case of abandonment through non-use for a period of three consecutive years, as provided by 15 U.S.C. § 1127.  Thus, there is no statutory presumption of abandonment as the Plaintiffs allege (Plaintiffs' Second Motion at 9), because the Plaintiffs have not established non-use of the CALVIN mark for more than three consecutive years.  15 U.S.C. § 1127.  Mr. Alperin has first-hand knowledge of the use of the CALVIN mark on men's trousers at the time he purchased the Calvin Clothing business in 1996, and Mr. Bader has unequivocally testified that he sold men's-sized suits and sportcoats throughout his employment with Calvin Clothing, which ended in 1996.  The license to Palm Beach was dated April 1, 1996, and, assuming *arguendo* that beginning on day one of the license the mark was not in use, and even disregarding Calvin Clothing's continued use on men's sizes sold as part of its students' line, the mark was in use again less than three years later, in November of 1998.  *See, e.g., Total Control Apparel, Inc. v. DMD Int'l Imports, LLC,* 409 F. Supp. 2d 403 (S.D.N.Y. 2006)(finding

---

[17] For example, in January 2006, the Plaintiffs requested that The Blackstone Group search for any documents it had relating to the Plaid Clothing Group from 10 years prior, during the 1995-1997 time period.  Duhaime Decl. Ex. 64 (Rovine Decl. ¶2).  Not surprisingly, Blackstone "**no longer** had any relevant documents responsive to [the Plaintiffs'] requests." Duhaime Decl. Ex. 64 (Rovine Decl. ¶4)(emphasis added).

no *prima facie* evidence of abandonment and no intent to abandon despite two-year period of nonuse of mark).

Further, even assuming a brief period of non-use were accepted as true, the inclusion by Mr. Alperin in the license with Palm Beach Company of the right to terminate in the event of non-use Palm Beach Company, and the fact that Calvin Clothing did indeed terminate the license once non-use was discovered, show a clear intention to resume use. *See e.g., Miller Brewing Co. v. Oland's Breweries (1971) Ltd.,* 548 F.2d 349 (C.C.P.A. 1976) (renewal of license constituted evidence of lack of intent to abandon mark); *Sands, Taylor & Wood v. Quaker Oats Co.,* 18 U.S.P.Q. 2d 1457 (N.D. Ill. 1990), *affd in part, rev'd in part,* 978 F.2d 947 (7th Cir. 1992) (agreement of sale included a license back, which constituted evidence of intent to resume use); *see also Person's Co. v. Christman,* 9 U.S.P.Q.2d 1477 (T.T.A.B. 1988) (attempt to sell rights to mark is inconsistent with intent to abandon).   Specifically, although Palm Beach Company insisted upon a menswear license as a condition of sale of the Calvin Clothing business and CALVIN trademarks to Calvin Clothing, Mr. Alperin took steps to ensure a reversion of rights in the event Palm Beach Company did not use the menswear mark.   D.I. 23, Alperin Decl. ¶ 15.   As soon as Mr. Alperin discovered the licensee's apparent non-use, he terminated the license pursuant to its terms and immediately, upon terminating the license, commenced the production and sale of men's suits under the CALVIN label which have continued to this day.   D.I. 23, Alperin Decl. ¶¶ 10-11.   Since intent not to resume use is a required element of an abandonment claim, the Plaintiffs cannot possibly prevail on their abandonment claim.

C.   The '306 Registration Was Not Fraudulently
Renewed And Should Not Be Cancelled

The Plaintiffs have alleged that Calvin Clothing fraudulently renewed the '306 Registration by falsely alleging use when it knew or should have known that the mark was not in use, and thereby committed fraud on the PTO. Plaintiff's Second Motion at pp. 10, 17-18. Notably, this claim was not plead with particularity as required by the Federal Rules (Fed. R. Civ. P. 9(b)), because there are no such facts to plead. This failure to plead with particularity alone justifies a denial of the Plaintiffs' Second Motion. Moreover, discovery has now concluded, and the Plaintiffs still have not elicited any facts that could support a finding of fraud on the PTO.

In order to establish fraud on the on the PTO, it must be proven by clear and convincing evidence before a registered trademark will be canceled. *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, No. 83 Civ.9170 (LFM), 1986 U.S. Dist. LEXIS 26013, *26 (S.D.N.Y. May 1, 1986) (noting that "fraud is a serious charge"), *aff'd* 818 F.2d 254 (2d Cir. 1987). "Fraud will be deemed to exist only when there is a deliberate, calculated attempt to mislead the patent office in the registration of a mark." *Id.* The Plaintiffs have not established by clear and convincing evidence that Mr. Alperin made a false, material misrepresentation of fact in renewing the '306 Registration, when he knew or should have known that it was false or misleading.

