Anthony F. Lo Cicero (AL 7538)
Marc J. Jason (MJ 0934)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY  10016
Tel:  (212) 336-8000
Fax:  (212) 336-8001
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| PHILLIPS-VAN HEUSEN CORP.,<br>CALVIN KLEIN, INC. and CALVIN<br>KLEIN TRADEMARK TRUST,<br><br>      Plaintiffs,<br><br>   v.<br><br>CALVIN CLOTHING COMPANY, INC.,<br>and STAR RIDE KIDS, INC.,<br><br>      Defendants. | Civil Action No. 05-CV-6802 (JSR)<br><br>ECF Case<br><br>**REPLY MEMORANDUM OF LAW<br>IN SUPPORT OF DEFENDANTS'<br>MOTION FOR PARTIAL<br>SUMMARY JUDGMENT<br>DISMISSING (1) PLAINTIFFS'<br>CLAIMS FOR MONETARY<br>RELIEF AND (2) COUNT II OF<br>THE COMPLAINT** |

- - - - - - - - - - - - - - - - - - - -x

Defendants Calvin Clothing Company, Inc. ("Calvin Clothing") and Star Ride Kids,

Inc. ("Star Ride") (together, "Defendants"), by and through their counsel, submit this

reply memorandum of law in further support of their motion for partial summary

judgment dismissing (1) plaintiffs' Claims for Monetary Relief and (2) Count II of the

Complaint.

338563.1

# Table of Contents

I.    ARGUMENT ...................................................................................................... 1

  A. There is no Evidence in the Record Supporting Plaintiffs' Damages  Claims, and Plaintiffs Did Not Plead That They Were Seeking Defendants' Profits ............................................... 1

  B. Plaintiffs Cannot Sustain Their Burden of Proving That  The CALVIN Mark Was Abandoned For Men's Suits and Sportcoats............................................................................ 4

      1.   The Record Does Not Support Plaintiffs' Abandonment Claim .................................... 6

  C. Plaintiffs' "Exhaustive Search For Evidence" Did Not Even Include  Contacting Witnesses Identified On Defendants' Initial Disclosures  and Plaintiffs' Own Interrogatory Responses ....................................................................................................... 9

II.   CONCLUSION ................................................................................................. 11

338563.1

## Table of Authorities

Page

### FEDERAL CASES

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................4

*Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021 (Fed. Cir. 1989) ................................................................5

*Horn v. Greenwood Rehabilitation Ctr., Inc.*, No. 84 Civ. 312-CSH, 1984 U.S. Dist. LEXIS 15459 (S.D.N.Y. June 28, 1984) ................................................................3

*International Star Class Yacht Racing Association v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66 (2d Cir. 1998) ................................................................2

*Rolley, Inc. v. Younghusband*, 204 F.2d 209 (9th Cir. 1953) ................................................................4

*Silverman v. CBS Inc.*, 870 F.2d 40 (2d Cir. 1989) ................................................................5

### FEDERAL STATUTES

15 U.S.C. §1127 ................................................................ i

Fed. R. Civ. P. 8(a) ................................................................ i

Fed. R. Civ. P. 26(a) ................................................................9

### MISCELLANEOUS

Siegrun D. Kane, *Trademark Law: A Practitioner's Guide*, §6:1.1 (4th Ed. 2005) ...........4

# I.   ARGUMENT

### A.   There is no Evidence in the Record Supporting Plaintiffs' Damages Claims, and Plaintiffs Did Not Plead That They Were Seeking Defendants' Profits

Right from the start of the plaintiffs' opposition brief, on the very first page, they mischaracterize the basis of the Defendants' motion to dismiss the plaintiffs' claims for monetary relief.  Plaintiffs assert that the motion is based on the inability of two Rule 30(b)(6) witnesses to "specifically quantify" the damages suffered by the plaintiffs.  It is indeed true that the plaintiffs' witnesses failed to specifically quantify the damages that the plaintiffs allegedly suffered.  But Defendants' motion is based on much more than that.  It is based on the complete failure of the plaintiffs to proffer <u>any</u> evidence of damages.  As stated in the Defendants' initial brief and as discussed again below, the plaintiffs have no "factual basis" for their damages claims.