First, there is no basis for the Plaintiffs' allegation that Mr. Alperin made false, material misrepresentation of fact. Plaintiffs' Second Motion at pp. 13 – 19. As has been demonstrated above, the CALVIN mark was in use in 1996 at the time Mr. Alperin renewed the '306 Registration, and therefore Mr. Alperin's renewal affidavit was not

338247.1

-17-

false.  Plaintiffs' fraud claim is ancillary to and entirely dependent upon the validity of the abandonment claim.  Because Plaintiffs' abandonment claim fails, Plaintiffs' fraud claim fails as well.  *See, e.g., Rauland Borg Corp. v. TCS Mgmt. Group*, No. 93 C 6096, 1995 U.S. Dist. LEXIS 5390 (N.D. Ill. Apr. 20, 1995) (denying summary judgment motion by defendant and refusing to cancel federal registration for mark at issue on the basis of abandonment and that renewal was fraudulently procured).

Second, the Plaintiffs have not established, nor can they establish, any fraudulent intent on the part of Mr. Alperin and Calvin Clothing with respect to renewal of the '306 Registration. The Plaintiffs attempt to argue that the renewal of the '306 Registration was fraudulent based upon Mr. Alperin's assumptions relating to (1) the license back of Palm Beach Company, (2) CALVIN brand trousers, and (3) that all suit manufacturers make sportcoats.  Plaintiffs' Second Motion at pp. 13-17.  However, Mr. Alperin's good faith renewal of the '306 Registration in 1996 was based on more than mere assumptions – it was based on his own first-hand knowledge, the Alperin family business' actions, and his knowledge of the industry and industry practice.

With respect to the alleged CALVIN brand trousers and sportcoats "assumptions," at the time of renewal in 1996, as Mr. Alperin has unequivocally testified, he had personal first-hand knowledge with respect to use of the CALVIN label on men's trousers.[18]  D.I. 23, Alperin Decl. ¶¶ 1, 2, 8;  Duhaime Decl. Ex. 4 (Alperin Tr.

---

[18] Despite the Plaintiffs' assertion, Mr. Murray's uncertainty regarding the work done by the Alperin family businesses at this time cannot overcome Mr. Alperin's first-hand, actual knowledge.  Plaintiffs' Second Motion at pp. 14-15.  *See* Duhaime Decl. Ex. 17 (Murray Tr. 17 ("He did trousers for us.  And when I say us, I'm talking about men's wear . . . And I don't remember the explicit details, but I know that when we started doing men's trousers, that [Mr. Alperin] was involved to some degree in those products.").

161).  Further, Mr. Alperin had personal knowledge that the CALVIN mark was being used in connection with men's suits and sportcoats because his family businesses had been making pants for men's suits for Calvin Clothing.   D.I. 23, Alperin Decl. ¶ 8. Specifically, Mr. Alperin knew that the trousers in which his family businesses had put CALVIN labels into were part of suits because the trousers were cut by Palm Beach. Duhaime Decl. Ex. 4 (Alperin Tr. 163).  As Mr. Alperin testified, with suits, the coat and the pants must be cut at the same time and the fabric out of the same ply.  Thus, in order for the fabric to match, Palm Beach would do the cutting for suits.  Duhaime Decl. Ex. 4 (Alperin Tr. 163).  In contrast, pants separates that were not part of a suit were not precut by Palm Beach. Duhaime Decl. Ex. 4 (Alperin Tr. 163).  Since the Alperin family businesses received pants that were precut by Palm Beach into which the CALVIN labels were sewn, Mr. Alperin knew the trousers were to be part of suits. Duhaime Decl. Ex. 4 (Alperin Tr. 163).

In addition to Mr. Alperin's knowledge of his family businesses' practices and industry practices, at the time Mr. Alperin signed the renewal application for the '306 Registration, he had just entered into the asset purchase transaction for the Calvin Clothing business by which Palm Beach Company insisted on a license back because it informed the Alperin family that it intended to use the CALVIN name in connection with men's tailored clothing. [19]  D.I. 23, Alperin Decl. ¶ 8.  (D.I. 21, Defs. SOMF ¶15.)  Based

---

[19] The Plaintiffs' suggestion that the drafts of the license with Palm Beach Company do not show Palm Beach Company's intention to use CALVIN on menswear (Plaintiffs' Second Motion at p. 14) is inapposite. The draft licenses with Palm Beach Company that the Plaintiffs' cite to were just that – drafts. Plaintiffs' Second Motion at p. 14 n.12. The final, executed license with Palm Beach Company that evidences the agreement between the parties includes the CALVIN mark and likewise evidences the intent of the parties at the time. D.I. 23, Alperin Decl. ¶¶ 5-6, 8.

on Palm Beach Company's insistence and stated intention, there was no reason for Mr. Alperin to know or believe that Palm Beach Company would not be using CALVIN on menswear.