Plaintiffs have not proffered any evidence of their alleged lost profits (sought in ¶7 of the *ad damnum* clause of the Complaint); nor have they proffered evidence of any other damage allegedly suffered, e.g., loss of goodwill, harm to their trademarks, loss of customers, etc. (sought in ¶6 of the *ad damnum* clause of the Complaint).  Since the plaintiffs have ignored the testimony of their own witnesses, it is important to reiterate it.  The president and COO of Calvin Klein, Inc., Paul Thomas Murry, one of two Rule 30(b)(6) witnesses on the topic of damages, testified that "[i]t is my opinion that we have been damaged."  D.I. 22, Lo Cicero Decl. Ex. H (Murry 2/24/06 Tr. 59).  Yet, when pressed to identify a factual basis for his opinion, Mr. Murry testified as follows:

> Q.  Do you know of any facts that would demonstrate that the activities of Calvin Clothing Company have damaged Calvin Klein, Inc.?

[Opposing counsel]: Objection to form.

\*      \*      \*      \*

A.  I don't have specific knowledge of factual information regarding that.

D.I. 22, Lo Cicero Decl. Ex. H (Murry 2/24/06 Tr. 60).

In addition to being unable to provide any factual basis for plaintiffs' damages claims, Mr. Murry also was unable to quantify the amount of alleged damages that Calvin Klein has suffered.  D.I. 22, Lo Cicero Decl. Ex. H (Murry 2/24/06 Tr. 60-61).

Similarly, plaintiffs' second Rule 30(b)(6) witness on damages provided absolutely no factual support for the damage claims.  Regina Szeto testified as follows:

Q.    [D]o you believe that CKI has suffered any damage as a result of the activities of Calvin Clothing Company?

A.    Has it in the past?

Q.    Has it in the past, excellent.

A.     I'm not aware of it so far.

D.I. 22, Lo Cicero Decl. Ex G (Szeto Tr. 86-87).

Ms. Szeto, Calvin Klein's vice president of global advertising, further testified that Calvin Clothing's alleged activities have "not affected the advertising and brand image" of Calvin Klein.  D.I. 22, Lo Cicero Decl. Ex. G (Szeto Tr. 87).

In the face of this dearth of evidence, plaintiffs go on in their opposition brief to characterize Calvin Clothing as a "willful infringer" of the Calvin Klein trademarks, and they assert that a "strong deterrent" must be fashioned to prevent future misconduct. Plaintiffs' Brief at 2; citing *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66 (2d Cir. 1998).  Such a characterization is absurd.  Calvin Clothing

338563.1                                      -2-

owns <u>six</u> federal registrations for its CALVIN marks (with six more applications pending), and to suggest that use of its marks is a willful infringement of the CALVIN KLEIN mark is simply not credible. Since there is absolutely no evidence of damages in the record, there is also no basis for ¶8 of the *ad damnum* clause, which seeks a trebling of plaintiffs' damages as a consequence of the Defendants' alleged willful infringement.

Finally, due to the lack of evidentiary support for their damage claims, the plaintiffs now assert that they are entitled to an accounting of Defendants' profits. Plaintiffs' Brief at 1. This is nothing more than a last ditch effort to preserve a monetary claim, but this effort is not proper because this is the first time that plaintiffs have identified Defendants' profits as a category of damages that they are seeking. *See* Fed. R. Civ. P. 8(a) ("A pleading which sets forth a claim for relief... shall contain... (3) a demand for judgment for the relief the pleader seeks."); *see also Horn v. Greenwood Rehab. Ctr., Inc.*, No. 84 Civ. 312-CSH, 1984 U.S. Dist. LEXIS 15459, *5 (S.D.N.Y. June 28, 1984): "Rule 8(a)(3), Fed. R. Civ. P., requires a plaintiff to state in the complaint the relief to which "he deems himself entitled.""). Plaintiffs do <u>not</u> identify Defendants' profits in either the *ad damnum* clause of the Complaint or in the plaintiffs' Rule 26(a)(1) Disclosures. It is not fair for the plaintiffs to now seek an accounting of Defendants' profits as a result of their failure support their damages claims.