Thus, Mr. Alperin agreed to license back the mark to Palm Beach just prior to signing the renewal application for the '306 Registration,[20] and as evidence of his good faith at the time, he took care to insist that the license contain a clause stating that if the CALVIN mark were not used for two consecutive years, or if Palm Beach went out of the men's tailored clothing business, that the license would terminate and all rights would revert to the licensor, Calvin Clothing. D.I. 23, Alperin Decl. ¶ 6 and Ex. 4 thereto. (D.I. 21, Defs. SOMF ¶13.) Furthermore, the fact that Calvin Clothing did indeed terminate the license once non-use was discovered, dispels any suggestion of fraudulent intent to mislead the PTO or that Calvin Clothing was "hiding its head in the sand."[21] D.I. 23, Alperin Decl. ¶¶ 9-10 and Ex. 6 thereto. (D.I. 21, Defs. SOMF ¶16.)

---

[20] The license was executed as of April 1, 1996 and shortly thereafter, on May 11, 2006, Mr. Alperin, on behalf of Calvin Clothing, signed the renewal application for the '306 Registration. D.I. 23, Alperin Decl. ¶¶ 6, 8 and Exhibit 4 thereto.   (D.I. 21, Defs. SOMF ¶¶ 14, 15.)

[21] In light of the facts in this case, the *Pilates* case cited by the Defendants as instructive, is inapposite. Plaintiffs' Second Motion at pp. 19-20. In *Pilates*, the plaintiff had offered vague, non-credible testimony regarding his investigation into the continuous use of the mark at issue and "consciously avoided making any inquiries that would have resulted in evidence showing a lack of use." *Pilates*, 120 F. Supp. 2d at 314 (S.D.N.Y. 2000). In contrast here, for example, Palm Beach's insistence on a license back, followed by Mr. Alperin's insistence on the cancellation clause and subsequent exercise of it, affirmatively shows the intent on the part of Mr. Alperin to ensure that the CALVIN mark was being used on menswear. Similarly, the Plaintiffs' citation to the non-precedential opinion in *Torres v. Cantine Torresella S.r.l.,* 808 F.2d 46 (Fed. Cir. 1986) ("Designated As Unpublished [and] Shall Not Be Employed As Precedent By This Court, Nor May [it] Be Cited By Counsel As Precedent . . . ") (Plaintiffs' Second Motion at pp. 17, 19) is also inapposite since the mark at issue was not actually in use on the goods at the time of renewal and the registrant admitted to adopting and using a different mark for the goods.

Hence, there was no fraudulent intent on the part of Mr. Alperin and Calvin Clothing with respect to the renewal of the '306 Registration, and therefore the Plaintiffs' claim that the '306 Registration should be cancelled on this basis should be rejected. *See Yocum v. Covington*, 216 U.S.P.Q. (BNA) 210 (T.T.A.B. 1982) ("Fraud in a trademark cancellation is something that must be 'proved to the hilt' with little or no room for speculation or surmise; considerable room for honest mistake, inadvertence, erroneous conception of rights, and negligent omission; and any doubts resolved against the charging party."). If anything, the question of Mr. Alperin's intent raises an issue of fact precluding the grant of summary judgment on the Plaintiffs' fraud claim.

Moreover, it is important to note that Calvin Clothing had no need to falsely renew the '306 Registration in order to preserve its rights in menswear. Despite whether the '306 Registration was renewed, Calvin Clothing's rights flowed from its undisputed rights in boys' and students' tailored clothing dating back to the 1930s. Whether boys' tailored clothing and men's tailored clothing are considered to be substantially "the same goods," or whether men's tailored clothing is considered to be within the natural zone of expansion, Calvin Clothing had, and has, rights in menswear regardless of the '306 Registration. *See Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1172 (2d Cir. 1976); *Rosenthal A.G. v. Rite Lite, Ltd.*, 986 F. Supp. 133 (E.D.N.Y. 1997); *Joseph & Feiss Co. v. Sportempos, Inc.*, 451 F.2d 1402 (C.C.P.A. 1971); *Morehouse Mfg. Corp. v. Strickland*, 407 F.2d 881 (C.C.P.A. 1969).

III.    **CONCLUSION**

For all of the reasons stated above, Plaintiffs' Second Motion for Partial Summary Judgment on Plaintiffs' Claims for Cancellation of U.S. Trademark Reg. 1,039,306 should be denied.

This 3rd day of April, 2006                By:

Anthony F. LoCicero (AL 7538)
Marc J. Jason (MJ 0934)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY  10016
Tel:  (212) 336-8000
Fax:  (212) 336-8001
Attorneys for Defendants/
Counterclaim Plaintiffs

338247.1