Since the plaintiffs' designated witnesses could not identify any damages that were sustained, and the plaintiffs' new claim for Defendants' profits was neither pled nor identified in the initial disclosures, the plaintiffs' claims for monetary recovery should be stricken.

338563.1                                   -3-

B.    Plaintiffs Cannot Sustain Their Burden of Proving That
      <u>The CALVIN Mark Was Abandoned For Men's Suits and Sportcoats</u>

Calvin Clothing's federal registration is prima facie evidence of continued use

since the filing date of the application, in this case since 1975.  Siegrun D. Kane,

*Trademark Law: A Practitioner's Guide*, §6:1.1 (4th Ed. 2005) (*citing Rolley, Inc. v.*

*Younghusband*, 204 F.2d 209, 211 (9th Cir. 1953)).  In their opposition brief, the

"[p]laintiffs acknowledge that they bear the burden of proving abandonment at trial,"

and they go on to describe means by which their "strict" burden may be satisfied.

Plaintiffs' Opposition Brief at 23.  With this burden of proof in mind, Defendants direct

the Court to the plaintiffs' own Statement of Material Facts in support of their second

summary judgment motion, wherein they state that "[s]ome testimony suggests that the

CALVIN label was available for men's suits in the 80's and perhaps into the early 90's."

Plaintiffs' Statement of Undisputed Material Facts in Support of Plaintiffs' Second Motion

for Summary Judgment ¶30; *citing* H. Siegal Tr. 11, 14-15.  In light of the strict burden

of proof that the plaintiffs must sustain in order to cancel Calvin Clothing's incontestable

registration, this admission alone should be enough to defeat their claim and entitle

Defendants to summary judgment.  (*See Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986): "the plain language of Rule 56(c) mandates the entry of summary judgment,

after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial.")  Indeed, as the plaintiffs

appear to recognize, Henry Siegal testified unequivocally that during his entire tenure at

Calvin Clothing, which ended in 1992, there was never a cessation of the use of the

CALVIN mark in some form on men's suits and sport coats.   D.I. 22, Lo Cicero Decl. Ex. B

(H. Siegal Tr. 39).   In addition to this testimony, there is also the testimony of Calvin

Siegal, Gary Bader and James Alperin, all indicating that the CALVIN mark was used on

tailored menswear and not abandoned, as recited at length in Defendants' initial brief.

Plaintiffs cannot possibly sustain their burden of proving non-use.

The Plaintiffs do not even tackle the second prong of the test for abandonment:

intent not to resume use.   15 U.S.C. §1127.   Discovery is closed and the plaintiffs have

not proffered any affirmative evidence to sustain their claim that the CALVIN trademark

was discontinued with intent not to resume use.   Rather than address this issue, the

plaintiffs skirt around it and cite authority that inferences of intent are proper.   Plaintiffs'

Opposition Brief at 3.[1]   However, the plaintiffs neglect to address the hard, tangible

evidence that there indeed was never any intent to abandon the mark, i.e. the license

back of the CALVIN mark for menswear (from Calvin Clothing to Palm Beach Company)

entered into at the time that Calvin Clothing purchased the Calvin youthwear division of

Palm Beach Company.   This license back of the CALVIN menswear mark was a condition

of the asset purchase agreement and is reflected in paragraph 1.4, which states in

pertinent part:

> "Purchaser [Calvin Clothing] will provide Seller [Palm
> Beach] with an exclusive royalty-free perpetual license to use

---

[1] The cases cited by plaintiffs (*Silverman v. CBS Inc.*, 870 F.2d 40, 46 (2d Cir. 1989) and *Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1024 (Fed. Cir. 1989)) reflect the statute, 15 U.S.C. §1127, that nonuse for three consecutive years is prima facie evidence of abandonment, and therefore intent not to resume use can be inferred.   In this case, the plaintiffs have not demonstrated non-use.   And even if they had demonstrated non-use, the *Silverman* court has opined that prima facie abandonment may be rebutted by showing valid reasons for nonuse or by proving lack of intent to abandon.

> the name "Calvin" for the manufacture and sale of men's
> tailored clothing throughout the world pursuant to a License
> Agreement reasonably satisfactory to Seller (the "Calvin
> License Agreement")."

Jason Decl. Ex. 1 (Plaintiffs' Exhibit 3: CC620-CC660).

The license agreement between Palm Beach and Calvin Clothing for the CALVIN tailored menswear mark, entered into pursuant to the asset purchase agreement, is significant for several reasons: (1) it is evidence that the mark was in use by Palm Beach- - otherwise, why would Palm Beach insist on licensing the name back; (2) it is evidence that Palm Beach had never intended to abandon the mark; and (3) the terms of the license agreement demonstrate that the purchaser, Calvin Clothing, did not intend to abandon the mark since Calvin Clothing insisted on a provision that it could terminate the license if the CALVIN mark were not used on tailored menswear for two consecutive years, or if Palm Beach went out of the men's tailored clothing business.  Calvin License Agreement ¶12(a)(v) (D.I. 23, Alperin Decl. Ex. 4).

      1.   <u>The Record Does Not Support Plaintiffs' Abandonment Claim</u>

In their opposition brief, the plaintiffs unsuccessfully seek to discredit the testimony of the following witnesses regarding use of the CALVIN mark on tailored menswear.

      <u>Henry Siegal</u>

Although the plaintiffs attempt to impugn Henry Siegal's testimony by stating that he was unaware of any sales of men's suits under the CALVIN brand (Plaintiffs' Opposition Brief at 7 *et seq.* ), he specifically and definitively testified that Calvin Clothing was using at least the "CALVIN For Men" label on menswear through the 1980s

338563.1                                        -6-

and at least until his tenure with the company ended in 1992.  D.I. 22, Lo Cicero Decl.

Ex. B (H. Siegal Tr. 9, 11-13, 39); Duhaime Decl. Ex. 23 (H. Siegal Tr. 13-15); (D.I. 21,

Defs. SOMF ¶4.).  Moreover, the plaintiffs themselves quote his testimony that the

CALVIN For Men label was part of the Calvin Clothing brand assortment until he left the

company in 1992.  Plaintiffs' Opposition Brief at 7.  As the Defendants explained in their

initial brief (at pp. 13-14), use of the mark CALVIN For Men would constitute use of the

trademark CALVIN as a matter of law.  The "For Men" portion of the mark is purely

descriptive and does not, as suggested by plaintiffs, create a different commercial

impression.[2]

Gary Bader

Plaintiffs assert that the testimony of Gary Bader regarding his sale of men's suits

was mistaken.  Plaintiffs' Opposition Brief at 10.  However, the only mistake that Mr.

Bader made was not understanding the particular nomenclature of the Calvin youthwear

division-- that suits sold in men's sizes (35-42) through the youthwear division were

designated as "students'" suits rather than men's suits.  The Calvin Youthwear "Student

Clothing Specs" amply demonstrate this fact.  Student sizes went up to size 42L, which

was for a person 74 ½ inches tall and weighing 198 pounds.  Suits in the youthwear

division may have had a different cut or different construction, but the fact remains that

---

[2] Plaintiffs cite to testimony of Defendants' expert, George Santacroce, for the proposition that
BABY CALVIN creates a different commercial impression than CALVIN alone (and thereby,
by extension, does CALVIN For Men create a different commercial impression).  Plaintiffs'
Opposition Brief at 17.  However, in clarifying his prior testimony on this point, Mr. Santacroce
testified that composite terms like BABY CALVIN merely "defines the market segment that it's
directed towards.  That's the commercial differentiation."  Jason Decl. Ex. 2 (Santacroce Tr.
138).  Thus, such composite terms as "For Men" used with the CALVIN mark are indeed merely

they were suits in men's sizes, i.e., men's suits.[3]  (D.I. 22, Lo Cicero Decl. Ex. I).

<u>James Alperin</u>

Mr. Alperin has testified with certainty that his family companies produced CALVIN label suit trousers for Palm Beach prior to the acquisition of the Calvin youthwear division.  Jason Decl. Ex. 3 (Alperin 10/20/05 Tr. 163-165).  He knows that the trousers were used for suits because his factories received precut material from Palm Beach to sew into the trousers.  *Id.*  The reason the material was precut was because it was cut from the same material as the jacket, which was constructed in a different factory.  If Mr. Alperin's factory had been producing "separate" trousers, they would not have been precut by Palm Beach.  *Id.*

C.    Plaintiffs' "Exhaustive Search For Evidence" Did Not Even Include
       Contacting Witnesses Identified On Defendants' Initial Disclosures
       <u>and Plaintiffs' Own Interrogatory Responses</u>

The plaintiffs state that they found no evidence which would show whether Calvin Clothing's predecessors used the CALVIN mark on tailored menswear, despite having undertaken "an exhaustive search for evidence."  Plaintiffs' Brief at 6.  However, the plaintiffs' exhaustive search did not even include witnesses that they identified in their interrogatory responses or that Defendants identified in their initial disclosures.  For example, the plaintiffs never contacted Marty Rudnick, identified in plaintiffs' interrogatory responses and identified in the Defendants' initial disclosures as having

---

descriptive of the target market of the labeled goods.
[3] James Murray, the witness on whom plaintiffs hang their hat, was head of the Calvin Menswear Division and did not speak to the fact that CALVIN men's suits were sold through the Youthwear Division as "students'" suits.

information regarding "use of the CALVIN mark."  Jason Decl. Ex. 4 (Defendants' Initial

Disclosures Pursuant to Fed. R. Civ. P. 26(a)).  Had the plaintiffs contacted Mr. Rudnick,

a disinterested third party and the owner of a men's and boys' clothing store, Rudnick's,

they would have learned that Rudnick's was purchasing CALVIN label men's suits from

the Calvin menswear division from the 1970's to the 1990's.  Jason Decl. Ex. 5

(Declaration of Marty Rudnick, ¶2(C)).  Mr. Rudnick has personal knowledge of these

purchases as he has been involved in operating Rudnick's for forty-five years.  *Id.* ¶2(A).

Indeed, Mr. Rudnick personally insisted that all clothing he purchased from Calvin

Clothing bore the CALVIN label.  *Id.* ¶2(B).  Mr. Rudnick no longer has documentary

evidence of these purchases since Rudnick's regularly discards old purchase orders and

invoices.  *Id.* ¶2(D).

  In addition to the Defendants' having identified Marty Rudnick in their initial

disclosures, the Plaintiffs themselves identified Rudnick's in their Second Amended

Responses to Defendants' Interrogatories 9 and 19 (Jason Decl. Ex. 6) in response to

Defendants' request that plaintiffs identify all persons with knowledge of Calvin

Clothing's alleged abandonment of its CALVIN menswear registration.  Plaintiffs have

also not contacted Ritchie Rubin or Mitch West, two other persons that the plaintiffs

identified in response to this request.  The fact that these people have not been

contacted, and that their depositions have not been taken nor declarations proffered,

supports the inference that they all have evidence adverse to plaintiffs' abandonment

claim.  The plaintiffs' "exhaustive search" was a sham, and they only looked where they

knew that they would not find any evidence.

Furthermore, Mr. Rudnick's statement that he no longer has documentary evidence of his CALVIN menswear purchases is further evidence of the extreme prejudice that Calvin Clothing has suffered as a result of the plaintiffs' delay of many years before bringing their specious claim of abandonment of the CALVIN menswear mark.  Retailers cannot possibly be expected to have maintained purchase order and invoice records from more than ten, or even fifteen, years ago.  The Plaintiffs seek to use this lack of documentary evidence, caused by their own delay, against the Defendants.  Such tactics should not be countenanced.

## II.    CONCLUSION

For all of the reasons stated above and in the Defendants' initial brief, the Defendants' motion for summary judgment should be granted,  Paragraphs 6-8 of the *ad damnum* clause of the Complaint should be stricken, and Count II of the Complaint should be dismissed with prejudice.

This 7th day of April, 2006                          By: _____

Anthony F. LoCicero (AL 7538)
Marc J. Jason (MJ 0934)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY  10016
Tel:  (212) 336-8000
Fax:  (212) 336-8001
Attorneys for Defendants/
Counterclaim Plaintiffs